1            UNITED STATES DISTRICT COURT

2         FOR THE WESTERN DISTRICT OF TEXAS

3                  EL PASO DIVISION

4

5   UNITED STATES OF AMERICA     )   No. EP-12-CR-2106-DB
                                 )       EP-13-CR-370-DB
6                                )
    vs.                          )   El Paso, Texas
7                                )
    MARCO ANTONIO DELGADO        )   June 18, 2015

8

9

10                 STATUS CONFERENCE

11

12  A P P E A R A N C E S:

13  FOR THE GOVERNMENT:   MS. DEBRA P. KANOF &
                          MS. ANNA E. ARREOLA
14                        Assistant United States Attorneys
                          700 E. San Antonio, Suite 200
15                        El Paso, Texas  79901

16

17  FOR THE DEFENDANT:    MR. ROBERT J. PEREZ
                          Attorney at Law
18                        221 N. Kansas, Suite 1103
                          El Paso, Texas  79901

19
                          MR. ERIK HANSHEW &
20                        MS. MAUREEN FRANCO
                          Assistant Federal Public Defenders
21                        700 E. San Antonio, Room D-401
                          El Paso, Texas 79901

22

23

24      Proceedings reported by stenotype.  Transcript produced by

25  computer-aided transcription.

1          THE COURT:  The clerk will call both cases.

2          THE CLERK:  EP-12-CR-2106 and EP-13-CR-370, Marco

3     Antonio Delgado.

4          MS. KANOF:  Good morning, Your Honor.  Debra Kanof and

5     Anna Arreola for the United States.

6          THE COURT:  I don't need to have -- I'm sorry.

7          The Defendant doesn't have to get up.  I just want to

8     hear from the attorneys.

9          MR. HANSHEW:  Okay.

10          THE COURT:  Announcements.

11          MR. HANSHEW:  Good morning, Your Honor.  Erik Hanshew

12     and Maureen Franco on behalf of Marco Delgado in the 2013 case.

13          MR. PEREZ:  Robert Perez on behalf of Marco Delgado.

14          THE COURT:  Counsel, this case is set for next week,

15     for sentencing.  You have both -- you've been provided with the

16     Addendum, both of you?

17          MS. KANOF:  Yes, the Government has, Your Honor.

18          THE COURT:  Mr. Perez?

19          MR. PEREZ:  Yes, Your Honor.

20          THE COURT:  Anybody file any objections, Mr. Luevano?

21          PROBATION OFFICER:  Good morning, Your Honor.  Luis

22     Luevano on behalf of the United States Probation Office and no,

23     I did not receive any objections.

24          THE COURT:  I presume there's not going to be any

25     objections then and it's kind of late.

1          MS. KANOF:  There will not be any from the Government.

2          MR. PEREZ:  Your Honor, the disclosure didn't

3    really come -- we weren't able to open the disclosure until

4    this week and I've also been in trial this week.  And in any

5    event, I'd be filing a motion to continue the sentencing if I'm

6    going to be the lawyer on the sentencing.

7          THE COURT:  Well, you're the -- you're the assigned

8    attorney right now.  You're going to be the attorney.

9          MR. PEREZ:  And the reason I'm --

10         THE COURT:  And I'm not going to continue it.

11         MR. PEREZ:  Well, Your Honor, there are -- my

12   understanding, the Government has -- and has made an offer, but

13   it's to resolve both cases globally.  I don't know anything

14   about the other case.  I know nothing about it.  And they are

15   privy to everything in that first case and in the best position

16   to negotiate, and I've spoken with Mr. Delgado concerning that

17   and he thinks --

18         THE COURT:  Whatever happens on the second case is not

19   going to affect the sentencing on this -- this one case.

20         MR. PEREZ:  My understanding though is that there is

21   an offer by the Government to negotiate both.

22         THE COURT:  Well --

23         MR. PEREZ:  And I'm not in a position --

24         THE COURT:  That's up to you-all.  I have nothing to

25   do with that.  I'm telling you right now, this case is going to

1   be sentenced on -- next Thursday, and there will be no

2   continuances, and if you have any objections, you better get

3   them in right away.

4           MR. PEREZ:  Okay, Your Honor, but I --

5           THE COURT:  From what I can see from the guideline

6   application, there's not going to be any substantial change

7   from the -- from the original sentence, quite frankly,

8   Mr. Perez.

9           MR. PEREZ:  Well, Your Honor, it seems like Your Honor

10  has made up its mind with respect to the sentence already then.

11          THE COURT:  Well, you haven't filed any objections.

12          MR. PEREZ:  Your Honor --

13          THE COURT:  I'm presuming there's going to be no

14  objections.

15          MR. PEREZ:  And sentencing is a totally different

16  matter from reading a cold appellate record.  I have a cold

17  appellate record that just talks about a case.  It doesn't -- I

18  didn't get to have meetings with the client about his

19  sentencing, about his family, about different things where they

20  requested a psychiatric evaluation of this gentleman.

21          Sentencing is not just having an appellate record and

22  then coming in and being able to do an adequate job in

23  sentencing.  If I were to be the lawyer to do the sentencing

24  and to do a fair and adequate job for this gentleman, I would

25  need months to prepare for it.

1          THE COURT:  Well, you're not going to get it.  You got

2     until Monday to file any objections if you have any.

3          Mr. Luevano, the Government doesn't have any

4     objections --

5          PROBATION OFFICER:  No, Your Honor.

6          THE COURT:  -- on the first case, Ms. Kanof?

7          MS. KANOF:  Your Honor, we do not.  And I would like

8     to add, Your Honor, that I think the case has been set for

9     sentencing for quite some time now.  I think the case was set

10    for sentencing on the date of the mandate.  And I also -- I had

11    an opportunity to listen to the appellate arguments and it was

12    very clear that Mr. Perez was extremely knowledgeable about the

13    facts of the case, had read the record, and knew what had

14    occurred, and I don't know since the Defendant was found

15    competent, what that would have to do with determining a

16    sentence.

17         The appellate court only remanded regarding the Court

18    making some findings of fact to one of the adjustments and

19    the -- whether or not counsel could open the ECF that had the

20    Second Addendum, Ms. Arreola sent it to Mr. Perez last week.

21         The offer that was made by the Government was very

22    thorough.  It was a chart that laid out the guidelines for both

23    cases and what would happen both -- what would happen if the

24    Defendant was convicted in the second case, and comparing

25    basically what would happen if loss was calculated in different

1    ways.

2            Ms. Arreola and I called the Sentencing Commission and

3    walked through how loss would be calculated in the second case

4    and we made an offer of concurrent -- making a recommendation

5    of concurrent sentencing to the Defendant's advantage including

6    the fact -- and laid out what would happen if it was stacked

7    sentencing.  I mean, there was no factor we did not consider,

8    and then made an offer subject to negotiation.

9            THE COURT:  Subject to my ruling.

10           MS. KANOF:  Of course.  Absolutely subject to the

11   Court accepting it, but at least that we could negotiate.

12           Mr. Perez just made a comment that he doesn't know

13   anything about the first case.  I think he meant he didn't know

14   anything about the second case because he was the appellate

15   counsel on the first case, so I think he's very familiar with

16   it based on what I heard in the appellate arguments.

17           I don't know that he needs to know about the facts of

18   the second case because Mr. Hanshew and Ms. Franco are

19   intimately familiar.  We've discussed the evidence with them.

20   We know they worked very hard on it.  We know they're very

21   familiar with the evidence in the second case.  Mr. Perez being

22   very familiar with the evidence on the first case, I don't know

23   why more time would be necessary to confer with each other

24   knowing the relative strengths and weaknesses of both cases.  I

25   don't see why it would take more time because I don't know that

1    Mr. Perez would have to know about the second case in order to

2    advise his client about whether or not it was a good offer on

3    the first case.

4            That being said, I'm just trying to make a record,

5    Your Honor, for purposes of some kind of a 2255 or something

6    like that, because I think the Government's offer appropriately

7    would be bifurcated.  It's not unusual for an individual to

8    have different attorneys on different cases and for those

9    attorneys not to know the other cases in order to make

10   decisions individually on the sentencing and then discuss it

11   with the relative counsel for defendant on different cases.  I

12   don't think they need three months to do that, and I just need

13   to put on the record that the Government's opinion is that

14   there could be negotiations between now and the 25th of June

15   when the sentencing is set that could resolve the entire case.

16           The Government has already told Mr. Hanshew, we've had

17   many conversations with him regarding this, that we are open to

18   negotiating the offer, and we've talked to the hierarchy of the

19   U.S. Attorney's Office who have given us some leeway if

20   Mr. Delgado is not willing to accept the offer that we made and

21   then provide it to the Court to see if the Court would be -- if

22   it's an 11(c)(1)(C) which, at this time, we haven't discussed

23   that issue, but you know I definitely think that we could

24   resolve both cases by the 25th of June.

25           MR. HANSHEW:  Your Honor, if I may for purposes of

1    making a record here.  There's a -- the elephant in the room is

2    this, and this is to make the record, as Ms. Kanof mentioned,

3    in terms of effective assistance of counsel, vis-à-vis 2255,

4    and I hope that Mr. Perez understands what I'm about to do is

5    because it's my obligation to protect Mr. Delgado's rights in

6    terms of his constitutional right to counsel, which is the

7    following, is that Mr. Delgado was never provided with the plea

8    offer as it relates to the 2012 case by Mr. Perez.

9         The first time that Mr. Perez spoke with Mr. Delgado

10   was evidently last night before this hearing.  The plea offer

11   in and of itself expired on the 15th.  It was sent out last

12   week.  So you already have as an undisputed fact that there was

13   a plea offer sent to his counsel in the case and that plea

14   offer was never relayed to him by his counsel in that case and

15   it expired.  There's a problem.

16        Secondly, when I have -- when I go meet Mr. Delgado

17   part of the component of this offer is notice that there's, for

18   the first time that I know of, that there's a Second Addendum

19   that was never provided or reviewed with Mr. Delgado by his

20   attorney in that case.

21        There was the sentencing hearing date set that was

22   never provided to Mr. Delgado by his counsel.  I mean, the list

23   goes on in terms of the, you know, lack of communication and

24   counsel between the two.  And part of it, as Mr. Perez

25   correctly stated, is that the initial component of this case

1   that Mr. Perez was appointed to was as appellate counsel, and

2   as the Court knows full well, there are distinctly different

3   relationships and requirement obligations as it relates to

4   attorney-client communications from a trial counsel to an

5   appellate counsel.  There tends to be less direct one-on-one

6   communication with appellate clients as opposed to trial

7   clients, and that's true in that case in that Mr. Perez only

8   ever met Mr. Delgado once in the entirety of the appellate

9   case.  He didn't meet him to even provide a copy of the opinion

10  that brings us back here for this resentencing or to discuss

11  it.

12          And as he said, Mr. Perez himself, it would take

13  months for any lawyer to get up to speed for a sentencing, any

14  sentencing.  We know this on a day-to-day basis, Your Honor, in

15  the sense that the district court cases come in and there's

16  usually a three-month time frame when a PSR is prepared.  It's

17  investigated.  It's sent to the lawyers.  The lawyers then, you

18  know, review it, go through the record.

19          Well, you have in front of you a case that was a

20  trial, not only was it a district court case, but it was an

21  actual case that went to trial with a record that goes with

22  that.

23          THE COURT:  Of which Mr. Perez is very familiar with.

24          MR. HANSHEW:  Well, but Mr. Perez has never once

25  spoken with Mr. Delgado about it.

1    THE COURT:  Well, that's between them.  That's not --

2    MR. HANSHEW:  Well, but that's ineffective assistance

3  and so for this Court to force Mr. Delgado into having a

4  sentencing hearing next week with a counsel who, no one can

5  dispute, there is no way factually that anyone in this

6  courtroom, the Government or this Court or Mr. Perez, that

7  there's a breakdown in the attorney-client relationship.

8    When your lawyer hasn't even provided you with a plea

9  offer and it expired, that is de facto.

10    MS. KANOF:  Your Honor, we'll extend the date on the

11  plea offer.  The fact that it expired shouldn't be a

12  consideration because having learned that he did not

13  communicate it in ample time to discuss it with his client, the

14  Government certainly is not going to -- going to jeopardize

15  Mr. Delgado's opportunity to get a great benefit by not

16  extending that offer.  So we'll certainly extend the date of

17  that offer to say the date before the -- or two days before the

18  sentencing.  You know, we're certainly open to do that.

19    MR. PEREZ:  And, Your Honor, with all due respect to

20  Mr. Hanshew, he's made representations I guess based on I don't

21  know what, but it's absolutely not correct that I've only met

22  with my client once and I want to make that very clear.  I have

23  been meeting with Mr. Delgado from time to time.

24    When the opinion in this case came down, it was

25  conveyed to the federal offender immediately.  My

1  understanding, and I learned very quickly, is that Mr. Hanshew

2  had gone and discussed it with Mr. Delgado.

3         I was involved with other matters at that time, so I

4  didn't immediately go talk to Mr. Delgado since I knew that he

5  had already been discussed with respect to the opinion, he had

6  talked about it.

7         We have talked about different things.  As soon as

8  this Court set this case for sentencing, I was in communication

9  with Ms. Franco with respect to what this Court had done and we

10 had discussed amongst us that they had an offer and that they

11 were negotiating it.

12        It's news to me that they didn't discuss the entire

13 offer.  It sounds to me like they only discussed part of the

14 offer, and therein lies part of the problem in this case.  If

15 -- if they're only discussing the offer that pertains to their

16 case and not the offer that pertains to the other case when

17 it's a global offer, and --

18        THE COURT:  Well, I'll tell you one thing, Mr. Perez.

19 I'm not going to agree to any offer that doesn't comply with

20 the guidelines in this particular case.

21        First of all, he's been found guilty.  All we got to

22 do is apply to guidelines, determine the sentence.  And I'm not

23 going -- there will be no negotiations having to do with this

24 particular case that I am going to accept.  I'm going to apply

25 the guidelines as I find them, and if he wants to appeal it

```
1    again, he can appeal it again.  You can take up the appeal
2    again.  Okay.
3               MR. HANSHEW:  I'd object then to -- the Court's
4    predetermined the case and ask the Court to recuse itself.
5               THE COURT:  I'm sorry?
6               MR. HANSHEW:  For the Court to say that it's already
7    determined --
8               THE COURT:  No.
9               MR. HANSHEW:  -- without having a sentencing hearing--
10              THE COURT:  No.  I'm asking you to file objections,
11   Mr. Perez, if you have any objections.  I'll consider whatever
12   objections you have, but I want them to Mr. Luevano by Monday.
13              And, Mr. Luevano, I want you to respond by Wednesday.
14              PROBATION OFFICER:  I will, Your Honor.
15              THE COURT:  Because I want everybody to have at least
16   one day ahead of time.
17              MR. PEREZ:  And I've been in trial all week,
18   Your Honor.  I just got out and I start another trial in a
19   aggravated sexual assault of a child on Monday.
20              THE COURT:  I'm sorry?
21              MR. PEREZ:  I have been in trial all week.  I just got
22   out of trial and I'm heading to another trial next week in an
23   aggravated sexual assault of a child case.
24              THE COURT:  Well, you better get off on Thursday
25   because you're going to be here on Thursday.
```

1          MR. PEREZ:  And I'm just making part of the record,

2     Your Honor, that I am swamped --

3          THE COURT:  I have not seen any objections.  I have

4     not seen a motion for continuance.

5          MR. PEREZ:  Well, there will be a motion that's going

6     to be forthcoming today and I'm going to set forth the reasons,

7     Your Honor.

8          THE COURT:  Set them out, but I'm not going to

9     continue it.  Thursday is going to be -- I'm going to issue a

10    sentence in this case.  Prepare for that.

11         MR. HANSHEW:  Your Honor, I just ask the Court to make

12    a -- I'm asking the Court to recuse itself based on the

13    comments here today to make a ruling on it.

14         THE COURT:  Based on what?

15         MR. HANSHEW:  The Court has just indicated that it's

16    predetermined any plea that it would accept that has to be

17    based on the guidelines.  The Court has explained that it's

18    going to follow the guideline at the sentencing.  In other

19    words --

20         THE COURT:  I haven't said anything about the second

21    case.  I don't even know what the guidelines are on the second

22    case.

23         MR. HANSHEW:  But I'm talking about the first case.

24         THE COURT:  Oh, yeah.  I've got the guidelines right

25    here.

1          MS. KANOF:  If I may, Your Honor.  I disagree with

2    Mr. Hanshew.  The Court making a statement that it will follow

3    the guidelines absolutely positively is not a basis for

4    recusal.  It's basically saying the Court will follow the law.

5          MR. HANSHEW:  That's not the law.  We all know that

6    every single day 3553, *Booker* and all its progeny is the law.

7          THE COURT:  Counsel --

8          MR. HANSHEW:  And the law says --

9          THE COURT:  That's enough.  That's enough.

10          If you have objections, Mr. Perez, file them by

11    Monday.

12          MR. PEREZ:  That'll be fine.

13          THE COURT:  I'll consider whatever objections you may

14    have.  I'm just surprised that there have not been any

15    objections.  This thing has been set for, what, a couple of

16    weeks?

17          MR. PEREZ:  That's my point, Your Honor.  A couple of

18    weeks.  Sentencing on a case like this involves more than a

19    couple of weeks.  A cold appellate record is one thing.

20    Sentencing involves 3553 factors which include the family,

21    which include evaluations of this gentleman.  I know a psychic

22    [sic] report had been filed previously.  It may not go as to

23    competency to proceed with this matter, but it absolutely may

24    have matters to do with mitigation.  And if I'm going to be

25    proper counsel to do a sentencing, I probably have to request

1    another psych evaluation.  I need to know this gentleman as a

2    person, not just as a cold appellate record.

3          And, yes, I knew the appellate record, but I did not

4    know him as a person to be able to present adequate 3553

5    factors for this Court to consider in sentencing.

6          MS. FRANCO:  Your Honor, if I may, the Court's

7    statement that you're going to find -- do a sentence on this

8    first case based on the guidelines, and as Ms. Kanof said, the

9    guidelines is just one portion that the Court's supposed to be

10   looking at.  I mean, there are the 3553(a) factors, and so I

11   think that based upon that, that's what rises [sic] a concern

12   as to whether or not this Court should recuse itself if it's

13   already made up its mind before objections have been filed and

14   you're indicating that you're not going to consider any 3553(a)

15   factors.  And Mr. Perez is telling you he can't be ready by

16   Thursday for -- to give you any 3553(a) factors, and so, if the

17   Court -- we're asking for a ruling on Mr. Hanshew's request

18   that it recuse itself on the first and subsequent case.

19         THE COURT:  You're asking for a ruling on what?

20         MS. FRANCO:  On our request that you recuse yourself.

21         THE COURT:  Oh, I'm not going to recuse myself.

22         MS. FRANCO:  Okay.

23         MS. KANOF:  Your Honor, I would like to add for the

24   record that the Government is ready to file a Sentencing

25   Memorandum in which the Government asks for the -- we can't ask

1   for an upward variance because the guidelines reach 240 months,

2   but we ask for the top based on the 3553 factors.  So if -- the

3   Judge is basically -- would be telling the Government that they

4   wouldn't be granting their request either, and I don't think

5   the Court is doing either of those things.  He hasn't said he

6   wouldn't consider 3553.  He -- and as we know, and within

7   guideline sentences presume to be lawful and I think this is

8   really an uncomfortable attempt to inappropriately ask the

9   Judge to step off the case when he's been very fair and very

10  honest with the Defendant.

11         MR. HANSHEW:  We respectfully disagree with that.  And

12  also, Your Honor, we'd ask the Court to consider make a ruling

13  on Mr. Delgado's motion to substitute counsel in the 2012 case,

14  and he has, as I've already stated, the attorney-client

15  relationship has been destroyed between him and Mr. Perez as a

16  result of the facts that we've discussed.

17         THE COURT:  You're asking for -- let me get that

18  again.  To substitute counsel on the other case?

19         MR. HANSHEW:  On the 2012 case.

20         THE COURT:  You're not involved in that case.

21         MR. HANSHEW:  Well, I'm here and somebody has to

22  protect his rights, and I would ask him to be able to make that

23  motion because what's happened to him in just the last two

24  weeks, Your Honor, has made it clear that he has a right to ask

25  for substitute counsel based on the occurrences.

1          THE COURT:  Well, that's between them.  I have no

2     motion before me.  I'm not going to make any ruling on that.

3          MR. HANSHEW:  I'm -- I'm making a motion.

4          THE COURT:  No.  You're not involved in that case --

5          MR. PEREZ:  A motion will be forthcoming in writing,

6     Your Honor.  I discussed it with Mr. Delgado based on my prior

7     discussions with Ms. Franco and what I had discussed with him

8     previously, he thought that he should have one lawyer to handle

9     both, and he was comfortable with the federal defender

10    proceeding with that, so I will be filing a motion with respect

11    to that.

12          THE COURT:  File your motion.  File your motion.  File

13    all your motions.  But I want the objections by Monday to

14    Mr. Luevano --

15          MR. PEREZ:  Absolutely, Your Honor.

16          THE COURT:  -- based on the Addendum.

17          MR. PEREZ:  They will be filed, Your Honor.

18          THE COURT:  The Government and Mr. Luevano respond by

19    Wednesday.

20          You-all may be excused.  We'll be in recess.

21                         *  *  *  *  *

22

23

24

25

1                        CERTIFICATION

2

3        I certify that the foregoing is a correct transcript from

4    the record of proceedings in the above-entitled matter.  I

5    further certify that the transcript fees and format comply with

6    those prescribed by the Court and the Judicial Conference of

7    the United States.

8

9    Date:  June 22, 2015

10                                    /s/ Maria del Socorro Briggs

11                                    Maria del Socorro Briggs

12

13

14

15

16

17

18

19

20

21

22

23

24

25