IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| Plaintiff, | § | |
| | § | |
| **V.** | § | **CAUSE NO. EP-13-CR-370-DCG** |
| | § | |
| **MARCO ANTONIO DELGADO** | § | |
| Defendant, | § | |
| | § | |

## GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO DISQUALIFY

Comes now the United States of America, by and through the United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, and respectfully files this, its Response and Opposition to Defendant's Motion to Dismiss Or, in the Alternative, Disqualify.  In support of its contention that this Motion be denied, in all things, the Government shows unto the Court the following:

### I.

Defendant Marco Antonio Delgado moves to dismiss the indictment against him, or in the alternative, to disqualify the United States Attorney's Office for the Western District of Texas based on interaction between the prosecutors and a key witness for the government in this case, Fernando Gireud.  Defendant asserts that the prosecutors unlawfully acted as counsel for Mr. Gireud, and in the process, interfered with his response to a subpoena *duces tecum* issued by the Court.  The government disagrees with both contentions.  Moreover, even if the government should not have assisted Mr. Gireud in connection with the subpoena, the assistance caused no

harm to Defendant, and the prosecutors' actions certainly do not justify the extraordinary relief Defendant seeks.

## II.

The prosecution against Delgado involves alleged fraud by Defendant in connection with a contract entered between Mr. Gireud's company, FGG Enterprises (FGG), and a Mexican state-owned utility company, Comisión Federal de Electricidad (CFE), to provide power generating equipment and maintenance service. According to the superseding indictment, Defendant, a lawyer, provided services to Gireud's company in securing the contract in exchange for a percentage of the payments to FGG under the contract. The indictment alleges that Defendant fraudulently diverted payments to an off-shore account and made various false representations in connection with the performance of the contract. Gireud is an important witness to these allegations.

## III.

The pertinent facts relevant to Defendant's motion are as follows: Unbeknownst to the government, Defendant Delgado secured an *ex parte* subpoena *duces tecum* for the pretrial production of documents from Gireud. The date for compliance was Monday, April 11, 2016. On or about Wednesday, April 6, 2016, four business days before the due date, Gireud contacted one of the case agents and asked to speak with the prosecutors. The prosecutors, the agent, and Gireud then spoke via telephone. Gireud conveyed that he had been earnestly trying to respond to the subpoena requests and expressed frustration that he had not been able to reach his attorney.[1] Sometime prior to the phone call, Gireud had sent a copy of the subpoena to the agent,

---

[1] Sometime prior to the telephone call on April 6, 2016, Gireud had called Agent Fry and asked about the subpoena. Fry in turn called AUSA Arreola and, at her instruction, Agent Fry told Gireud to call his lawyer.

who forwarded it to the prosecutors.  Neither the subpoena nor the Court's order regarding the subpoena indicate that the documents are sealed.  During the call, AUSA Kanof retrieved the subpoena and reviewed the list of items.  Gireud expressed concern that he had already provided the government with many of the documents requested in the subpoena and asked whether the government had given them to Delgado.  AUSA Kanof responded that the government had provided them to Delgado, but that Gireud also had to provide them to the Court in accordance with the subpoena.  Gireud also indicated that some items requested by the subpoena did not exist.  AUSA Kanof responded that if they did not exist, obviously he could not provide them. AUSA Kanof indicated he should provide all of the requested documents and not substitute items that were not requested by the subpoena.

AUSA Kanof believed that the subpoena was subject to challenge because it was being used as a tool to circumvent criminal discovery rules.  She told Gireud that the government may be filing a motion to quash the subpoena.

On the morning of Monday, April 11, 2016, Gireud called AUSA Kanof and informed her that his mother had died the day before and that he needed to go to Mexico right away.  He was grief stricken.  Gireud conveyed to AUSA Kanof that he was concerned he had not had sufficient time to review the documents for completeness.  Kanof attempted to calm Gireud and told him she would tell the judge what happened and ask the judge if he could have a little more time when he returned from the funeral.  She told him that he could drop off the documents, and she would make sure they reached the Court.

Later that morning, Gireud brought to the lobby of the Federal Building the documents that he had collected.  The government took a cursory look at the documents, had the documents copied, and shortly thereafter, delivered, in their entirety, to the Court.  The only action AUSA

Kanof took with respect to the documents was to instruct her assistant to place individual tax returns bearing personal identification information into an envelope. The envelope was placed in the stack of documents provided to the Court (in the same order).

As AUSA Kanof had promised, in the early afternoon of April 11, 2016, the government filed a motion for extension of time for Gireud to respond to the subpoena. Soon thereafter, the Federal Public Defender protested the government's actions to the U.S. Attorney in a telephone call. The Public Defender identified three remedial actions she wanted the government to take: first, withdraw the motion for extension of time; second, provide copies of the documents to the FPD's office; and third, explain what the AUSA told Gireud. The U.S. Attorney's Office completed all of these steps by the following morning.[2] The government did not interfere with the production of any documents under subpoena, but instead, ensured that all of Gireud's documents were provided to the Court by the deadline.

## IV.

Delgado first contends that the prosecutors unlawfully represented Gireud in violation of the government ethics statute, 18 U.S.C. § 205. His accusation is utterly meritless and oversteps the bounds of zealous advocacy. The AUSAs' relationship with Gireud is based solely on his status as a witness with whom an investigative agent and prosecutors had met to investigate the case against Delgado and to prepare the case for trial. No attorney client relationship was established between either AUSA and Mr. Gireud. Indeed, at the time of the events at issue,

---

[2]      The government filed a motion to withdraw its motion for extension of time at approximately 5:31 p.m. The following morning, at approximately 11:39 a.m., it filed another pleading, as had been requested by the FPD, to set forth in greater detail the exchange between Mr. Gireud and the AUSA. Despite having requested it, the Defendant ridicules this pleading in footnote 3.

Gireud was represented by El Paso attorney Mary Stillinger,[3] who had previously authorized the AUSAs and investigative agent to talk with her client in her absence.[4]

On April 11, 2016, Gireud contacted AUSA Kanof because he was distraught by his personal tragedy and concerned about timely compliance with the subpoena. She did not enter into an attorney-client relationship with Gireud and did not undertake to represent him. Whatever statements were made to him were either an admonishment to comply with the subpoena or a common sense observation that he could not produce documents that did not exist and was not required to provide documents not called for by the subpoena. The mere fact that these statements were made by an attorney does not make them "legal advice."

The AUSAs did not review documents to assess whether they were responsive and they did not withhold any documents. That the AUSAs filed a motion seeking more time for him to comply with the subpoena, as a result of the death of his mother, did not amount to unlawful representation of him. To the contrary, as officers of the Court, the prosecutors were compelled to notify the Court that the witness had contacted the government to express concerns about his

---

[3]     Defendant's contention that the AUSAs violated rules prohibiting contact with represented persons is baseless. In his Motion, the Defendant claims that Gireud was not represented by counsel and yet then also argues that the AUSAs communicated with a represented party and thus violated the professional responsibility rules prohibiting such conduct. The Defendant cannot have it both ways. Nevertheless, it is clear that Gireud was represented by counsel at the time of his interaction with the AUSAs on this matter. Gireud's counsel agrees that Gireud was represented on this matter and that Gireud was permitted to meet and communicate with the AUSAs and agents, whenever requested by them. Regardless of whether Gireud was represented, the AUSAs' contact with Gireud was not improper and their interaction with him did not give rise to any violation of federal law or rule of professional conduct and does not give rise to the extraordinary relief requested here. This point is largely a red herring and irrelevant to the Court's determination of this matter.

[4]     On May 9, 2016, Stillinger informed AUSA Kanof that she was terminating her representation of Gireud as of that date. She further informed AUSAs Kanof and Arreola that Gireud is now represented by Colin Hobbs. On May 11, 2016, Colin Hobbs authorized the AUSAs and investigative agent to talk with his client in his absence, as Stillinger had before Hobbs.

current ability to comply with the subpoena in light of his personal tragedy.  The motion was intended to *preserve* the integrity of the subpoena process, not subvert it.  (Indeed, absent the motion, a false impression about Gireud's compliance with the subpoena might have resulted). If the AUSAs had intended to interfere with Gireud's compliance with the subpoena, there would have been no reason for them to have requested more time for him to comply.  The AUSAs did not obstruct the Defendant's or the Court's access to Gireud's documents and they did not request him to refrain from providing the items requested by the subpoena.  Indeed, the Government promptly had the documents provided by Gireud delivered to the Court, in their entirety.

In *McCant v. Allstate Ins. Co.* 1989 WL 149215 (E.D. LA 1989), the court ruled that no attorney client relationship was established between a crime victim and the prosecutor, despite the fact that the prosecutor provided some advice to the victim.  In *McCant*, an Assistant District Attorney was visited by a woman seeking to press criminal charges against her husband for physical abuse; during that meeting, the prosecutor advised the woman that she could move back into her home and have her husband evicted.  Because the prosecutor's sole duty was to the state, and his sole client was the state, the court ruled that no attorney client relationship was or could be established.  Likewise, here the prosecutors' sole duty is to the United States, and Gireud could not reasonably have considered the prosecutors to be representing him.  Indeed, Gireud had his own counsel and advised that he had attempted to communicate with counsel a number of times.

The mere filing of a request that the Court provide Gireud more time to respond to the subpoena, in light of his personal tragedy, did not convert the relationship into an attorney-client or agency relationship.  The mere fact that the relief sought would benefit the witness, does not

render the prosecutors agents or attorneys for the witness.  Instead, the Motion made clear that the prosecutors were acting on behalf of the United States and that Gireud had his own counsel.

Defendant asserts the government inserted itself into a sealed proceeding.  Indeed, the government was unaware of Defendant's *ex parte* request for a subpoena and did not insert itself into that process in any way.  Contrary to Defendant's assertion, however, the subpoena and the Court's order pertaining thereto were not sealed.  The government's mere receipt of those documents from Gireud does not support any contention of government interference with the Defendant's subpoena.  Defendant also suggests the government obtained the documents in order to subvert an *ex parte* process when he states, at page 10, that the government "reviewed material not meant for its eyes."   To the contrary, as part of its Order, signed March 4, 2016, the Court included: "It is further ORDERED that counsel for the defense and government be contacted once the requested documents are produced so that counsel may inspect the documents." Because the order specifically provided that both the defense and the government would be permitted to inspect the documents, it is not reasonable to suggest the government's receipt of the documents was misconduct.   Moreover, the government promptly had the documents delivered to the Court in their entirety.

## V.

Defendant claims that the government's interactions with Gireud amounted to misconduct and argues that this warrants dismissal of the indictment.  As established above, the government did not commit misconduct in this case.  Moreover, even if the defendant could prove misconduct—which he cannot, he cannot satisfy the exacting standard for dismissal. "Government misconduct does not mandate dismissal of an indictment unless it is 'so outrageous' that it violates the principle of 'fundamental fairness' under the due process clause

of the Fifth Amendment." *United States v. Mauskar,* 557 F.3d 219, 231-232 (5th Cir. 2009). "The standard for proving outrageous governmental conduct is extremely demanding." *United States v. Sandlin,* 589 F.3d 749, 758 (5th Cir. 2009). "Such a violation will only be found in the rarest of circumstances." *United States v. Johnson,* 68 F.3d 899, 902 (5th Cir. 1995). Under the facts and circumstances here, the Defendant cannot satisfy this demanding standard. To justify the extreme remedy of dismissal of a valid indictment, Delgado must show prejudice as a result of the government's conduct. *Johnson,* 68 F.3d at 902-03. Defendant has wholly failed to establish prejudice.

## VI.

The most Defendant can establish is that the government communicated with a witness concerning the subpoena for records he received and that it received the records prior to the Court and the defense. He cannot establish that the government interfered with the production of records or tampered with the records produced. To the contrary, the government attempted to facilitate compliance. Accordingly, he has not and cannot establish prejudice.[5]

Moreover, in evaluating whether Defendant was prejudiced by the government's conduct, it is important to also consider whether Defendant was entitled to obtain a subpoena for the records in the first instance. It is readily apparent from the face of the subpoena that Defendant failed to make the legal showing required for issuance of a Rule 17(c) subpoena.

Rule 17(c) was "not intended to provide an additional means of discovery" to defendants in a criminal case. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951); *accord, e.g.*, *United States v. Arditti*, 955 F.2d 331 (5th Cir. 1992). Instead, Rule 16 is the primary means of

---

[5]     Delgado further claims that the government destroyed the "chain of custody" of the documents. This argument is nonsensical. The admissibility of the documents is based upon authentication, relevance, and compliance with the other Federal Rules of Evidence, not chain of custody.

discovery in criminal cases. "[Rule 16] delineates the categories of information to which defendants are entitled in pretrial discovery in criminal cases, with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." *United States v. Llanez-Garcia*, 735 F.3d 483, 493 (6th Cir. 2013) (quoting *United States v. Ramos*, 27 F.3d 65, 68 (3d Cir. 1994)).   In contrast to Rule 16, Rule 17(c) "implements a criminal defendant's constitutional right 'to have compulsory process for obtaining witnesses in his favor' by providing a means to subpoena witnesses and documents for a trial or a hearing." *Llanez-Garcia*, 735 F.3d at 493 (quoting U.S. Const. amend. VI). The Supreme Court observed that "[i]t was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms." *Bowman Dairy*, 341 U.S. at 219.

The Supreme Court and the Fifth Circuit have cited approvingly the four-part test in *United States v. Iozia*, 13 F.R.D. 335, 338 (SDNY 1952), for the required showing that a party must make in order to obtain documents under Rule 17(c). *See United States v. Nixon*, 418 U.S. 683, 698-99 (1974); *United States v. Bearden*, 423 F.2d 805, 810 n.4 (5th Cir. 1970). The *Nixon* Court recognized that most courts, in the wake of the *Bowman* decision, followed the formula promulgated in *Iozia*, which requires the party moving for issuance of the subpoena to show the following: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'"   This test has been adopted by the courts for determining whether a criminal defendant may obtain a Rule

17(c) subpoena.  *See e.g., Llanez-Garcia*, 735 F.3d at 493 ("To contain the danger that criminal defendants might misuse Rule 17(c) to expand the scope of discovery, the Court in *United States v. Nixon* held that a defendant could subpoena materials using a Rule 17(c) subpoena only if four conditions are met."); *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (party seeking a subpoena *duces tecum* pursuant to Rule 17(c) must show four conditions in *Nixon*); *United States v. Richardson*, 2014 WL 6475344, at *1 (E.D.La. 2014) (slip copy) (burden is on moving party to establish four criteria in *Nixon*); *United States v. Hankton*, 2014 WL 6475344, at *1 (E.D.La. 2014) (slip copy) (same).

Delgado cannot establish that he satisfied the four-prong *Iozia* test.  Many of the documents requested by the subpoena had already been produced to Delgado by the government. These documents included, for example, but are not limited to:  under item #1, the Articles of Organization for FGG; under item #2, the Power of Attorney dated July 2009; under item #11, the Teaming Agreement dated August 2009 and addendum; under item #14, the contract between MPSA and FGG; under item #15, the Agua Prieta II contract dated January 6, 2010; and under item #20, the Sulzer contract.  Because these documents had already been produced, Delagdo cannot meet the second *Iozia* prong, that "the documents are not otherwise procurable reasonably in advance of trial by exercise of due diligence."[6]

In addition, some of the requested items do not exist (e.g., a fee agreement and power of attorney between FGG and its accountant).  As noted above, Rule 17(c) was not intended to

---

[6]     Similarly, the Rule 17(c) subpoena that Defendant issued to Mitsubishi Power Systems Americas (MPSA) predominantly requested items that had already been produced in discovery or which otherwise appear to support the conclusion that the subpoenas are being used as a fishing expedition.  The government is separately filing under seal a letter sent from counsel for MPSA to Delgado's counsel identifying documents that had already been produced.

provide defendants with a mechanism to engage in a "fishing expedition," *Iozia*, 13 F.R.D. at 338.[7]

## VII.

Defendant also seeks to disqualify the U.S. Attorney's Office for the Western District of Texas.  Disqualifying a USAO from prosecuting a criminal defendant raises serious separation of powers concerns.  *United States v. Bolden,* 353 F.3d 870, 877 (10th Cir. 2003); *United States v. Cox,* 342 F.2d 167, 171 (5th Cir. 1965) ("It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions.").  Indeed, "every circuit court that has considered the disqualification of an entire United States Attorney's Office has reversed the disqualification."  *Bolden*, 353 F.3d at 879.  "Disqualification cases are governed by state and national ethical standards adopted by the court."  *Horaist v. Doctor's Hospital of Opelousas,* 255 F.3d 261, 266 (5th Cir. 2001).     The Tenth Circuit has stated that it can "only rarely—if ever—imagine a scenario in which a district court could properly disqualify an entire United States Attorney's office," and that "disqualifying an entire United States Attorney's Office is almost always reversible error regardless of the underlying merits of the case." *Bolden*, 353 F.3d at 875–76. Defendant has failed to satisfy this heavy burden.

In support of his argument, Defendant cites to several provisions of the ABA Model Rules of Professional Conduct.  He claims the government violated ABA Model Rule 3.4(a) which "requires fairness to the opposing party."  Defendant has established no facts that support the conclusion that "destruction or concealment of evidence, improper influencing witnesses,

---

[7]     The subpoena also appears to be an attempt to harass and intimidate Gireud.  Item #3 refers to Gireud as "Fernando Gireud aka Perico Gireud."  The investigation has revealed that "Perico" was a derogatory nickname that Delgado called Gireud.

obstructive tactics in discovery procedure…" occurred.   ABA MODEL R. 3.4 cmt. 1. Likewise, Delgado suggests a conflict of interest between the government and Gireud in violation of ABA Model Rules 1.7(a) and 1.9(a) based on representation of current and former clients. However, as argued previously, no attorney-client relationship between the AUSAs and Gireud was established, and the AUSAs did not act as attorneys or agents for Gireud.  Instead, the facts here illustrate that the prosecutors ensured the documents were timely provided to the Court and ensured the Court was aware Gireud needed additional time to determine whether he had fully complied with the subpoena.  To the extent that Defendant is arguing that AUSA Kanof has made herself a witness, this argument is similarly without merit.  Defendant has not shown that AUSA Kanof's testimony would be "both necessary and unobtainable from other sources." *United States v. Crockett,* 506 F.2d 759, 760 (5th Cir. 1975).   The case agent was privy to all communications with Gireud and can establish any essential facts in the case.  And, Gireud is himself a party and thus a witness to these communications.   Defendant cannot establish that any necessary testimony could not be obtained from other sources.

## VIII.

When all is said and done, Defendant can establish only that the documents Gireud produced passed through the hands of the AUSAs.  This was not misconduct.  Moreover, the AUSAs' actions caused no harm to Defendant.  The documents were timely provided to the Court and Defendant and any issues about the existence of other responsive documents Gireud might possess have been preserved.  There is no basis in fact or law for dismissal of the indictment or disqualification of the U.S. Attorney's Office.  Accordingly, Defendant's motion should be denied.

WHEREFORE, PREMISES CONSIDERED, the United States respectfully prays Defendant's Motion to Dismiss, or in the alternative, to Disqualify, be, in all things, DENIED.

Respectfully submitted,

RICHARD L. DURBIN, JR.
United States Attorney
Western District of Texas

By:     _____/s/_____
Jose Luis Gonzalez
Texas Bar No.
Assistant U.S. Attorney
700 E. San Antonio Ave, Ste 200
El Paso, Texas  79912
(915) 534-6884

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2016, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record, Maureen Franco and Erik Hanshew.

_____/s/_____
Jose Luis Gonzalez
Assistant U.S. Attorney