1              IN THE UNITED STATES DISTRICT COURT

2                  WESTERN DISTRICT OF TEXAS

3                     EL PASO DIVISION

4                      VOLUME 1 OF 1

5

6   UNITED STATES OF AMERICA            EP:13-CR-0370-DCG

7   v.                                  EL PASO, TEXAS

8   MARCO ANTONIO DELGADO                September 19, 2016

9
            **TESTIMONY OF MARSHAL SANDOVAL MARTINEZ**
10            THE HONORABLE DAVID C. GUADERRAMA
              UNITED STATES DISTRICT JUDGE
11

12  APPEARANCES:

13  For the Government:   Debra Kanof
                          Anna Arreola
14                        Jose Luis Gonzales
                          Assistant United States Attorney
15                        700 East San Antonio, Suite 200
                          El Paso, Texas 79901
16
    For the Defendant:    Maureen Franco
17                        Erik Hanshew
                          Assistant Federal Public Defender
18                        700 E. San Antonio, Suite 410
                          El Paso, Texas  79901
19
    Court Reporter:       Kathleen A. Supnet
20                        El Paso, Texas
                          (915)834-0573
21                        kathi.supnet5303@gmail.com

22

23

24        Proceedings reported by mechanical stenography,

25  transcript produced by computer-aided software and computer.

KATHLEEN A. SUPNET, CSR

```
 1                 (Proceedings begin at 9:21 a.m.)

 2                 (Defendant not present.  Jury not present.)

 3                 THE COURT:  Let the record reflect the jury is not

 4   present, the United State's represented by its assistant United

 5   State's attorney is present.  The defendant's counsel is

 6   present.

 7                 All right.  Someone from the marshal's office that

 8   knows something about this, can you come on up and let's put you

 9   on the stand and get you on the record.

10                 Sir, if you'd raise your right hand?

11                 (Marshal sworn by the Court.)

12                                 EXAMINATION

13                 THE COURT:  All right.  Sir, if you'd just state your

14   name and how you're employed and then tell us what you know

15   about what happened this morning.

16                 MARSHAL MARTINEZ:  My name is Salvador Martinez.  I'm

17   employed with the United State's Marshal Services.

18                 THE COURT:  Okay.  And Deputy, what occurred this

19   morning with the defendant?

20                 MARSHAL MARTINEZ:  This morning we started our day

21   around 8:30 downstairs in the cellblock, where we got Mr. --

22   our --

23                 THE COURT:  Delgado.

24                 MARSHAL MARTINEZ:  -- Delgado prepped to come back up.

25                 We brought him up around 8:45.  We went inside the
```

1   cellblock to bring him out to the courtroom, so he could stand

2   for his trial.  I asked him to get dressed.  Once I asked him to

3   get dressed, I told him that he had to get handcuffed.  He at

4   that point said, no, I'm not going to get handcuffed.  He [sic]

5   said, you need to understand you're a detainee and you can't be

6   walking around freely, so you need to be handcuffed.  At that

7   point he said, well, you've got to -- he said, you have to --

8   well, just do it then.

9         At that point, I went to go handcuff him.  When I went

10  to go handcuff, he started to resist.  When he started to

11  resist, we put him against the wall and he hit himself against

12  the wall with his face.

13        THE COURT:  And that's it?

14        MARSHAL MARTINEZ:  Yes, sir.

15        THE COURT:  And was there any visible marks on his

16  face as a result of that --

17        MARSHAL MARTINEZ:  Not that I saw, sir, but we did

18  call EMS, and EMS took his vitals and they escorted him to UMC.

19        THE COURT:  And did the EMS people tell you anything

20  about it?  I mean, was it their decision to take him or --

21        MARSHAL MARTINEZ:  No, it was Mr. Delgado's decision.

22        THE COURT:  So Mr. Delgado wanted to go.

23        And did the EMS people indicate there was any

24  particular reason why they needed to take him?

25        MARSHAL MARTINEZ:  Other than him complaining about

1    his neck and shoulder pain, I believe he said.

2              THE COURT:  And did he lose consciousness at all?

3              MARSHAL MARTINEZ:  No, sir.

4              THE COURT:  All right.

5              Do any of you have any questions?

6              MS. KANOF:  Of the Court.  Could you -- Your Honor, we

7    have a witness here from Mexico, who's here voluntary not under

8    subpoena, and I guess maybe nobody can estimate what's going to

9    happen, but --

10             THE COURT:  Well, I'm going to see if I can get

11   some from -- if the defendant voluntarily removed himself, we'll

12   continue trial without him.  The Fifth Circuit is clear.

13             MS. KANOF:  Oh, okay.

14             THE COURT:  So, I was hoping the EMS people wouldn't

15   have left, yet.  But what I've heard so far is not impressing me

16   that this was not a voluntary departure, but I'll certainly hear

17   from the medical crew and see if they thought that they needed

18   to take him or whether Mr. Delgado wanted to be removed.

19             MR. HANSHEW:  Your Honor, if I may?

20             THE COURT:  Absolutely.

21             MR. HANSHEW:  Ms. Franco and myself went back there.

22   We are asked to go back there by the marshals at the request of

23   EMS.  The EMS officials wanted to take him away and Mr. Delgado

24   was resisting that.  He did not -- he did not want to leave.

25   And it wasn't till we came back there and EMS told us flat out

1    that they wanted to take him, because he was not only saying his

2    face hurt and his shoulder hurt, he was also visibly shaking out

3    of control.  They wanted to take him and they told us as much.

4    And it was Ms. Franco and I that advised Mr. Delgado that these

5    guys are the medical experts.  They're saying that you need to

6    go to the hospital.  You should follow the instruction.

7              This was not -- no offense to this marshal, but this

8    is not a case of him saying I want to go to the hospital.  In

9    fact, they literally came out here to take us back there to try

10   to assist to get him to go there, Judge.

11             THE COURT:  All right.

12             Can we get the EMS people back here and so we can have

13   them tell us what it was that happened and how it happened?

14   Because I'm going to make a call whether it was voluntary or

15   not.  If it was a voluntary removal, we're continuing our trial.

16             MS. KANOF:  We would have to have a sense of the

17   marshals' service in identifying for the EMS division.

18             THE COURT:  Okay.  Well, let's spend the morning doing

19   that.  I'm going to send the jury home.  And I want to find out

20   whether he removed himself voluntarily.

21             MS. KANOF:  Are you going to send the jury home for

22   the day?

23             THE COURT:  Well, how long will it take you, do you

24   think, to get this done?

25             MS. KANOF:  I'll let Mr. Gonzalez --

1          THE COURT:  Maybe we can keep them here till noon and

2    see if we can't get them here by then.

3          MR. GONZALEZ:  I'll go visit with the marshals right

4    away, Your Honor.

5          THE COURT:  All right.  We'll be in recess until then.

6          THE COURT SECURITY OFFICER:  All rise.

7          (Proceedings stop at 9:29 a.m. and start at 10:07

8           a.m.)

9          (Jury present.)

10          THE COURT:  Good morning every one.

11          THE JURY:  Good morning.

12          THE COURT:  Please be seated.

13          Let the record reflect that all members of the jury

14    are present, the government represented by the United State's

15    Attorney's Office is present, the defendant's counsel are

16    present.

17          Ladies and gentlemen of the jury, we've come across an

18    issue that unavoidably requires us to recess for the day and we

19    will notify you whether you need to be back here in the morning

20    or whether you might be in recess for even another day.  As we

21    learn more, we'll give you more information about that.

22          But please, while you are away from the courtroom,

23    remember the instructions I gave you earlier about not

24    discussing the case amongst yourselves or with your family

25    member or friends.  You'll have plenty of time to do that once

1    the trial is over.

2            So with that, we'll stand in recess and we'll notify

3    you about when we'll restart.

4            THE COURT SECURITY OFFICER:  All rise.

5            (Jury recessed for the day.)

6            (Proceedings stop at 10:08 a.m. and begin at 10:30

7             a.m.)

8            THE COURT SECURITY OFFICER:  All rise.

9            (Witnesses present at the lectern.)

10           THE COURT:  Okay.  This is the crew that responded to

11   our defendant this morning?

12           UNKNOWN SPEAKER:  Yes, Your Honor.

13           THE COURT:  If you could come on up and just tell us

14   what happened, just so we have an idea of exactly what it was

15   that happened when you saw the patient?

16           All right.  What is your name, sir?

17           PARAMEDIC MUÑOZ:  FST Ray Muñoz.  Fire Suppression

18   Technician Ray Muñoz, EMT paramedic with the El Paso Fire

19   Department.

20           THE COURT:  Okay.  So, this morning you came in.  When

21   you saw Mr. Delgado, what did you see, what did you hear, what

22   did you do?

23           PARAMEDIC MUÑOZ:  It was just a male in a holding

24   cell.  He was alert and oriented times four, which means that he

25   was able to answer my questions to name, place and date.  He had

1    a complaint.  He was just complaining.  He had a medical

2    complaint.

3           At the time, I suggested that if he wasn't sure if he

4    was going to go to a hospital or not, I suggested --

5           THE COURT:  Okay.  You said -- what did you just say?

6    You suggested to him that you didn't know if he was going to go

7    or he suggested to you?

8           PARAMEDIC MUÑOZ:  He wasn't sure if he wanted to go to

9    the hospital, so he wanted to talk to his attorney.

10          THE COURT:  Okay.

11          PARAMEDIC MUÑOZ:  I explained to him that at the end,

12   he was the one that needed to make a decision, not the attorney.

13   But then again, he suggest -- he asked that he wanted his

14   attorney present.  Then I asked the personnel there.  They said

15   that the attorneys were already en route to the cell.  And then

16   when they showed up, I explained very briefly to the attorneys

17   that -- I explained to them what they -- what the complaint was

18   and what had happened, very briefly, and then -- that I

19   suggested for him to go to the ER, because visually I couldn't

20   tell if anything was wrong with him, that he needed more x-rays

21   or more -- something that we couldn't do in the cell.

22   To what -- the attorney, right away, she said, let's -- she

23   suggested to Mr. Delgado that it was a good idea for him to go

24   and get checked.  And then he agreed and then we walked him on

25   the stretcher and took him to the hospital.

1          THE COURT:  So the idea to go to the hospital was your

2     idea?  I mean that was your suggestion?

3          PARAMEDIC MUÑOZ:  No.  He wanted his attorney present

4     to make a decision.

5          THE COURT:  Right.

6          PARAMEDIC MUÑOZ:  We always suggest that it's a good

7     idea to go and get checked because of the complaint he had.  And

8     I explained to him that on the scene, just by looking at him, I

9     couldn't tell if anything was -- and if he had any further

10    injuries.  By then, I had already taken my base lines and vital

11    signs.  And like I said, if he needed more x-rays, per se, to --

12         THE COURT:  Okay.  So, what I'm hearing you say is

13    that the decision whether or not to go was ultimately the

14    patient's, but that you recommended or that you suggested that

15    it would be a good idea for him to go.

16         PARAMEDIC MUÑOZ:  It was -- it -- yes.  Yes.  Yes,

17    sir.

18         THE COURT:  Okay.  All right.  So it wasn't he that

19    was insisting on going?

20         PARAMEDIC MUÑOZ:  No, sir.  He just wanted -- he

21    insisted twice to speak to his attorney and -- which I didn't

22    have a problem.

23         THE COURT:  So his interest was speaking with his

24    attorney --

25         PARAMEDIC MUÑOZ:  First --

1          THE COURT:  -- not so much going to the --

2          PARAMEDIC MUÑOZ:  -- before making a decision.

3          THE COURT:  And you say he's oriented times four.

4    That means he knows his name, he knows where he's at, he knows

5    what time it is and he knows --

6          PARAMEDIC MUÑOZ:  Yes, sir.

7          THE COURT:  Did he lose consciousness while you were

8    there?

9          PARAMEDIC MUÑOZ:  No, sir.

10         THE COURT:  Okay.  So other than your concern about

11   needing x-rays to see if there was any internal damage, from

12   what you were looking at from the vital signs you took,

13   everything looked okay?

14         PARAMEDIC MUÑOZ:  Everything looks fine, sir.

15         THE COURT:  All right.  Thank you.

16         Does either side want to ask anything?

17         MR. HANSHEW:  No, Your Honor.  That's consistent.

18         MS. KANOF:  Nothing from the government.

19         THE COURT:  Okay.

20         Thank you.  Thank you all three very much for coming

21   in.

22         PARAMEDIC MUÑOZ:  Thank you, Your Honor.

23         (Witnesses leave the courtroom.)

24         THE COURT:  All right.

25         Well, its pretty clear to me that this is not an

1    involuntary absentia.  So, we'll just have to wait to see what

2    the hospital tells us.  My guess is he'll be back tomorrow

3    morning, but who knows.  I guess we'll just wait and see what

4    they say.  If they take x-rays, maybe they'll know something

5    else.

6            So, I guess the marshal will -- where's the marshals?

7    Are they all gone?  Somebody will keep us posted, I'm assuming,

8    and then we'll notify both sides of what we hear.  Okay.  All

9    right.  So we'll let you know as soon as we know.

10           MR. HANSHEW:  Thank you, Judge.

11           THE COURT:  All right.  We're in recess.

12           THE COURT SECURITY OFFICER:  All rise.

13           (Proceedings concluded at 10:35 a.m.)

14                          * * * * *

15           I certify that the foregoing is a correct transcript

16    from the record of proceedings in the above-entitled matter.  I

17    further certify that the transcript fees and format comply with

18    those prescribed by the Court and the Judicial Conference of the

19    United States.

20    Signature:/S/KATHLEEN A. SUPNET        November 7, 2016
              Kathleen A. Supnet, CSR        Date

21

22

23

24

25

KATHLEEN A. SUPNET, CSR