1                   UNITED STATES DISTRICT COURT

2              FOR THE WESTERN DISTRICT OF TEXAS

3                        EL PASO DIVISION

4

5    UNITED STATES OF AMERICA    )   No. EP-13-CR-370-DB
                                 )
6    vs.                         )   El Paso, Texas
                                 )
7    MARCO ANTONIO DELGADO       )   March 4, 2014

8

9                        MOTIONS HEARING

10

11

12   A P P E A R A N C E S:

13   FOR THE GOVERNMENT:   MS. DEBRA P. KANOF &
                           MS. ANNA E. ARREOLA
14                         Assistant United States Attorneys
                           700 E. San Antonio, Suite 200
15                         El Paso, Texas  79901

16

17   FOR THE DEFENDANT:    MR. RAY VELARDE
                           Attorney at Law
18                         1216 Montana
                           El Paso, Texas  79902
19
                           MR. RICHARD ESPER
20                         Attorney at Law
                           801 N. El Paso Street, Suite 225
21                         El Paso, Texas  79902

22

23

24   Proceedings reported by stenotype.  Transcript produced by

25   computer-aided transcription.

1          THE COURT:  The clerk will call the case.

2          THE CLERK:  EP-13-CR-370, Marco Antonio Delgado.

3          MS. KANOF:  Good morning, Your Honor.  Debra Kanof and

4     Anna Arreola for the United States.  We're ready for the status

5     conference.

6          MR. VELARDE:  Your Honor, good morning.  Ray Velarde

7     and Richard Esper on behalf of Marco Delgado.

8          THE COURT:  Counsel, I have before me this Motion for

9     Authorization to use Electronic Devices and Contact Visits with

10    the Attorneys.

11         I grant these customarily all the time.  I understand

12    this one is a little bit different.

13         MS. KANOF:  Well, this, as it's written, Your Honor,

14    the Government has no objection.  If it is Mr. Velarde's

15    laptop, the Government has no objection, but in determining

16    what the intent was, it turns out that Mr. Delgado -- and we

17    still have no objection to that portion -- also wants Defense

18    Counsel to bring his laptop which has been in Defense Counsel's

19    custody since his arrest so that he can go through that.

20         And the Government does have a very serious objection

21    and maybe a solution for -- for that.  Of course the

22    Government's concern, Your Honor, is him manipulating what's in

23    there, and of course, based on the other trial, we know that he

24    has the ability and intellect to do that and there is also a

25    questioned document in this case similar to the one that was in

1    the first trial.

2            There's -- when we super- --

3            THE COURT:  Wait a minute.  Wait a minute.  Are you

4    proposing that he be able to keep that computer with him?

5            MR. VELARDE:  No, sir.  No.  No.  Your Honor, so that

6    we can cut to the chase.  We would like to take these

7    computers.  We're going to be handling them.  Nobody handles

8    our evidence.  Mr. Esper and I are going have these things with

9    us and all we're going to do is we're going to navigate and

10   we're going to be navigating into areas that we want to inquire

11   about.  At no time was it ever contemplated that Mr. Delgado be

12   operating his own computer or our computers.  We just want to

13   be able to do our due diligence and be able --

14           THE COURT:  But you also want his computer with you

15   when you go in?

16           MR. VELARDE:  Yes, sir.  But he's not going to be

17   handling that.  We're going to be taking care of it, so there's

18   no question, but that we're going to be solely responsible for

19   maintaining -- maintaining the integrity of the contents of

20   that computer.

21           MS. KANOF:  May I respond, Your Honor?

22           THE COURT:  You may respond.

23           MS. KANOF:  Okay.  And I understand that and I

24   absolutely trust Mr. Velarde and Mr. Esper.  Make -- you know,

25   no confusion about that.  It isn't them that I have a concern

1    about.

2              There's a document that is at question in this case.

3    It has to do with the count we added when with superseded on

4    wire fraud and basically there's a letter that purports to be

5    from a vice-president of Mitsubishi that also purports to have

6    been transmitted by computer from Florida -- from Mitsubishi in

7    Florida to Fernando Gireud, and that -- that's a forgery.

8    Mr. Adams will say he absolutely did not author that letter.

9    Every other letter that Mr. Adams truthfully offered is

10   inconsistent with what it pertains to in that letter and

11   Mitsubishi has done a forensic examination of their server and

12   said that it was never sent from their server in Florida.

13             What my concern is, is the Government then wants to

14   know if that is in Mr. Delgado's computer.  If it was received.

15   So I was discussing this and I think a solution, and again this

16   is not questioning the ethics or professionalism of Defense

17   Counsel.  It might be questioning their ability to maneuver a

18   computer because I know all three of us are about the same age

19   and this is not our expertise.

20             What I propose then is especially because the

21   Government has received absolutely no discovery from the

22   Defense in this case, not one piece of paper, is that the Court

23   permit an order, the Government to mirror-image the laptop,

24   make two copies of the mirror image and provide that disk to

25   the Defense to use on Mr. Velarde's computer to go through it.

1   That way nothing will be changed.  The dates that a document

2   was created can accidentally change, my understanding.

3          THE COURT:  What do you mean?  You mean Mr. Delgado's

4   computer?

5          MS. KANOF:  Mr. Delgado's computer, yeah.  That it be

6   mirror imaged, that the -- if the Judge wants a written search

7   warrant to look for it, we'll do that.  If not, then just by

8   agreement that the Government can have the same access to that

9   computer as Mr. Delgado is having and that it would be a mirror

10  image of what's on it would be used by the Defense.

11          In other words, Mr. Velarde will slip that disk into

12  the laptop that he's taking that's his, that has the other

13  discovery on it and that way the metadata won't -- won't be

14  changed, the origin of the creation of the document won't be

15  changed.

16          THE COURT:  But you want for you to be provided with a

17  mirror image.

18          MS. KANOF:  And -- well, there's -- it's separate

19  issues.  We would like the Court to order that only a mirror

20  image can be shown to the Defendant and through Mr. Velarde's

21  computer.

22          And the separate issue is the Government would also

23  like to be privy to that information.

24          THE COURT:  That's highly unusual, Ms. Kanof.  It's

25  highly unusual if it's his computer.  Unless they tender it as

1    part of the discovery.

2              MS. KANOF:  Well, that's what I'm saying is we don't

3    have anything and we certainly have probable cause to search

4    based on the fact that he fictionalized a document in the other

5    trial, an e-mail, and we had an expert testify that that e-mail

6    that purported to come from Atlanta didn't, that it came from

7    an internet cafe in El Paso, so it had to have been basically

8    manipulated and been created by the Defendant, not by the

9    agent.

10             THE COURT:  But you-all have all access to everything

11   that's in his computer?

12             MS. KANOF:  I'm sorry, Your Honor?

13             THE COURT:  You-all have access to everything in his

14   --

15             MS. KANOF:  No.  We have nothing from his computer.

16             THE COURT:  No.  But you propose that you get it.

17             MS. KANOF:  We propose that we have -- that a mirror

18   image go to the Defendant and that we have the opportunity to

19   search for this particular -- for anything with regard to

20   communications with Mitsubishi and CFE.

21             It -- we would have had it if we had searched in

22   advance, but it wasn't available to us because on the date that

23   he was arrested, he called his girlfriend and told his

24   girlfriend to go to his house and get his computer and take it

25   to Defense Counsel.

```
1              So it's also an unusual situation in the fact that
2      normally the Government would have gotten probable cause to
3      search the computer and then would have had all the information
4      available to them.
5              THE COURT:  But you don't have a search warrant.
6              MS. KANOF:  But I can prepare one.  I mean --
7              THE COURT:  I -- Mr. Velarde --
8              MS. KANOF:  I don't want to search the Defense Counsel
9      basically.  In order to search something that's in the
10     possession of Defense Counsel, I have to go to the Department
11     of Justice and get authorization because it's a lawyer and --
12     and it just didn't seem relevant at the time because we can
13     prove that the document did not originate in -- from
14     Mitsubishi -- from Mitsubishi, but I just -- I'm sorry,
15     Your Honor, the case is also unusual because the Defendant has
16     a reputation and was convicted by a jury --
17             THE COURT:  I understand.
18             MS. KANOF:  -- in part of creating --
19             THE COURT:  I understand, but I still think --
20             MS. KANOF:  -- electronic evidence.
21             THE COURT:  I think what you're asking, that you be
22     provided a mirror image of everything that's in his computer, I
23     don't --
24             MS. KANOF:  No.  Not to look at it.  Just to mirror
25     image it or if the Court wants to appoint an independent
```

1   person, perhaps the IT person for the courts to do the mirror

2   image.

3          I am trying to protect the integrity of the actual

4   laptop and the integrity and honesty of the trial situation for

5   evidence.  And if it's not mirror-imaged then we do not have --

6   the court -- the appellate court would not have a snapshot of

7   how the computer existed, so the Court would not have an

8   actual -- have an ability to investigate whether or not

9   something had changed.

10         Look, Judge, sometimes when I open a letter to use it

11  as a pony, the address on the letter immediately changes to

12  that day, so it changes the integrity of the original document.

13         So if I -- if I authored a letter, January 1st and

14  then I want to do another one that was similar to it so I

15  didn't have to start all over again, I pull that up to use it

16  as an example and just change names or information.  Like in

17  this case it already has the addresses of Defense Counsel, so

18  when I open it, instead of having January 1st, the date that I

19  originally typed it, our computer changes that date to the date

20  that I've opened it.  So now it's March -- if I opened a letter

21  that I had authored on January 1st, it's now going to say

22  March 3rd or March 4th -- whatever today is -- March 4th on it,

23  so that has changed the integrity of the original document

24  because the document that's says January 1st, doesn't exist

25  anymore.

1          And I'm not a computer expert.  I just know things

2     like that can happen and I'm concerned that if a preservation

3     is not made of -- say for example, Your Honor, they find an

4     exculpatory document.  Say they find this letter --

5          THE COURT:  Mr. Esper, I think your client wants to

6     talk to one of you.

7          MS. KANOF:  Say they find this letter in the computer,

8     and it appears to have come from Mitsubishi.  So now that's

9     contrary to the Mitsubishi testimony.

10         The Government would then have a right to have that

11    letter in discovery, but also have the metadata in discovery,

12    also have the piece of the original computer that shows in

13    looking at how -- that shows the original date the letter

14    arrived, and if it didn't arrive in that computer at or near

15    the time that's on it --

16         THE COURT:  I understand.  I understand.  But what I

17    think is highly unusual is for you to have access to everything

18    in his computer.

19         MS. KANOF:  No, I'm not saying I want access, Judge,

20    that would be if we asked for a search warrant.

21         I'm saying that he should not have access to his

22    computer because things can be altered just even in viewing.

23    And that someone, I was just volunteering the Government, but

24    someone, at the Court's order, should make a mirror image copy

25    to preserve because then if I get that evidence I'm going to

1  come back and ask for us to search that mirror image to

2  determine whether or not it's consistent from the original

3  computer as opposed to when they opened it up and looked at it.

4  If that makes any sense.

5           THE COURT:  Gentlemen?

6           MR. VELARDE:  Well, Your Honor, we did broach the

7  subject with Mr. Delgado and we have not been authorized to

8  consent to anything along the lines that Ms. Kanof is

9  requesting.

10          Secondly, and most importantly, as I indicated before

11 to the Court, he's not going to be handling the computer.

12 We're going to go handling the computer.  We're just going to

13 be navigating through certain information there so that we can

14 explore whatever it is that he wants us to look at.  But we're

15 going to be ones that are going to be handling that computer.

16          THE COURT:  Will you two be there or do you have an

17 investigator?

18          MR. VELARDE:  Oh, no.  We're both going to be there

19 along with Mr.- -- with the investigator.

20          THE COURT:  The investigator?  I don't want the

21 investigator to be doing it.  I want you-all to be doing it.

22          MR. VELARDE:  Yes.  No.  No.  No.  We're going to be

23 there.  But because a lot of these documents, Your Honor, are

24 drawn in Spanish, even though I'm a native speaker, I need --

25 we need some assistance to be able to figure out, decipher the

```
 1    meaning of the content of anything that's on the computer at
 2    all.
 3             THE COURT:  You'll be ordered not to -- not to change
 4    the content.
 5             MR. VELARDE:  No.  No, Judge.  We don't do -- we don't
 6    do those things.
 7             THE COURT:  It's only for open viewing.
 8             MR. VELARDE:  Judge, we have had these computers --
 9    I've had the computer for a while and we've only opened it up
10    on a need-be basis, but it's been down there at the office.
11    And we have never taken the computer into the jail without
12    any -- letting the Government know this is what we'd like to
13    do.
14             MR. ESPER:  Your Honor, the two of us and our
15    investigator, who is computer savvy, the three of us will be
16    present.
17             MR. VELARDE:  But we'll be the ones handling the --
18    the handling of the --
19             THE COURT:  And open for viewing only.
20             MR. VELARDE:  That's correct.
21             MR. ESPER:  Yes.
22             THE COURT:  That's going to be the order, gentlemen.
23             MR. VELARDE:  Thank you, Your Honor.
24             THE COURT:  Open for viewing only and in the presence
25    of the attorneys -- I'm not going to put the investigator in --
```

1      of the attorneys with Mr. Delgado.

2              MR. VELARDE:  Yes, sir.

3              THE COURT:  And no changes are to be done to any --

4              MR. VELARDE:  Absolutely, Your Honor.

5              THE COURT:  -- any contents of that computer at all.

6              MR. VELARDE:  Rest assured.

7              THE COURT:  I'm going to deny your request.

8              MS. KANOF:  All right, Your Honor, but should we

9      receive some discovery that is exculpatory --

10             THE COURT:  Well, let me tell you what I'm going to

11     do.  Have you provided all the discovery already?

12             MS. KANOF:  We have provided all the discovery that

13     we've received so far.  There's still some -- yeah, we're still

14     giving supplemental because we're still receiving, you know,

15     following some other trails and Mitsubishi was providing some

16     stuff to us.  And CFE is --

17             THE COURT:  Well, I'm going to put a deadline on the

18     discovery.  Okay?

19             MS. KANOF:  I'm sorry, Your Honor?

20             THE COURT:  I'm going to put a deadline on the

21     discovery.

22             MS. KANOF:  Okay.

23             THE CLERK:  Since you have not received anything, you

24     have not provided anything -- this case is set for trial.

25             MS. KANOF:  We've provided everything, Your Honor,

1   except for the new stuff that --

2           THE COURT:  I understand.  March the 31st, less than

3   four weeks away.

4           What are you proposing as far as a deadline on

5   discovery?

6           MS. KANOF:  Next Monday?

7           MR. VELARDE:  Next Monday?

8           MS. KANOF:  The main thing that's missing, Your Honor,

9   is that -- the attorney for Mitsubishi is drafting, with our

10  assistance, basically a Certificate of Nonexistence for that

11  particular document and he's been tied up.

12          Ms. Arreola talked to him today and he asked if we

13  could get to it tomorrow, so I'm a little concerned because it

14  has -- the IT person has to sign it and then it has to go to

15  the law firm to approve it.

16          THE COURT:  Let me tell you what I propose to do.  The

17  parties to tender all discovery by the 14th of March.  And any

18  further discovery will be done only with an order from the

19  Court.

20          MS. KANOF:  Okay.

21          THE COURT:  That includes you-all, too, okay?

22          MR. VELARDE:  Yes.

23          MR. ESPER:  Yes.

24          MS. KANOF:  Are we finished with that issue,

25  Your Honor?

```
1              THE COURT:  Yes.  That's going to be my order.  I'm
2    doing to deny your request that you have mirror access to the
3    computer; however, the -- it will indicate though that they
4    have to be present with him and open for viewing only without
5    making any changes to the contents of that computer at all.
6    And they will be allowed to take your computer and
7    Mr. Delgado's computer into the court -- into the jail.
8              MR. VELARDE:  Thank you.
9              THE COURT:  Where is he?  Is he here now or is he in
10   Otero?
11             MR. VELARDE:  No.  He's here downtown.
12             THE COURT:  Okay.  And all discovery to be tendered on
13   or before March 14th.  No further discovery will be tendered
14   without permission from the Court -- without an order from the
15   Court.
16             Okay.  I have received -- is that it on that --
17   Your Order for Memorializing Findings Under the Speedy Trial
18   Act.
19             Have you-all received this?
20             MR. VELARDE:  Yes, sir, we have.
21             THE COURT:  Do you have any objection to it?
22             MR. VELARDE:  None whatsoever, Your Honor.
23             MR. ESPER:  No, Your Honor.
24             THE COURT:  Okay.  I'm going to go ahead and sign it.
25             Anything else we need to take up?
```

1          MS. KANOF:  Yes, Your Honor.  A couple of other

2     things.  Defense Counsel has asked for early production of

3     *Jencks*.  The Government, again because they are suspicious and

4     also because there were threats to the life and are still

5     threats to the life of the key witness in the other case, I

6     don't know what kind of connections Mr. Delgado has in Mexico

7     anymore, we don't object to them knowing the contents of the

8     statements.  We object to giving them copies at this time and

9     we've invited Defense Counsel to come to our office and allow

10    them to read the ROIs and take notes in lieu of actually giving

11    them the statements until like say the Friday before the trial.

12         And again that's just out of an abundance of caution.

13    We understand that every time there's any kind of talk about

14    this case either in the press or with the Mexican Government

15    that our witness gets threatened -- our prior witness.  And he

16    may or may not be a witness in this case.  If he is -- it's

17    probably rebuttal, but I -- we've been talking extensively to

18    the attorney for CFE and he's here in the United States -- or

19    his partner is in Mexico City and the Mexican Government is

20    also investigating this transaction as well as Mr. Delgado with

21    an intent to charge -- charge them criminally and knows that

22    there are other individuals involved that the United States

23    does not have under Indictment that are powerful, and under

24    those circumstances I just, out of an abundance of caution,

25    would not like a copy of that to go yet, but Defense Counsel

```
1   can read all the Jencks and take notes today.
2            THE COURT:  When are you proposing to tender it?
3            MS. KANOF:  The Friday before trial.
4            THE COURT:  Huh?  When?
5            MS. KANOF:  The Friday before the Monday jury
6   selection.
7            THE COURT:  Now is it going to be used in evidence at
8   all?
9            MS. KANOF:  Well, it's Jencks, Your Honor.  Well, it's
10  not really -- according to the case law, ROIs and 302s are not
11  really Jencks but we look at them that way, we view them as
12  Jencks.  We're not talking about the Defendant's statement.
13  They've had the Defendant's statements for a couple of years.
14  We're talking about the statements of the victims in this case.
15           MR. VELARDE:  Well, Your Honor, the only -- the only
16  observation I can make is that it's putting us as at a real
17  detriment not to be able to visualize these reports.  If
18  there's a question about --
19           THE COURT:  You'll be able to go over it and take your
20  notes.
21           MR. VELARDE:  Judge, they might as well give us those
22  reports.  It's not like we're going to disseminate them to the
23  press.  We don't have a history of engaging the press or
24  engaging anybody.  We're doing this in order to be able to
25  prepare for trial.  Mr. Esper and I are going to be the only
```

1    ones looking at these reports, and we can assure the Court,

2    there won't be any kind of breach.

3            MS. KANOF:  When they asked me --

4            MR. VELARDE:  There's a --

5            MS. KANOF:  I'm sorry.

6            MR. VELARDE:  If there's a way of putting a water

7    stain on that thing so that if that report, wherever

8    disseminated, they would know.

9            MS. KANOF:  No, it's not matter of dissemination,

10   Your Honor.  When they first asked me, they said they wanted to

11   show them to the Defendant and I have a problem with the

12   original being shown to the Defendant.

13           I don't have a problem with Defense Counsel reading

14   them.  You know, the *Jencks Act* says they don't get them until

15   the witness even testifies, and I'm willing to let them see

16   everything, not even knowing whether that person will testify.

17   I mean, I don't know at this point in time whether that

18   individual will testify, but we'll show them the statements and

19   let them take notes, but actually taking that into the jail,

20   showing it to the Defendant, they're not entitled to it.

21           THE COURT:  You're not required to get it that early,

22   Mr. Velarde, Mr. Esper.

23           MR. VELARDE:  I understand.

24           THE COURT:  I'm going to accept the proposal from

25   Ms. Kanof.  You can see it at their office, take notes, but you

```
1   know, if they want to tender it prior -- just prior to the
2   trial and they anticipate calling the witness, you'll have it
3   then.
4           MS. KANOF:  Okay, Your Honor.  There's been some talk,
5   but not -- I don't think a final determination was made by
6   Defense that they're going to call an expert, so I want to
7   invoke our right under Rule 16, little (b)(1)(C) and request
8   now that they provide us the name of the expert, the experience
9   and background, and the expert in a summary of the testimony.
10  I don't know if they've actually selected someone, but if you
11  can put the 14th deadline for that as well.
12          THE COURT:  Yeah.  So set.
13          MS. KANOF:  Okay.
14          THE COURT:  The 14th.
15          MS. KANOF:  And then, Your Honor, I have not given
16  written 404(b) notice, but it -- basically I'm going to orally
17  provide notice if the Judge wants me to follow it up with --
18  with it in writing, because of the Defendant's experience in
19  fraudulent documents especially computerized fraudulent
20  documents, if he takes the stand, and only if he takes the
21  stand, the Government seeks to admit the signature from -- that
22  he already testified to, the signature act of fictionalizing
23  and creating fraudulent documents on the computer from the
24  other case.  But that would basically -- it's not -- it's
25  really probably just impeachment evidence -- regular
```

1  impeachment evidence, but if he takes the stand and says it's a

2  valid document, I think I should be able to cross-examine him

3  to having basically generated false documents on the computer

4  in the past and he was convicted, you know, basically --

5        THE COURT:  Well, why do you want to bring it up at

6  this time?

7        MS. KANOF:  Because I have to give 404(b) notice.  The

8  original Standing Discovery -- I just sort of realized that it

9  was, and the original Standing Discovery Order requires us to

10 give 404(b) notice, and so we're here, so I thought I would put

11 it on the record.

12       THE COURT:  Okay.

13       MS. KANOF:  The last thing we would like to discuss,

14 Your Honor, is pursuant to the Supreme Court's rulings with

15 regard to notice to the Defendant of plea offers, I would like

16 to make the Government's current plea offer and put it on the

17 record, which is that the Government is offering -- this is

18 something new.  The Defense Counsel haven't heard it yet -- but

19 concurrent right now should the Defendant be convicted in this

20 case, the Court has absolutely every right to stack the

21 sentences, to add them together.  But, first of all, a plea

22 agreement, the Government would agree to concurrent sentence to

23 the sentence that would be determined by the probation office

24 after doing their investigation and examining it.

25       So we would agree to whatever probation comes up with

1    subject to objection by Defense Counsel with regard to the

2    guidelines in this case, but the benefit here is, it's our

3    understanding, and we could be wrong, but that the Defendant is

4    particularly concerned about money.  And there's a forfeiture

5    and in the past we required him to sign a plea agreement that

6    included the forfeiture.

7         The offer now is that the plea agreement would not

8    require his signature to forfeit, but the Government would

9    reserve their right to litigate the forfeiture in the

10   sentencing hearing.

11        So he doesn't have to -- to forfeit it in the plea

12   agreement like most of our plea agreements require when

13   somebody enters a plea agreement that has forfeiture in the

14   Indictment or even civil forfeiture, but we would permit him to

15   plea without the forfeiture language and -- but reserve our

16   right at sentencing time to litigate the forfeiture to the

17   Court.

18        THE COURT:  Do you need any further explanation?  Do

19   you need it?

20        MR. VELARDE:  Just one small request, Your Honor.  It

21   might require at least 5, 10 minutes.

22        Now that Mr. Delgado is here in court, I would like to

23   visit with him.  He was privy to the offer that was extended by

24   the Government.  We'd like visit with him and see what his

25   input is so that we can articulate his decision on the record.

1          MS. KANOF:  Well, I was going to give him until

2     Monday, but I mean, if he wants to do it now, I have no

3     objection.  We can wait.

4          THE COURT:  Okay.  If he's here now, it's easier for

5     them to talk to him.

6          MS. KANOF:  Okay.

7          THE COURT:  He heard -- he may need some

8     clarification, though, okay?

9          MS. KANOF:  Okay.

10          THE COURT:  I don't.  I understand what you're saying.

11     You would limit yourself to a concurrent sentence whatever

12     comes out on the guideline range within --

13          MS. KANOF:  Correct, Your Honor.

14          THE COURT:  -- subject to objections, of course?

15          MR. VELARDE:  Yes, sir.

16          MS. KANOF:  And reserve our right to litigate the

17     forfeiture in a sentencing hearing.

18          MR. VELARDE:  And we'll visit with him and get his

19     input and then come back.

20          THE CLERK:  I'll give you 10 minutes.

21          MR. VELARDE:  Thank you.

22          THE CLERK:  We'll be in recess for the next 10

23     minutes.

24          MS. KANOF:  We'll leave so you can talk.

25          (Recess taken; open court.)

1          THE COURT:  Anything for the record, Counsel?

2          MR. VELARDE:  Your Honor, Mr. Delgado is aware of the

3    terms of the plea agreement as discussed by Ms. Kanof.

4          THE COURT:  Proposed?

5          MR. VELARDE:  The proposed plea offer, and he has

6    instructed us to advise the Court that he would like to think

7    about it and come back to the court on Monday and let the Court

8    know --

9          THE COURT:  Okay.

10         MR. VELARDE:  -- what his intentions are.

11         THE COURT:  I'm not going to schedule anything, okay?

12   You let me know either by mail or -- somehow or other let me

13   know and let the Government know if you're accepting or not.

14         MR. VELARDE:  Well, for purposes of the record,

15   Your Honor, I guess I'll -- if the Court is not available that

16   day, we'll see if we can get something from him in writing --

17         MR. ESPER:  In writing one way or the other.

18         MR. VELARDE:  -- and then we'll submit it to the Court

19   in writing.

20         THE COURT:  Okay.  Anything else?

21         MS. KANOF:  No.  Nothing further from the Government.

22         THE COURT:  Very well.

23         MR. VELARDE:  Thank you.

24         MR. ESPER:  Thank you, Your Honor.

25         THE COURT:  You may be excused.  We'll be in recess.

1                          *  *  *  *  *

2

3

4

5

6

7

8

9

10                        CERTIFICATION

11

12      I certify that the foregoing is a correct transcript from

13 the record of proceedings in the above-entitled matter.  I

14 further certify that the transcript fees and format comply with

15 those prescribed by the Court and the Judicial Conference of

16 the United States.

17

18 Date:  December 6, 2017

19                              /s/ Maria del Socorro Briggs

20                              Maria del Socorro Briggs

21

22

23

24

25