```
                       UNITED STATES DISTRICT COURT

                    FOR THE WESTERN DISTRICT OF TEXAS

                             EL PASO DIVISION


UNITED STATES OF AMERICA     )   No. EP-13-CR-370-DB
                             )
vs.                          )   El Paso, Texas
                             )
MARCO ANTONIO DELGADO        )   March 13, 2014


                      MOTION TO WITHDRAW AS COUNSEL



A P P E A R A N C E S:

FOR THE GOVERNMENT:   MS. DEBRA P. KANOF &
                      MS. ANNA E. ARREOLA
                      Assistant United States Attorneys
                      700 E. San Antonio, Suite 200
                      El Paso, Texas  79901


FOR THE DEFENDANT:    MR. RAY VELARDE
                      Attorney at Law
                      1216 Montana
                      El Paso, Texas  79902

                      MR. RICHARD ESPER
                      Attorney at Law
                      801 N. El Paso Street, Suite 225
                      El Paso, Texas  79902



     Proceedings reported by stenotype.  Transcript produced by
computer-aided transcription.
```

1            THE COURT:  The clerk will call the case.
2            THE CLERK:  EP-13-CR-370, Marco Antonio Delgado.
3            MS. KANOF:  Good morning, Your Honor.  Debra Kanof and
4    Anna Arreola for the United States.
5            MR. ESPER:  Good morning, Your Honor.  Richard Esper.
6            MR. VELARDE:  Judge Briones, good morning.  Ray
7    Velarde.
8            THE COURT:  The record will reflect that Mr. Delgado
9    is also in the courtroom.
10           Mr. Delgado, I want to address myself to you first.
11   You can answer from there.  You just have to be loud enough so
12   I can hear you.
13           You may be aware that both Mr. Velarde and Mr. Esper
14   have filed a Motion to Withdraw from your case.  Mr. Esper has
15   indicated that, among other things, you have been verbally
16   abusive to him.
17           Mr. Velarde, among things, (Reading) The situation has
18   become progressively hostile and accusatory making it difficult
19   to communicate effectively.
20           Now, do you understand that if I do grant these
21   motions that I would have to appoint -- I would again appoint
22   two attorneys to represent you.  I don't know who that would be
23   at this point, and I don't know if you would be satisfied;
24   probably not.
25           But if I do remove Mr. Esper and Mr. Velarde and

1   appoint someone else, it's going to be the last appointment.
2   I'm not going to keep changing attorneys because you can't get
3   along with them.
4           Now, I'm going to ask you, how do you feel about
5   Mr. Velarde and Mr. Esper withdrawing from your case?
6           THE DEFENDANT:  Actually right now it's the first I
7   heard of it.  I don't have a problem with them withdrawing, but
8   for different reasons.  The truth of the matter is we have a
9   deadline before this Court of discovery to be provided to the
10  prosecutor.  It's due tomorrow and I can assure you that none
11  has taken place.
12          This past Monday for the first time they were willing
13  to sit down with me to go over the facts of the case.  So to be
14  honest with you, I do question that.
15          The other thing I want to be very clear on is I didn't
16  initiate this, you know, the recusal from them.  The truth of
17  the matter is, it's not surprising.  It happened once before we
18  had a court -- a court meeting for trial on May the 19th.
19  Three days before, still no trial work had been done, no
20  preparation, and that's when they came up with the fabrication
21  that I needed a psychological evaluation.
22          I see this as continuation of that, but I don't have a
23  problem because it's obvious they have not -- they have not
24  prepared or at least have not prepared for me.  The only thing
25  I do ask --

1        THE COURT: Well, if I were to remove Mr.- --
2        THE DEFENDANT: The only thing I do ask --
3        THE COURT: If I were to grant the motion to withdraw,
4    I would vacate the trial setting and the other deadlines.
5        Do you understand that?
6        THE DEFENDANT: Okay. The only thing I would ask, is
7    if you're allowing for them to recuse is that the order include
8    the following.
9        For instance, an accounting of all the fees that has
10   been paid to them, an acknowledgment by Mr. Velarde that some
11   real property that's in his name is in trust because he's no
12   longer entitled to it.
13       Three, whoever my attorneys are that they're allowed
14   to receive all the -- my materials that my former counsel have
15   in a contact visit so I can be reviewing them and actually pull
16   together a listing of all that that's going to take place.
17       And the last thing, Your Honor, is whoever you deem
18   appropriate to represent me has to have a keen understanding of
19   corporate law.
20       And two, understand and read Spanish including
21   technical Spanish from the legal perspective, but I'm not going
22   to oppose them --
23       THE COURT: You want them to give you an accounting of
24   what you've paid them --
25       THE DEFENDANT: Yes.

1           THE COURT:  -- of the money they received?
2           THE DEFENDANT:  Yes.
3           THE COURT:  No.  I'm not going to do that.  This is a
4  court-appointed case.  They never received anything from the
5  Court.
6           THE DEFENDANT:  No, Your Honor.  If you would request
7  from them the fee agreement when they were first hired, they
8  were hired for two cases, which includes the case that's, you
9  know, before this Court right now and they were paid in
10 advance.
11          Right now, I know that was, you know, put together,
12 but, no, sir, they were hired over a year and a half ago and
13 they were provided with the funds that they requested.
14          MR. VELARDE:  Your Honor, it is true long before this
15 case was indicted, and long before there was a civil forfeiture
16 case filed by the Government, I took an assignment involving
17 some real property up in Santa Fe.  That property however has
18 now become the subject of both a civil forfeiture and the
19 criminal forfeiture in this case.
20          Because the Government put me on notice, neither
21 Mr. Esper or I have exercised any proprietary interest over --
22 over that piece of property because we know that there's --
23 there's that legal impediment which is why we asked of the
24 Court if the Court would appoint us in this case.  Because we
25 know that that's the subject of a proceeding that could very

1  well result in that property being forfeited to the Government.
2        But I -- I am willing, on the record, to renounce any
3  kind of interest in whatever legal document I have to sign.  I
4  will carry it out and have it registered up in Santa Fe as
5  relinquishing my interest.  And I guess at whatever -- at the
6  Court's direction, I will put it in somebody else's name, but I
7  have not -- we have not done anything with that property.
8        THE COURT:  What about an accounting of -- of what the
9  other --
10       MR. VELARDE:  The money?
11       THE COURT:  -- whatever you received on the other
12 case?
13       MR. VELARDE:  On the other case, Your Honor, we were
14 paid a sum certain.  At that time it was Mr. Montes and myself
15 and we were paid basically an equal share.  When Mr. Montes was
16 replaced by Mr. Esper, Mr. Montes gave his share of the money
17 to Mr. Esper and, of course, I took -- I kept the other -- the
18 remainder of the money.
19       That money was for legal expenses that we incurred in
20 connection with the representation in the money laundering
21 case; not this case.
22       MR. ESPER:  Not this case.  Your Honor --
23       MR. VELARDE:  And I can represent to the Court,
24 Your Honor, all together we're talking about $78,000.
25 Mr. Esper received 40 and I received 38.

1         MR. ESPER:  Your Honor, for purposes of the record, I
2    do have a contract, I don't mind tendering to the Court.
3         MR. VELARDE:  And I have a contract that --
4         MR. ESPER:  -- that specifically talked about the case
5    that was previously tried.  It was not for representation in
6    this case.
7         THE COURT:  I'm sorry.  Talk into the microphone,
8    Mr. Esper.  I didn't --
9         MR. ESPER:  Your Honor, the contract that I have with
10   Mr. Delgado, which I'll be happy to the tender to the Court,
11   was for representation only in the money laundering case.  It
12   cites it specifically under EP-12-CR- -- I forget the case
13   number.  It didn't have any mention of the fraud Indictment or
14   the fraud case.
15        MR. VELARDE:  And I have a contract that basically
16   reads the same way.  At that time when we entered that
17   contract, there was only one case pending which was the -- the
18   money laundering case.  And then shortly after that, that's
19   when the Government put us on notice that they were going to go
20   after that piece of property, so it became a moot point.
21        THE COURT:  You have something, Ms. Kanof?
22        MS. KANOF:  I would, Your Honor.  With regard to them
23   being required to make an accounting and also with regard to
24   the false accusation against them by their client that they,
25   for the very first time this Monday discussed the case, because

1  our 2255 attorney is in the courtroom, because I don't think
2  you need a crystal ball to know what direction this is going
3  in, I'd like to put on the record the kind of representation
4  that I have observed on the part of both Mr. Esper and
5  Mr. Velarde.
6          They -- I -- I've discussed the case with them almost
7  every day, near trial, and at least once a week, months in
8  advance of the trial.  They are thoroughly knowledgeable of the
9  facts, the circumstances.  They prepared the defense.  They
10 challenged, they asked for documents, and, you know, even to my
11 surprise sometimes have issues that -- that perhaps we hadn't
12 anticipated on behalf of the Defendant.
13         I'd also like to point out, they both have earned
14 every bit of the $78,000 and much more just talking to the
15 Government about the case regardless of what happened that I'm
16 not privy to with their client.
17         I'd also like to respond with -- to the Defendant's
18 request to have someone who speaks Spanish, corporate lawyer,
19 and corporate Spanish.
20         THE COURT:  I'm not --
21         MS. KANOF:  The doc- -- I just -- the Court needs to
22 know that --
23         THE COURT:  He needs a criminal attorney.  He doesn't
24 need a corporate attorney.
25         MS. KANOF:  Right.  But as far as the translations are

1	concerned, Your Honor, Homeland Security -- there are some
2	contracts in this case that are complex because they deal with
3	the energy industry and they -- they were professionally
4	interpreted into English and provided to the defense by a
5	company in New York that was contracted by Homeland Security to
6	do so.  It's a company that has an expertise in business terms
7	that does this kind of work, not just for the Government, but
8	for other individuals.  So I would doubt that someone would
9	need to know corporate terms because it's in English.
10	         And with regard to the necessity to understand the
11	industry, that I will tell the Court, that the issue here is
12	two-fold.  It's plain fraud.  It has nothing to do with
13	anything in the contracts other than the fact the Defendant is
14	charged with falsifying a document saying that he had the power
15	of attorney to change the location of the deposit of funds from
16	the account of the corporation that's mentioned in the
17	Indictment to an account he completely and totally controlled
18	in the Turks and Caicos which, in fact, did happen and then
19	we've traced the money directly to laundering.
20	         He bought furniture at Charlottes and all kinds of
21	fancy things.  We've even talked to the accountant who
22	confronted him whether or not he was money laundering because
23	she didn't understand, based on his taxes, where he was getting
24	this money.
25	         And the other issue has to do with a letter that was

1    written on -- allegedly on January 10th of 2010, that
2    supposedly permitted him to pledge equipment that did not
3    belong to the company.  It belonged to Mitsubishi Power Systems
4    of America and that those are the two -- and, of course, the
5    witness says, I didn't write that.  And I think we have pretty
6    good proof that he didn't.
7            And so the issue really isn't the terms of the
8    contract so much as just plain old wire fraud transferring
9    money into his own account and using it, and the false creation
10   of a document.  It has almost nothing to do with the
11   complexities of the contract.
12           And in addition to that, one of his partners was a PE,
13   a professional engineer, with a degree in electrical
14   engineering and who, when he attempted to explain -- and who
15   had been a vice president in El Paso Electric for years, who
16   Mr. Delgado frequently called stupid and insisted he knew more
17   about the energy industry and the technicalities of heating
18   systems, of turbo generators than even this engineer that owned
19   the company did.
20           So I need to put that on the record, for legal
21   purposes in the future, but also to give the Court direction
22   with regard to answering and responding to Defense Counsel's --
23   I mean, to the Defendant, not Defense Counsels, purported
24   needs.
25           THE COURT:  You're going to get whoever I appoint,

1    Mr. Delgado, or the magistrate may appoint.  And you'll be --
2    you'll have that person for the rest of your time here because
3    I'm not going to change it again.
4              THE DEFENDANT:  And you said two attorneys, correct?
5              THE COURT:  Two.
6              THE DEFENDANT:  Perfect.
7              MR. VELARDE:  And I will be prepared, Your Honor to
8    transfer --
9              THE COURT:  Gentlemen, I want you-all, yeah, turn over
10   to whoever is appointed.
11             Now, I'm not going to obligate you to give me an
12   accounting.  That money doesn't even pay you for all the time
13   you spent on this case, but I want you to file a copy of that
14   contract under seal.
15             MR. VELARDE:  Judge, I should note that those funds
16   were all used up in connection with the defense of the money
17   laundering case -- I'm sorry -- yeah, the money laundering
18   case, so that money has nothing to do with this case.
19             THE COURT:  I understand that.  That's why -- that's
20   why you were appointed, Counsel.
21             MR. ESPER:  Your Honor, and if I may, I have one
22   suggestion and Ms. Kanof touched on it outside the hall that
23   perhaps someone that has the experience who is conflict-free
24   maybe the --
25             THE COURT:  Of what?

1        MR. ESPER:  And that would be conflict-free would
2   probably be the federal public defender's office.  And again, I
3   don't know, you know, because there are some lawyers who are
4   good lawyers who represent some of the potential witnesses in
5   this case.  But I think the federal public defender's office,
6   and again that's up to the Court, but they seem to have -- to
7   be able to provide two lawyers and have the investigators and
8   resources to provide adequate representation.
9        THE DEFENDANT:  Your Honor, with all due respect, why
10  would Mr. Esper even have a say in the matter?
11       THE COURT:  I'm sorry?
12       THE DEFENDANT:  Why would he even have a say in the
13  matter as to who this Court designates as counsel for me.
14       THE COURT:  Well, if I want to listen to him, I'll
15  listen to him.  You can't tell me who to listen to.  Now sit
16  down.  I don't want to hear from you anymore.
17       I'm vacating the deadlines that I've issued before
18  including the trial date.
19       MS. KANOF:  Your Honor --
20       THE COURT:  The Defendant is not going anywhere.
21       MS. KANOF:  Your Honor --
22       THE COURT:  I can set it for next year if I wanted to.
23       MS. KANOF:  And we're fine with that, Your Honor.
24  The -- some of the attorneys that are recused that would
25  normally be someone the Court would consider because of their

```
 1   experience in matters like this, Ms. Stillinger represents two
 2   key witnesses in this case.
 3           Chris Antcliff represents a witness in the case.
 4           Who else, Anna?
 5           (Government attorneys conferring.)
 6           There are -- there's some other attorneys that are in
 7   it, but I'm not so sure that it would be somebody you would
 8   consider, but those are the two that come to mind that would be
 9   likely in an instance like this.
10           THE COURT:  What did --
11           MS. KANOF:  I'm sorry?
12           THE COURT:  Go ahead.
13           THE CLERK:  And we're trying to remember -- I think
14   that's pretty much it.
15           And the other thing the Government would ask,
16   Your Honor, is that in the Court's order in vacating that the
17   Court would make the findings required for the Speedy Trial Act
18   for excludable time.
19           THE COURT:  If I issue an order and I don't include
20   everything that you-all are suggesting, let me know.  I think
21   my clerk is taking notes, so we should get everything done.
22           I don't know at this point who I'm going to appoint.
23   Quite frankly, whoever it is, it's going to be a lot of work in
24   several ways.  But I am vacating the deadlines including the
25   trial date.
```

```
1              Anything else at this time, Counsel?
2              MS. KANOF:  Nothing further from the Government
3    Your Honor.
4              MR. VELARDE:  Nothing further?
5              MR. ESPER:  Nothing further, Your Honor.
6              THE COURT:  You may be excused.  We'll be in recess.
7                            * * * *
```

### CERTIFICATION

   I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.  I further certify that the transcript fees and format comply with those prescribed by the Court and the Judicial Conference of the United States.

Date:  December 6, 2017

                              /s/ Maria del Socorro Briggs
                              Maria del Socorro Briggs