```
                IN THE UNITED STATES DISTRICT COURT

                    WESTERN DISTRICT OF TEXAS

                         EL PASO DIVISION

                          VOLUME 4 OF 20


UNITED STATES OF AMERICA              EP:13-CR-0370-DCG

v.                                    EL PASO, TEXAS

MARCO ANTONIO DELGADO                 February 23, 2016
```

**STATUS CONFERENCE**
THE HONORABLE DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:   Debra Kanof
                      Anna Arreola
                      Assistant United States Attorney
                      700 East San Antonio, Suite 200
                      El Paso, Texas 79901

For the Defendant:    Maureen Franco
                      Erik Hanshew
                      Assistant Federal Public Defender
                      700 E. San Antonio, Suite 410
                      El Paso, Texas  79901

Court Reporter:       Kathleen A. Supnet
                      El Paso, Texas
                      (915)834-0573
                      kathi.supnet5303@gmail.com


        Proceedings reported by mechanical stenography,
transcript produced by computer-aided software and computer.

                       KATHLEEN A. SUPNET, CSR

CHRONOLOGICAL INDEX

Volume 4 of 20

FEBRUARY 23, 2016                                      Page  Vol.

Announcements. . . . . . . . . . . . . . . . . . .  3     4

Status Conference. . . . . . . . . . . . . . . . .  3     4

Rejection to Plea Offer. . . . . . . . . . . . . . 10     4

Certification Page . . . . . . . . . . . . . . . . 15     4

1          (Open court.)

2          (Defendant not present.)

3          COURTROOM DEPUTY DUEÑAS:  EP:13-CR-370, Marco Antonio

4    Delgado.

5          MS. KANOF:  Good afternoon, Your Honor.  Debra Kanof

6    and Anna Arreola for the United States.

7          THE COURT:  Good morning to both of you.

8          MR. HANSHEW:  Good afternoon, Your Honor.  Erik

9    Hanshew and Maureen Franco on behalf of Mr. Delgado.

10         THE COURT:  And good afternoon to both of you.

11         All right.  Last time we were here, I guess both sides

12   wanted sometime to explore plea negotiations.

13         MS. KANOF:  Yes, Your Honor.

14         THE COURT:  So what was the result of all of that?

15         MS. KANOF:  I haven't had a verbal final word, but

16   Ms. Franco indicated to me that they were not going to avail

17   themselves of the plea offer when she walked in, to me, by

18   nodding.  So I'm assuming that that's the case.

19         THE COURT:  All right. Can you articulate what the

20   plea offer was?

21         MS. KANOF:  Yes, Your Honor.

22         The Government did provide Mr. Delgado through his

23   counsel with this written plea agreement entitled Combined Plea

24   Agreement in Cause Number EP:13-CR-0370 and EP:12-CR-2106 in

25   that with regard to EP:13-CR-0370, the one that's set for trial

1    in March of this year, if the defendant would agree to plead
2    guilty to Count One of I believe it's a 17-count indictment,
3    which alleges wire fraud.  And, of course, we explained what
4    the potential penalty is, that the Government would agree to
5    dismiss the remaining counts of the indictment and further
6    would recommend under an 11(c)1(C) a ten-year sentence.
7             And in addition to that, if -- at the same time, if he
8    would agree to plea to that wire fraud count under the newer
9    cause number, the government would also recommend to the Court
10   in that he's already been convicted of EP:12-CR-210 C [sic]and
11   it's only being remanded for a resentencing that the government
12   would commit to the Court in lieu of the recommended guidelines
13   by the probation officer, which is 235 to 240 months, that the
14   government would recommend to the Court a concurrent sentence,
15   very clear that should he be convicted of the second case, the
16   Court can stack the sentences for a total of 20 years and
17   20 years for a total of 40 years, but in lieu of that the
18   government would recommend a concurrent sentence again of ten
19   years for a total sentence for both cases of a total of ten
20   years, although it's not -- it's not under the purview of a
21   Rule 11, 11(c)1(C).  In the spirit of an 11(c)1(C), the
22   government would recommend that to the Court, and I believe the
23   Court in the last status conference said that the Court would
24   follow the government's recommendations.
25            In addition to that, in the last hearing, Mr. Delgado

Case 3:13-cr-00370-DCG   Document 328   Filed 09/10/18   Page 5 of 15

5

```
1    asked if a certain phrase could be removed from the forfeiture
2    provisions, the Government's notice of forfeiture and the
3    forfeiture that is sought and agreed to in the plea agreement.
4    Ms. Arreola said that she would seek permission from her
5    supervisor in San Antonio to remove the language seeking a
6    money judgment, and she was authorized to do that and it was
7    removed from the plea agreement.  So that means that
8    basically -- but in the plea agreement, the government agreed
9    to -- that the asset forfeiture portion of the plea agreement
10   would be satisfied by what has already been seized by the
11   government, which is approximately
12   three-and-a-half-million-dollars worth of cash and property.
13              THE COURT:  All right.
14              Mr. Hanshew, is this the plea offer that was extended
15   to your client?
16              MR. HANSHEW:  Yes, Your Honor.
17              THE COURT:  And did you inform your client of that
18   plea offer?
19              MR. HANSHEW:  Yes, Your Honor.  We provided a physical
20   copy as well.
21              THE COURT:  All right.  And what was your -- let me
22   ask you this.  What is the guideline for the sentencing in
23   cause number 12-CR-2106?
24              MR. HANSHEW:  For the resentence?
25              THE COURT:  The old case, the resentencing.
```

1   MR. HANSHEW:  It's correct as it's stated by -- in the
2   probation and their addendum to the presentence report
3   obviously will be filing objection to that report.
4       You know, the Fifth Circuit took up a number of the
5   sentencing enhancements.  And in the current addendum, the
6   probation office only followed one directive from the Court,
7   and instead they put the Fifth Circuit argued about other
8   points, obviously because we agree the Fifth Circuit doesn't
9   argue anything; they tell the district courts and probation
10  offices what to do.  So we're going to raise that in terms of
11  objections.
12      THE COURT:  Right.  Let's say you were successful on
13  all of those objections.  What would the guideline be?
14      MR. HANSHEW:  You know, I can't say at the top of my
15  head to be honest, but I think that right now it starts at a
16  plus-16 added on for the million-dollar transaction, and it's
17  not given credit for acceptance as well and the other
18  enhancements for sophistication and such.  But if you knocked
19  all of those down, he would start at a base offense level
20  eight, which, you know, I think is frankly where we would say
21  that the rest of the enhancements are unproven.
22      MS. KANOF:  If I may respond, Your Honor, there's no
23  circumstances under the law that he would ever get any points
24  for acceptance of responsibility, because we were in a two-week
25  trial.  So I don't know how it would ever get to an eight.  The

```
1    $1-million the Fifth Circuit sanctioned as the appropriate
2    dollar amount, and there was only three adjustments that were
3    questioned and those were abusive position of trust and
4    leader/organizer which hangs on the finding of abusive position
5    of trust.
6            The Fifth Circuit did not obstruction of justice.
7    Certainly, they're free to.  But it's only two points for
8    obstruction of justice.  It's four points for leader/organizer
9    and it's two points for abusive position of trust, so that
10   would be an eight-level reduction, which it is -- but there
11   would never be another three-level reduction for under any --
12   first of all, the third point is the government's prerogative.
13           THE COURT:  Right.
14           MS. KANOF:  And there's not been obviously any
15   acceptance of responsibility.
16           If I had a guideline book, I could tell the Court
17   exactly what the guideline range would be under all of the
18   circumstances, but, it's --
19           THE COURT:  Okay.  Maybe probation can do that for us.
20   That's their speciality.
21           MS. KANOF:  I think it's approximately 17 years, if I
22   recall.
23           PROBATION OFFICER LUEVANO:  Good afternoon, Your
24   Honor, Luis Luevano on behalf of the United States Probation
25   Office.  I just brought the defendant's file.  I didn't bring
```

1   my guideline manual with me.  I'm not sure if the Court has one
2   here that the officers that are assigned to this Court --
3           THE COURT:  But you prepared an addendum, have you
4   not?
5           PROBATION OFFICER LUEVANO:  Yes, sir, I have the
6   addendum right here.
7           THE COURT:  Okay.  So, I just want to be clear on the
8   record what the plea offer is and what the defendant -- is at
9   stake for the defendant.  What is the best scenario under, if I
10  were to grant those things in favor of the defendant that are
11  left open to the Court, what would the guideline be and the
12  resulting range of sentence?
13          PROBATION OFFICER LUEVANO:  Your Honor, well the base
14  offense level with the $1-million is 24, the base offense level
15  24.  And then he gets a six-level adjustment pursuant to
16  2S1.1(b)(1) if the defendant knew or believed that the
17  laundered funds were the proceeds or were intended to promote
18  the offense involving the manufacture and import, so that's a
19  plus-six, so he's at a 30 right there alone.
20          If you -- if you threw out the position of trust, the
21  role and the obstruction, he'd be at a 30 and 1.  Again, I
22  don't have a guideline manual, but I think Mr. Hanshew has one
23  there.  And a 30 and 1 is --
24          MR. HANSHEW:  97.
25          THE COURT:  To 121 months.

1        All right.  So that's the best that it can go, from 8
2   to 10 years, something like that, right?
3        PROBATION OFFICER LUEVANO:  Yes, Your Honor.
4        THE COURT:  Okay.
5        All right.  So, Mr. Hanshew, you explained all of that
6   to your client?
7        MR. HANSHEW:  Yes, Your Honor.  We've reviewed the
8   guidelines and the PSR and the scoring.
9        THE COURT:  And you explained the options of the court
10  if he were to be found guilty at the second trial in terms of
11  stacking a sentence, that would be up to the Court whether they
12  are stacked sentences or run concurrent.
13       MR. HANSHEW:  Yes, we have -- I have explained to
14  Mr. Delgado, myself, that the government has on more than one
15  occasion indicated to us that it will seek consecutive
16  sentencing on the two cases, if he were to be found guilty on
17  the 13 case.  So I've admonished him of that.  And I've
18  admonished him that ultimately the decision on whether to do
19  that would be up to the Court.
20       THE COURT:  Okay.
21       MS. KANOF:  There's one additional thing that hasn't
22  been mentioned, Your Honor.  Because of a conviction, the first
23  conviction, he would be a Criminal Category II when sentenced
24  on the second case.
25       THE COURT:  All right.

1       Mr. Delgado, having heard everything discussed with
2  the Court by the prosecution and your counsel, Mr. Hanshew, do
3  you concur that Mr. Hanshew has informed you of what the plea
4  offer was from the government?
5       THE DEFENDANT:  I do.
6       THE COURT:  And explain to you what the possible
7  consequences are under the different scenarios?
8       THE DEFENDANT:  Yes, counsel has made me aware of
9  them.
10      THE COURT:  And so -- and you as -- I mean what
11 Mr. Hanshew said was that you rejected that offer.  Do you
12 concur in that?
13      THE DEFENDANT:  Correct.
14      THE COURT:  All right.
15      So then we're set for sentencing on the 12 -- the
16 Judge Briones' case.  I'm not sure what number that was.  12 --
17      MS. KANOF:  I believe that was March 9th, Your Honor.
18      THE COURT:  March 9th?  Okay.
19      And we're set for trial on the 21st.  Now that's a
20 four-day week.  There's a holiday there.  Oh, Good Friday, I
21 think.  And so how long do you expect the trial will take?
22      MS. KANOF:  Approximately two weeks, Your Honor.
23      THE COURT:  Oh, okay.  All right.
24      And Mr. Hanshew, do you concur in that?
25      MR. HANSHEW:  The government two weeks with its case

1   or in total?
2           MS. KANOF:  No, that was the total.
3           MR. HANSHEW:  Two to three weeks, Your Honor.
4           THE COURT:  Okay.  All right.
5           Is there anything special we need to do in order to
6   get ready for trial, any additional hearings that we have to
7   have prior to that point?  We'll have one final Judge's
8   conference the week before.
9           MS. KANOF:  I have a request, Your Honor.
10          THE COURT:  Yes, ma'am.
11          MS. KANOF:  I apologize, but I've never tried a case
12  in this court before, but because the evidence is document
13  intensive, I was going to inquire if the Court would like to
14  have a pre-admissibility hearing of the evidence.  We would be
15  glad to tender, maybe a week before the trial, our exhibit list
16  to defense counsel, and they can make objections at a separate
17  hearing prior to that and the Court could make rulings on the
18  objectionable records.
19          We have a lot of records that will have self-proving
20  certifications.  We've a lot of records that are from a foreign
21  country that also carry the proper -- they were received
22  through an MLAT.  And we would save a lot of time, Court's time
23  and jury's time, if we went ahead and had a pre-admissibility
24  hearing on some of these records.
25          THE COURT:  All right.

1                Mr. Hanshew, what about that?  She's offering to see
2     if you can agree on the exhibits, and those you can't agree on,
3     having a hearing to get the Court's determination as to their
4     admissibility, if I can do that without hearing any evidence.
5                MR. HANSHEW:  I think that actually falls in line with
6     the Court's order itself, which is that the parties submit
7     their exhibits.
8                THE COURT:  It is.
9                MR. HANSHEW:  And I guess the only concern I have is
10    some may be foundational issues and concerns, and a hearing
11    like that, they're not going to be able to satisfy that.
12               THE COURT:  And I realize that I wouldn't be able to
13    rule on all of them, perhaps some of them.
14               MR. HANSHEW:  Right.
15               THE COURT:  Some of them would just have to go to
16    trial and see who shows up and what happens.
17               MR. HANSHEW:  Right.
18               THE COURT:  But what Ms. Kanof is offering is to
19    significantly reduce the amount of time we spend with exhibits
20    by agreement and a pre-admissibility hearing.
21               MR. HANSHEW:  I have no problem, you know, looking
22    through what documents she's providing and we can agree and
23    stipulate beforehand.  I have no problem with that, Judge.
24               THE COURT:  Okay.
25               And how -- you say a week out?

1        MS. KANOF:  Yes, Your Honor.  I mean the question is
2   that even so much of an agreement, although I'm glad we can do
3   that, it's -- traditionally, in other cases, we've actually had
4   a hearing short of those that the Court cannot make a decision
5   on absent hearing the witness as to how a record was, I guess,
6   obtained or something like that.  I guess, something that went
7   to an element of the offense like that it was a wire transfer
8   that affected Interstate Commerce and understand how the Court
9   could not make that determination of the admissibility and a
10  hearing like that without hearing a witness, but other than
11  that, business records, I can't see that there would be a
12  problem.  And I just tried lots of these cases and it really
13  shortens the time.
14       THE COURT:  Right.  And so I think my standard order
15  covers that, but we can push that -- normally we have it the
16  Thursday before Monday of trial, but we can push it to the week
17  before that if that would be helpful to you.
18       MR. HANSHEW:  I'd ask to keep it as the Court has done
19  it before, Judge, on how -- on the Thursday before.  For no
20  other reason --
21       MS. KANOF:  Thursday before is fine with us.
22       THE COURT:  Okay.
23       MR. HANSHEW:  Thank you, Judge.
24       THE COURT:  All right.
25       Anything else then that I should be aware of or be

```
 1   thinking about or...
 2           MS. KANOF:  No, Your Honor.
 3           THE COURT:  All right.  Then we'll see you Thursday
 4   before trial and we're adjourned.
 5           COURT SECURITY OFFICER:  All rise.
 6           (Proceedings conclude.)
 7                            * * *
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                         * * * * *
 2            I certify that the foregoing is a correct transcript
 3   from the record of proceedings in the above-entitled matter.  I
 4   further certify that the transcript fees and format comply with
 5   those prescribed by the Court and the Judicial Conference of
 6   the United States.
 7   Signature:/S/KATHLEEN A. SUPNET            September 7, 2018
              Kathleen A. Supnet, CSR           Date
 8
 9
10
...
25
```