1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   WESTERN DISTRICT OF TEXAS

 3                        EL PASO DIVISION

 4                       VOLUME 5 OF 20

 5

 6   UNITED STATES OF AMERICA          EP:13-CR-0370-DG

 7   v.                                EL PASO, TEXAS

 8   MARCO ANTONIO DELGADO             March 1, 2016

 9                        MOTION'S HEARING
10              THE HONORABLE DAVID C. GUADERRAMA
                   UNITED STATES DISTRICT JUDGE
11

12

13   APPEARANCES:

14   For the Government:   Debra Kanof
                           Anna Arreola
15                         Assistant United States Attorney
                           700 East San Antonio, Suite 200
16                         El Paso, Texas 79901

17   For the Defendant:    Maureen Franco
                           Erik Hanshew
18                         Assistant Federal Public Defender
                           700 E. San Antonio, Suite 410
19                         El Paso, Texas  79901

20   Court Reporter:       Kathleen A. Supnet
                           El Paso, Texas
21                         (915)834-0573
                           kathi.supnet5303@gmail.com
22

23

24          Proceedings reported by mechanical stenography,

25   transcript produced by computer-aided software and computer.
```

```
1                        CHRONOLOGICAL INDEX

2                         VOLUME 5 OF 20
```

```
3      March 1, 2016                              PAGE    VOL.

4      Announcements. . . . . . . . . . . . . . . . . 3       5

5      Court's Rulings. . . . . . . . . . . . . . . 20,21     5

6      Court Reporter's Certification . . . . . . . . 29       5
```

```
 1                    (Open court.)

 2               COURTROOM DEPUTY DUEÑAS:  EP:12-CR-2106, 13-CR-370

 3     Marco Antonio Delgado.

 4               THE COURT:  I'd ask for announcement please.

 5               MS. ARREOLA:  Good afternoon, Your Honor.  Anna

 6     Arreola and Debra Kanof with the U.S. Attorney's Office.

 7               THE COURT:  Good afternoon, Ms. Arreola.

 8               MR. HANSHEW:  Good afternoon, Your Honor.  Erik

 9     Hanshew and Maureen Franco on behalf of Mr. Delgado.

10               THE COURT:  Good afternoon, Mr. Hanshew.

11               All right.  We're here on two of your motions; one, to

12     continue the sentencing hearing and the other to continue the

13     trial.  Let's take up the motion to continue the sentencing

14     hearing first.

15               MR. HANSHEW:  Thank you, Your Honor.

16               As we outlined in our motion, we're asking for only

17     two weeks additional for the sentencing hearing in a case that

18     involves now at this point a recommended advisory guideline

19     range that's over the statutory maximum, which in this

20     particular case is 20 years.  So on the outset I note that not

21     to say any sentence is more serious than another or a case is

22     letter than another, but frankly the consequences and the

23     recommendations in this case, you know, this is not a time

24     served recommendation or a zero to six-month type of case.

25     This is a serious recommendation.
```

1          As it relates to recommendations of advisory guideline

2   ranges as we've pointed out just last week, we received a third

3   addendum from the probation office where they recommended an

4   additional enhancement in this case, an enhancement that wasn't

5   previously included in other reports.

6          I know the government responded that the reason for

7   that is because of the remand and the structure of that

8   particular guideline, but that doesn't change the fact that

9   this is the first time that that was ever presented to defense

10  or the Court.  It is truly novel in terms of its presentation.

11         Additionally, the Government submitted last week in

12  the midsts of new sentencing addendum, as well discovery

13  production we'll talk about with the other motion, a 34-page

14  sentencing memorandum which gets into and cites the trial

15  record in this case.

16         And so with all of those factors and considerations

17  together, we believe it's more than reasonable to ask for a

18  two-week continuance so that we can be fully prepared to

19  present our defense at the sentencing hearing, Your Honor.

20         THE COURT:  All right.

21         Ms. Arreola?

22         MS. ARREOLA:  Your Honor, only two levels were added.

23  It's not a complicated enhancement.  It's two of 40 levels.

24  It's been nine months since the Fifth Circuit remanded this

25  case.  Defense counsel has been assigned for approximately

1     eight months.  And the Government submits that it's time.

2              THE COURT:  All right.  I mean normally you have

3     14 days to object to whatever probation comes up with in their

4     report.

5              MR. HANSHEW:  Correct, Your Honor.

6              THE COURT:  Okay.  And so -- but whenever they have

7     addendums, that doesn't restart the 14-day clock, does it?

8              MR. HANSHEW:  It doesn't necessarily start that, but I

9     know and I'm sure this Court's had occasion when you do get new

10    sentencing information, it's not unusual for parties or even

11    the Court itself to continue a sentencing date.  I've seen

12    courts sua sponte do it.  I know parties, myself included

13    and/or the Government --

14             THE COURT:  And I've done it on a number of times,

15    so...

16             MS. ARREOLA:  Your Honor, might I add one more thing?

17    This enhancement is based -- it's not a factual --

18             THE COURT:  Right.  He was convicted of that offense.

19    He's convicted of the offense.  There's no -- but nevertheless,

20    I'm sure the defense would want some time to study how they

21    might object to that somehow.

22             MS. ARREOLA:  Okay.  I was just going to add --

23             THE COURT:  And I understand that it's a 1956

24    conviction and it's two levels.

25             MS. ARREOLA:  Yes, Your Honor.

1      THE COURT:  There's nothing to be done about it that I

2  know of, but I understand that.  Okay.

3      So, our sentencing date is what, Mr. Hanshew?

4      MR. HANSHEW:  Currently scheduled for March the 9th,

5  Your Honor.

6      THE COURT:  March 9th.  And so you want till the 16th?

7      MR. HANSHEW:  We requested a two-week continuance,

8  Your Honor.

9      THE COURT:  Two weeks.  All right.

10      And our trial date is the 21st?

11      MR. HANSHEW:  Yes, Your Honor.

12      THE COURT:  Okay.  Well, I'm going to grant you a week

13  continuance on the sentencing to the 16th.  So that'll give you

14  time to review that and the Government's sentencing memorandum.

15  There should be plenty of time for that, so sentencing we'll

16  reschedule to March 16th.

17      And what time will that be?

18      COURTROOM DEPUTY DUEÑAS:  9 o'clock, Judge.

19      THE COURT: 9 o'clock.  All right.

20      So let me hear your trial continuance.

21      MR. HANSHEW:  And Your Honor, if I can ask for one bit

22  of relief on that.  On the March 16th, yesterday my wife was

23  set for Judge Sparks in Austin and she's going to be in Austin

24  on that date and I'm responsible for taking my five year old --

25      THE COURT:  Child care.

KATHLEEN A. SUPNET, CSR

```
 1              MR. HANSHEW:  -- to school.  So if I could just have
 2    the 17th, Your Honor.
 3              THE COURT:  Okay.  Sure.  We can do that the 17th.
 4              MR. HANSHEW:  Thank you, Judge.
 5              THE COURT:  At 9 o'clock still good?
 6              MR. HANSHEW:  Yes, Your Honor.
 7              COURTROOM DEPUTY DUEÑAS:  Yes, Judge.
 8              THE COURT:  Ides of March.  No, that's St. Patrick's
 9    day.
10              MR. HANSHEW:  It's St. Marks, Your Honor.
11              THE COURT:  St. Marks?
12              MR. HANSHEW:  Yes, sir.
13              THE COURT:   Oh, that's where your child's at?
14              MR. HANSHEW:  Yes, Your Honor.
15              THE COURT:  Okay.  All right.  What about your trial
16    continuance?
17              MR. HANSHEW:  Thank you, Judge.
18              And I'll try to not repeat too much of the motion, but
19    what transpired in the last week is as follows, Your Honor:
20              Early last week, the Government provided to us an
21    e-mail that was forwarded from Mitsubishi in this case, the
22    M.P.S.A. is the acronym that's used, where they produced new
23    documents.  And I should say they and the government thought
24    they were producing new documents to us.  That e-mail to us
25    indicated there were new documents that were just provided.  So
```

1    we received those.  There were a number of attachments that in

2    total counted up to almost 50 pages of anexos, which are part

3    of the subcontract that's involved in this case.  They were in

4    Spanish, so we received those.

5         Then on Thursday of last week, after 5 o'clock, we

6    received and e-mail from the government's counsel indicating

7    that they had just been provided documents from Charlotte's

8    furniture in this case, but due to the condition and the volume

9    of them that we needed to schedule a time to go and review

10   those documents.

11        It was at that point that, you know, our office felt

12   that we needed to move to continue the trial in this case, as

13   well as we just mentioned sentencing, but as far as the trial,

14   the concern became the following, which is that -- and let me

15   preface and so the government knows, I know that they felt or

16   interpreted our request that they had somehow been maliciously

17   or purposefully withholding or not providing these documents.

18        As they point out in their opposition and we in no way

19   intended to infer or speculate that this was malicious on their

20   part.  They were simply passing on and I think they did a

21   commendable, an immediate job on getting that to us.  You know,

22   it appears that within, you know, moments or hours of their

23   receiving these documents and information, they then passed it

24   to us.  So to be clear at the outset, there is no accusation,

25   express or implied that's meant that they did anything improper

1     in terms of how they got that and giving it to us.

2           But what was revealed by this production is that one

3     of the main parties that's involved in this case, for example,

4     Mitsubishi, themselves believed that they had evidence that

5     hadn't been disclosed vis-à-vis their production of it to the

6     government.  They have and continue to be one of the main

7     document holders in this case.

8           The government also explains in its response that the

9     other source has been the Mexican government through this MLAT.

10    Well, both of those posed unique and extraordinary difficulties

11    in terms of our ability to have documents, you know, as it

12    comes through the government as it relates to that, and it

13    also, Mitsubishi is a counseled corporation that is clearly

14    working and cooperating with the government.  I mean this is an

15    entity that's claiming victimhood in this case and will be

16    seeking restitution and the such.  This is an entity that's

17    suing Mr. Delgado and C.F.E. and F.G.G. and all of the entities

18    involved in this case.  So to say that they're going to, you

19    know, be particularly cooperative with defense is, you know,

20    that's not going to happen.

21          So the totality of this leaves us with realizing in

22    this last week that they have more documents that they are

23    providing, they did provide, and we believe that's a continuing

24    problem.  It's a problem that can be based in the future again.

25    And so what we've suggested --

1          And I will tell the Court, we've -- I've taken to

2     heart the government's response as it relates to our suggestion

3     that the Court ask a certain line of questioning to them.  I

4     don't disagree that, you know, Rule 16 doesn't require.  As

5     they stated, there's nothing in Rule 16th that requires them to

6     provide things that they don't have in their possession.  We

7     are not disputing that.

8          The problem is there are documents that they're

9     getting that are being dumped from, for example in this case,

10     Mitsubishi, that go to the heart of the case.  We have to

11     review them, translate them and it took the government a week,

12     for example, in this case to point out or be able to point out

13     that this was something that existed somewhere else in the

14     documents.  Well, you know, they've been the master of these

15     documents and it takes them that.  You can imagine from our

16     perspective, you know, that time frame is the same and

17     multiplied.  So it's those problems in this case that are --

18     why we're asking for this continuance.  We don't think it's

19     excessive, but we think it's necessary and required for -- to

20     be able to provide effective assistance, Your Honor.

21          The only other parte I'll address is the Charlotte's.

22     They admit that that's new.  You know, they limit it and say

23     some of it was in other components of discovery before related

24     to charts, but it's undisputed that it's new.  And it's, you

25     know, three weeks before trial in the case, and it goes

1    directly to what is in their document.  This is not peripheral

2    information.  This is information that goes directly to an

3    indictment that they filed and specifically made reference to

4    Charlotte's and this furniture and transactions back in 2013

5    and they are providing this now.

6          Is there a remedy to say they have to go talk to their

7    perspective witnesses and make them give this over?  No.  I

8    mean, if they themselves subpoenaed them and, you know, they

9    feel like they're not getting it, they can go on that.  I'm

10   assuming some type cooperative relationship with these folks

11   and so they're just relying on their good faith in providing

12   this and the such.  And I'm sure they've admonished them that,

13   you know, if they do get documents later at trial that, you

14   know, there may be issues and problems with them introducing

15   them, but that of course just goes to what's favorable for

16   them.

17         So, in total, you know, we're asking for an extension

18   of the trial date on this case so that we can properly prepare

19   it.

20         THE COURT:  All right.  Thank you, Mr. Hanshew.

21         Ms. Arreola?

22         MS. ARREOLA:  Your Honor, I do want to emphasize that

23   under the Court's certain scheduling order, the government's

24   deadline to produce documents was this past Friday and we've

25   met that in spades.

1            We're here on a motion to continue based on new

2    discovery, but the only new discovery was the documents that we

3    received from Charlotte's Furniture, which are here, and

4    shouldn't really take more than an hour to review.  We already

5    produced the summary chart of the information that we had

6    gotten from Charlotte's.  And this is new information to us.

7    We didn't wait till Friday to produce it.  The day we got it on

8    Thursday is the day we provided notice to defense counsel that

9    it was available for an inspection.  And we can present it to

10   the Court to see --

11           THE COURT:  Sure.  This is the one that's that old

12   kind of paper that folds together like an according with the

13   track holes on the side.

14           MS. ARREOLA:  Yes, Your Honor.  So if Your Honor would

15   like to see it.  May I approach?

16           THE COURT:  Yes, ma'am.  So the thing on top, is that

17   jury summary, this?

18           MS. ARREOLA:  May I, Your Honor?  May I see the first

19   page?

20           THE COURT:  Sure.

21           MS. ARREOLA:  Yes, Your Honor.  The first packet, the

22   first set of documents that you have just pointed to is the

23   initial set of documents that we produced to opposing counsel

24   over a year ago and the rest of the documents are the new

25   materials.

1          THE COURT:  And this is relevant to the money

2     laundering that was ill gained and spent on personal things.

3          MS. ARREOLA:  You Honor, the indictment alleges that

4     Mr. Delgado redirected money that was supposed to go to a

5     client here in El Paso to an overseas account in the Turks and

6     Caicos that he controlled.  He then proceeded to disburse large

7     sums of money on personal items, including about $200,000

8     directly to Charlotte's Furniture.  We've produced the initial

9     packet over a year ago that has a list of the items that he

10    produced in the amount of approximately $200,000, and there's a

11    listing of each item and the amount.  And the other documents

12    are -- the new documents that we were provided with are --

13    appear to be invoices, photos, designs and so on.

14          THE COURT:  So was this packet all new stuff?

15          MS. ARREOLA:  Yes, Your Honor.

16          THE COURT:  And then this, the --

17          MS. ARREOLA:  Yes, Your Honor.

18          MS. KANOF:  If I may?  I'm sorry, Your Honor.  I have

19    a little bit more knowledge.

20          The first packet the Court held up that said is this

21    new?  It is new.  But the information in the antiquated

22    computer printout that the Court is holding is the inputted

23    information of the other packet the Court was holding.

24          THE COURT:  So this is in --

25          MS. KANOF:  Yeah, the ones in your left hand, Your

Honor, are invoices.  The first one they did was take the

invoices and input them into their old computer system, which

is the green and white striped.  So it's basically duplicative.

And what happened is, in response to the subpoena, they

provided a printout of the summary of everything they had.  We

didn't ask them to do it.  It wasn't in our response to request

for the government.  Then they had two floods and misplaced

these documents.  And when Agent Fry went to ask them to

present to us a self-proving affidavit, so we didn't have to

call a custodian, he has to take what they've provided so they

can review it to make the affidavit.  So he took the summary to

them and they said, oh, we found the documents that made up

this chart.  Do you want them?  And of course he said yes.

        THE COURT:  I'm assuming this diagram is his house?

Is that what this is?

        MS. KANOF:  We're assuming.

        THE COURT:  Oh, okay.  So...

        MS. KANOF:  I will represent to the Court there are a

couple of photographs of items of furniture and those

photographs were taken in the store.  And I think it was

related to Agent Fry that they would take photographs and send

them and say this -- so we're recommending this for your home.

        I do recognize some of the furniture from the photos

we provided to the defendant of when the house was seized

pursuant to a seizure warrant.  A lot of photographs were

1   taken.  And I do actually recognize some of the furniture that

2   was recommended, individual pictures that were provided in that

3   packet as being in the house.  So evidently that advice was

4   taken.

5          THE COURT:  Why is some of this in Spanish?  (Judge

6   reads in Spanish.)  Is this just a translation of what's in

7   English?

8          MS. ARREOLA:  Your Honor, we would need to take a look

9   at what Your Honor is seeing.

10          THE COURT:  Oh, yeah.

11          MS. ARREOLA:  May I?

12          THE COURT:  Sure.

13          MS. ARREOLA:  We don't know exactly why, Your Honor.

14   Mr. Delgado is fluent in both languages so it could have

15   been --

16          THE COURT:  That's from Charlottes.

17          MS. ARREOLA:  This is from Charlottes, Your Honor.  It

18   cover been that as a courtesy to their client they were

19   speaking in Spanish, but we would just be guessing, Your Honor.

20          THE COURT:  All right.

21          All right.  Thank you, Ms. Arreola.

22          MS. ARREOLA:  Thank you, Judge.

23          THE COURT:  All right.  Anything else?

24          MS. ARREOLA:  Your Honor, with respect to the

25   Mitsubishi materials, as the government explained in its

1    response to the motion, the government had previously produced

2    that.  In the interest of getting them out quickly, we popped

3    them open to make sure they were something to be opened that

4    could be opened and then we produced them.  And upon receiving

5    the motion, when we went and looked back that -- actually I

6    think a little bit before then, we realized that they had

7    already been previously produced.

8         So Mitsubishi is not an arm of the government.

9    They're not a party in this case.  They're not under any sort

10   of continuing obligation to produce documents.  And the defense

11   has had ability to issue subpoenas and they can contact

12   Mitsubishi directly.  We're not any sort of gatekeeper to that

13   evidence.  And there's nothing new that's been produced that's

14   in the motion.  So all that we have here on this motion to

15   continue trial based on additional time needed to prepare are

16   the Charlotte's documents and the government's submits that

17   those are not enough bases to continue this trail.

18        If I might also add, the government has spent a lot

19   resources gearing up for trial.  The case agent Joshua Fry,

20   who's sitting at counsel table, he's now assigned to an office

21   in Phoenix and he came.  He got special funding to come to help

22   us prepare for trial 30 days in advance of trial and he's

23   already here.  And that would be -- it would be a burden on the

24   government if this got postponed to go through that process

25   again of requesting additional funding for him to come out.

1          We've also started interviewing witnesses.  We'd

2     already interviewed them previously when this case had been

3     postponed, but we're gearing up again and taking time from

4     witnesses and their attorneys, who like to be present.  So some

5     of witnesses have attorneys who like to be present during those

6     interviews.  And this has taken us a lot of resources, not just

7     on our part and on the agencies part, but on the witnesses'

8     part, so the government strongly requests that we move forward

9     on March 21st.  Thank you, Judge.

10          THE COURT:  Thank you, Ms. Arreola.

11          Mr. Hanshew, I'll give you the last word.

12          MR. HANSHEW:  I guess I'll address in reverse order.

13          The government's purported expense and/or resources,

14     there is no standard by which any court would consider or

15     balance a person's constitutional right to effective assistance

16     of counsel against whatever purported expense of resources.

17          I'll also note that I think Mr. Fry arrived at the

18     latest or earliest in this last week in El Paso when we had a

19     hearing that relates to this.

20          As far as the burden or difficulty for them preparing

21     witnesses, I mean they're preparing witnesses for a trial not

22     for a trial date.  So if they prepare their witnesses now,

23     whether it's on the 21st or 60 days later, they're preparing

24     their witnesses for that trial.  There is no difference in the

25     terms of the chronology of those events.  That's exactly the

1    same work they would do whether it's now or later.  So again

2    I'll say that is not something to be balanced against his right

3    to effective assistance of counsel, his right to confrontation

4    and review of documents and evidence that's being presented

5    against him.

6         In terms of the Charlotte's documents, the Court

7    itself just went through it's own exercise of what it takes to

8    look at these documents, what does this mean.

9         We, just like the Court, we don't have the benefit of

10   Agent Fry sitting next to us in our office to editorialize

11   about where these came or not.  You also heard they had asked

12   Agent Fry to explain what these are.  That's the type of

13   information that comes out, for example, in reports of

14   investigation and supplemental materials.  That's why you don't

15   provide these types of documents moving in towards the eve of

16   trial.  That's information that should have been provided

17   previously and vetted.  And now that it's not, and if you take

18   them on their word, I do, absolutely, that they just got it, we

19   should be offered equal opportunity to go about investigating

20   them and the such.

21        As far as, you know, the government's subpoena powers

22   and all of that, obviously, the Court knows and has within its

23   purview, you know, dealing with those types of topics.  That's

24   something the Court can deal with and, you know, is cognizant

25   of.  So the bottom line is, there is no dispute there's new

1     evidence.  There's no dispute that one of the main parties to

2     this case provided them even what they thought to be new

3     documents in this last week, and that is the problem and the

4     burden and the difficulty that we're dealing with.

5            We're asking for, you know, again, a 60-day

6     continuance to be able to vet that out and vet all of the

7     issues that they have raised.  And frankly that is what justice

8     would require in this case.  I think it is no burden to the

9     government.

10           The government has endless resources to prosecute

11     these cases.  They're not going to incur additional expenses.

12     I can tell this Court by anecdotal that, for example, when I

13     travel on government travel, that the flights and the such all

14     have to be refundable.  That's a requirement.  These are all

15     requirements of government travel, so that -- because things do

16     change and this is the way it works.  They're not out and they

17     haven't lots a dime in terms of this.  And they haven't lost

18     their preparation time.  That preparation time carries over to

19     whether the date is as it's scheduled or the date's 60 days

20     from now, Your Honor.

21           So I'd ask the Court again, we desperately need this

22     to provide effective assistance to Mr. Delgado, we need this

23     time to vet this evidence.  We need this to ensure that when he

24     has his day in trial that we have the evidence and the

25     documentation that is the total of this case.

1          THE COURT:  All right.  Thank you, Mr. Hanshew.

2          In looking at those documents, I don't really have a

3    doubt that in three weeks left before trial that you could

4    provide effective representation in reviewing those documents

5    and preparing for them.  These are documents that the defendant

6    certainly at some point in his life must have seen if he bought

7    this furniture.  I don't know if he did or didn't, but if he

8    did, these aren't new to him and it doesn't take that long to

9    go through that box and read those documents.  I think you

10   could be ready in three weeks.

11         But I also know the guidelines and what is at stake

12   here is great and I don't see, other than what Ms. Arreola said

13   at the very end of her address, the harm, to continuing the

14   case for the time that you suggest.  And I think that I'm

15   inclined to grant that, not because I think you need it for

16   effective representation, but just because I want my conscience

17   to be clear in the event that the verdict of the jury is

18   against your client.  I don't want to have any doubts that I

19   contributed to that by not giving you an additional

20   continuance.

21         And I did hear you, Ms. Arreola, that Mr. Fry is here

22   on loan from another office and significant arrangements have

23   been made to allow him to come down and help you prepare the

24   case for that trial and that wasn't lost on me.  I certainly

25   heard that an appreciate that.

1          But in balance, I'm going to grant you that

2    continuance for those reasons, although I'm pretty confident

3    that if I didn't grant you the continuance I don't think there

4    would be any negative fallout in terms of effective assistance

5    and I don't think the Fifth Circuit will find that three weeks

6    is an unreasonable time for you to go through that relatively

7    small box of documents.  But I will -- I'll give you the two

8    months, but that's -- you know, we're going to go to trial in

9    two months and -- so get ready.  I mean there's no getting

10   around it.

11         What's two months from now, Greg?

12         COURTROOM DEPUTY DUEÑAS:  That would be May 23rd,

13   Judge.  We have a civil trial on Hector Ruiz.

14         THE COURT:  Ms. Arreola, did you want to say something

15   else?  I didn't mean to cut you off.

16         MS. ARREOLA:  Not yet, Your Honor, but I will request

17   a finding under the Speedy Trial Act that the interest of

18   justice are served by continuance in order to allow the

19   defendant more time to prepare.

20         THE COURT:  And that'll be my finding.  That was in

21   your motion.  You indicated that in your motion.  That's the

22   finding of the Court that this time will be excluded for

23   purposes of the Speedy Trial Act.

24         You said May 23rd?

25         COURTROOM DEPUTY DUEÑAS:  Yes, Judge.

```
 1              THE COURT:  That's my birthday.

 2              We'll go to trial on May 23rd.  All right.  So May

 3    239rd, 9 o'clock.  So we need -- we'll have our final Judge's

 4    conference then on the Thursday before that.  I'm hoping that

 5    now you can use this time to not only go through that box, but

 6    then get with the government and see if you can agree on the

 7    exhibits so that we can speed up the time that it takes to try

 8    the case.  Hopefully, you can agree on all of the exhibits, but

 9    if not, that there be few that we have to make rulings on.

10              MR. HANSHEW:  Yes, Your Honor.

11              THE COURT:  All right.

12         Ms. Kanof?

13              MS. KANOF:  I have another issue.  It just seems like

14    the Court was going to say does the government have anything

15    else, and if you were may I respond?

16              THE COURT:  Yes, ma'am.

17              MS. KANOF:  This is anticipatory.  I want to talk a

18    little bit about translations.  We -- I think I'm the only

19    person -- only attorney in this case that does not spoke

20    Spanish.  I am ashamed, but I don't speak Spanish.  And so when

21    we initially, the agency sent the contract documents to be

22    translated, we were not satisfied with the job that was done by

23    the company.  It was the -- evidently in Mexico, they still use

24    an antiquated legal writing like we used to, but we're a little

25    bit better now, and so we have recent them to somebody -- well,
```

to our people, our interpreters that do it part-time or are
retired.  The government doesn't have an obligation to
translate or to provide them, but to the extent that we do get
new translations, we will be providing them.

There's also some additional documents in reviewing
them.  I understand enough when I'm reading it to say I want
this translated, and so there are others that have been
translation as well and we will provide those.  I just
wanted -- I am anticipating that there might be some
misunderstanding about our obligation.  We don't have one.

THE COURT:  But if you're going to offer them into
evidence, you -- wouldn't you have a translation of that?  You
wouldn't offer the Spanish version.

MS. KANOF:  That's correct.  That's why I had some
additional ones.  We would probably offer both of them.
Usually what they do like in wiretaps, they're side by side.
These probably would not be side by side.  These would probably
be the English version and the Spanish version clipped
together.  But that's absolutely right.  I can't assume that
every juror will -- would understand them in Spanish.  And of
course, the rules require us to conduct court in English.

But I just wanted to let the Court know that that's an
ongoing process.  And as we receive the new translations, we
will provide them to defense counsel.  It's not an attempt on
the government's part to withhold anything.  And we believe

```
 1   that these translations will be a little bit easier to maneuver
 2   than some of the ones we had received in the past.
 3              MR. HANSHEW:  Okay.
 4              MS. FRANCO:  Your Honor, if I may?  I'm sorry.
 5   Maureen Franco on behalf of Mr. Delgado.
 6              I don't understand.  When the government says it's not
 7   obligated to provide translated documents, I don't understand.
 8              THE COURT:  Well, if they're not -- I guess if they're
 9   not going to offer them into evidence, they're not under any
10   duty translate those for you.  You can secure the services of
11   your expert to translate them the same as they can.
12              MS. FRANCO:  Right.  I understand that, Judge, but I'd
13   like to hear that from the government, because I want to know
14   what the government means when it says it's not obligated to
15   provide translated documents to us.
16              MS. KANOF:  What I mean is there's no time limit.
17   There's no deadline by which we have to provide -- my concern
18   is I don't know when they're going to get finished transcribing
19   them.  And there's a continuing duty to provide them, but --
20              THE COURT:  Duty to provide the translated documents?
21              MS. KANOF:  There's really no legal responsibility to
22   provide the translated documents.  We do it.  And what's
23   happened is pre-indictment, the agency -- it's political --
24   pre-indictment, the agencies have to pay for the translation
25   and they pay for poor translations, so we have repeatedly have
```

1    to request for funding from San Antonio.  And as that funding

2    is granted, we send another batch to either be retranslated or

3    to be translated anew.  And to some extent they are a courtesy.

4    If we are going use them in front of the jury, absolutely we

5    want to provide translations.  So, that's what I mean.  And I

6    mean I'm anticipating to the extent that Mr. Hanshew told the

7    Court it wasn't meant to be accusatory, maybe my skin is

8    getting even thinner in my old age, but I have to --

9              THE COURT:  My hair is getting thinner, I can tell you

10   that.

11             MS. KANOF:  But I'm referring to the four questions as

12   the star chamber accusatory request on the part of defense

13   counsel.

14             THE COURT:  Right.  Well --

15             MS. KANOF:  So I may look at things a little bit

16   differently.  Like I said, maybe my skin is getting a little

17   thinner.  My waist is not, but my skin might be.  But this is

18   anticipatory.  I'm alerting the Court that there could be some

19   discussion about it and that this is what the government is

20   doing; providing the translations when we get them.  Some of

21   them are better than old ones that we had and some are from our

22   documents that had not previously been translated.

23             THE COURT:  Well, just -- so we can --

24             MS. KANOF:  We haven't received a lot of them yet, in

25   fact.

1          THE COURT:  The government will be paying for the

2     public defender's translations as well, so could you tell them

3     which documents you plan to use, Because they have people in

4     their office that read Spanish.  They may read documents that

5     you provided under discovery in Spanish and think this is junk.

6     Nobody needs to translate this, because it says nothing.

7          MS. KANOF:  Right.

8          THE COURT:  If you're going to use them, then you

9     provide a translation.

10          MS. KANOF:  (Indiscernible.)

11          THE COURT:  Then they can, if they don't like your

12     translation, they can hire their expert to translate it the way

13     they want it translated, and then you can submit both of them

14     and cross-examine both experts and the jury can decide who they

15     believe.

16          MS. KANOF:  That's exactly how it would work, Judge.

17          MR. HANSHEW:  Which I guess begs the question, Judge,

18     when they're going to do that.

19          THE COURT:  Well, that's what she's saying, you know,

20     if --

21          MR. HANSHEW:  They're not saying when.  That's the

22     problem.

23          THE COURT:  As the money trickles in, they trickle

24     them out.  Obviously, if you get the last translated document

25     where the smoking gun is in print on the day before trial, I

1      imagine I'll be hearing from you for another continuance.

2            MR. HANSHEW:  Or a dismissal.

3            MS. KANOF:  Yeah, I just wanted to point out for the

4      record, Your Honor, is they have all of the documents.  They

5      may be in Spanish.

6            I will also tell Your Honor their client participated

7      in drafting the documents that are in Spanish, so he may want

8      to interpret for them or assist.  I know that both Ms. Franco

9      and Mr. Hanshew speak Spanish.  Like I said, I think the only

10     one whose hands are tied in this case is me.  I'll deal with

11     it.  But to the -- so what we're really talking about is not

12     having tendered the evidence we were required to tender in our

13     case in chief, just our version of the translation is the only

14     thing that they may not have until the very end.

15           MS. FRANCO:  Your Honor, if I may, the burden of proof

16     is on the government and not the defendant in any case; this

17     case or any other case, whether it's in English or Spanish or

18     Swahili, it's up to them to do it.  If they want to introduce

19     documents before the jury and it's in Spanish and it has to be

20     translated into English and we should have a chance to look at

21     it plain and simple.

22           So I would ask the Court to give them a drop dead date

23     that any documents that they're going to use has to be given to

24     us by a certain day so that we can take a look at it.

25           THE COURT:  I can give them a date that I would like

 1   for them to do it, but if physically they can't get it done by

 2   that date, they get it to you the day before trial, then you

 3   just come in and say we got it the day before trial and we need

 4   more time, and then we just continue the trial again.  There's

 5   solutions to every problem.  We went to the moon and back.  We

 6   can solve these problems, so we will.

 7          Anything else?

 8          MS. KANOF:  Nothing further from the government.

 9          MR. HANSHEW:  Nothing further, Your Honor.

10          THE COURT:  All right.  We are adjourned then.

11          COURT SECURITY OFFICER:  All rise.

12          (Proceedings conclude.)

13                              *  *  *

1                              * * * * *

2              I certify that the foregoing is a correct transcript

3      from the record of proceedings in the above-entitled matter.  I

4      further certify that the transcript fees and format comply with

5      those prescribed by the Court and the Judicial Conference of

6      the United States.

7      Signature:/S/KATHLEEN A. SUPNET         September 7, 2018
              Kathleen A. Supnet, CSR          Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25