1              IN THE UNITED STATES DISTRICT COURT

2                   WESTERN DISTRICT OF TEXAS

3                         EL PASO DIVISION

4                 VOLUME 9(B) of 9(A)(B)(C) OF 20

5

6     UNITED STATES OF AMERICA              EP:13-CR-0370-DG

7     v.                                    EL PASO, TEXAS

8     MARCO ANTONIO DELGADO              September 12, 2016

9
                                **VOIR DIRE**
10               THE HONORABLE DAVID C. GUADERRAMA
                     UNITED STATES DISTRICT JUDGE
11

12

13    <u>APPEARANCES</u>:

14    For the Government:   Debra Kanof
                            Anna Arreola
15                          Luis Gonzalez
                            Assistant United States Attorney
16                          700 East San Antonio, Suite 200
                            El Paso, Texas 79901
17
      For the Defendant:    Maureen Franco
18                          Erik Hanshew
                            Assistant Federal Public Defender
19                          700 E. San Antonio, Suite 410
                            El Paso, Texas  79901
20
      Court Reporter:       Kathleen A. Supnet
21                          El Paso, Texas
                            (915)834-0573
22                          kathi.supnet5303@gmail.com

23

24           Proceedings reported by mechanical stenography,

25    transcript produced by computer-aided software and computer.

KATHLEEN A. SUPNET, CSR

<pre>
 1                        CHRONOLOGICAL INDEX

 2               VOLUME 9(B) of 9(A)(B)(C) OF 20

 3    September 12, 2016                        PAGE    VOL.
</pre>

<pre>
 4    Announcements. . . . . . . . . . . . . . . . 3      9B

 5    Voir Dire by the Court . . . . . . . . . . . 3      9B

 6    Motion by the Defense. . . . . . . . . . . . 70     9B

 7    Court's Ruling . . . . . . . . . . . . . . . 71     9B

 8    Voir Dire by the Government. . . . . . . . . 71     9B

 9    Voir Dire by the Defense . . . . . . . . . . 72     9B

10    Individual Voir Dire . . . . . . . . . . . . 85     9B

11    Panel Selected and Seated. . . . . . . . . . 123    9B

12    Court Reporter's Certification . . . . . . . 129    9B
</pre>

<pre>
13

14

15

16

17

18

19

20

21

22

23

24

25
</pre>

```
1                              *  *  *

2                 (Proceedings begin at 9:01 a.m.)

3                 (Defendant and counsel present.)

4                 (Petit Venire not present.)

5            THE COURT:  Is there anything we need to take up

6    before we bring the panel?

7                 MS. KANOF:  Nothing from the government, Judge.

8                 MS. FRANCO:  No, Your Honor.

9                 (Petit Venire present.)

10           THE COURT:  Court calls for trial the case of the

11   United States versus Marco Antonio Delgado, EP:13-CR-370.

12                Let the record reflect that all members of the venire

13   Numbers 1 through 50 are present.  The United States,

14   represented by its assistant United States attorneys is present.

15   The defendant and his attorneys are present.

16                May I have announcement of counsel, please.

17                MS. KANOF:  Yes, Your Honor.  Good morning.  Debra

18   Kanof, Anna Arreola and Jose Luis Gonzalez for the United

19   States.  We are ready for trial.

20           THE COURT:  Good morning, Ms. Kanof.

21           MS. FRANCO:  Good morning, Your Honor.  Maureen Franco

22   and Erik Hanshew on behalf of Marco Antonio Delgado.  We're

23   ready.

24           THE COURT:  Good morning, Ms. Franco.

25                (Person walks into courtroom.)
```

```
 1              THE COURT:  Is this a juror?

 2         Good morning ladies and gentlemen of the panel.  Thank

 3    you so much for answering your summons this morning and joining

 4    us.  My name is David Guaderrama.  I am the judge assigned to

 5    hear this case.  I would like to begin by introducing to you the

 6    Court's personnel, beginning with my court security officer,

 7    Mr. Heidtman.  Mr. Heidtman will act as my bailiff, who will be

 8    in charge of escorting witnesses in and out of the courtroom,

 9    attending to the needs of the jury that is finally selected to

10    hear this case, and he will generally provide courtroom

11    security.

12         My court reporter this morning is Ms. Kathi Supnet.

13    She is the lady right below me to the left.  It is Ms. Supnet's

14    job to take down everything that is said and assign to what is

15    said to the person who said it.

16         My law clerk this morning, Mr. Waheed Khan.  He will

17    be assisting me with the documentation preparation and

18    management for this trial as well as any legal research that

19    comes up through the the process.

20         My courtroom deputy, Mr. Greg Dueñas, sitting in front

21    here.  His function during these proceedings will be to manage

22    the evidentiary exhibits and control the courtroom's technology.

23         And helping you get seated this morning is my jury

24    clerk, Michelle Dueñas.  Some people refer to her as Greg's

25    better half, as well my judicial assistant in the back, Elena
```

1    Aguilar and my other law clerk, Jeff Peters.

2            On behalf of all of us, I welcome you here to your

3    United States District court.  We are all public servants and we

4    hope to serve you and the law with humility and respect.

5            Our respect begins with respect for your time.  I have

6    no doubt your time is very valuable to you and I commit to you

7    to using your time wisely and expeditiously consistent with the

8    requirements of justice and the needs of this litigation.

9            So let us begin.  This morning we are all here to seat

10   a jury for trial.  This part of the trial is called voir dire,

11   which means to tell the truth.  And the purpose of this voir

12   dire's truth telling is twofold.

13           First, it allows the Court to determine whether any

14   prospective juror should be excused for cause, that is for some

15   legal reason.  And second, it enables the attorneys for each

16   side to thoughtfully exercise their individual judgment with

17   respect to their peremptory challenges, and that is a strike of

18   a juror's name list of potential jurors for which no reason need

19   be given.  The government has six of such strikes and the

20   defendant has ten.

21           Our procedure this morning will be somewhat like this.

22   I will ask you a series of general questions about how you feel

23   about certain aspects of this case.  There are no right or wrong

24   answers, only truthful answers.  When I have completed my

25   conversation with each of you, each side, the government and the

1    defense will then be allowed ten minutes to ask additional

2    questions they feel are necessary.

3           If you have a response to a question that either I ask

4    or whether the attorney's ask, please raise your hand.  Once

5    your hand is up, I will call upon you or the attorney will call

6    upon you.  At that time, please stand, state your name and

7    number.  All three of these things are important to us so the

8    court reporter can clearly here you.  If you stand, she'll be

9    able to hear you better, and if you give us your name and

10   number, we'll be able to accurately identify you on the record

11   and identify what you said.

12          Now, during this process, I can assure no one will ask

13   you any question with the intent to embarrass you.  However,

14   what I cannot assure you is you won't have an answer to a

15   question that may embarrass you.  So, if you have an answer to a

16   question, but you feel embarrassed to share it in front of the

17   rest of the panel, please let me know you would rather answer

18   that question here at the bench and we'll make arrangements for

19   you to then answer that question outside the presence of the

20   rest of the panel.

21          At the conclusion of all of the questions that the

22   Court and the parties ask, we may need to speak to some of you

23   outside the presence of the rest of the panel here at the bench.

24   This usually takes about three minutes for jurors to do that,

25   and on a panel this size, we may speak to as many as ten of you.

1    That may be 30 minutes.  Once all of the questioning is

2    complete, the attorneys will then have 30 minutes of quiet time

3    to exercise those peremptory strikes that we talked about.  So I

4    expect that we should be able to select and seat a jury in about

5    three hours from now, so about noon.

6            Now, the case that we'll be trying for possibly as

7    much as three weeks, is a criminal case.  And in this case, the

8    defendant, Marco Antonio Delgado is charged by indictment with

9    the offenses of wire fraud in Counts One through three, money

10   laundering in Counts Four through Ten and engaging in monetary

11   transactions in property derived from specified unlawful

12   activity in Counts Eleven through Nineteen.

13           The indictment in this case alleges in summary the

14   following:

15           The defendant, Marco Antonio Delgado, was an attorney

16   licensed in the State of Texas.  In 2010, Mr. Delgado's client,

17   a company called F. G. G. Enterprises, entered into a contract

18   with the electric utility company of Mexico, C.F.E., to supply

19   power generators for a power plant in Agua Prieta, Mexico.

20           The indictment alleges that pursuant to the contract,

21   the payments from C.F.E., the electric company, to F.G.G., were

22   to be deposited into an F.G.G. bank account at Wells Fargo in

23   El Paso, Texas.

24           The indictment alleges that in March of 2010, the

25   defendant, without the knowledge and consent of F.G.G.'s owner,

1    delivered to C.F.E., the electric company, written instructions

2    redirecting deposit of payments that were to be made to F.G.G.

3    by C.F.E. into an account in Turks and Cacaos Island, which was

4    under Mr. Delgado's control instead of paying it to F.G.G.'s

5    Wells Fargo account.

6             The indictment alleges that the defendant used the

7    money deposited into the Turks and Cacaos account for his

8    personal enrichment.

9             The indictment also alleges the defendant, without the

10   knowledge and consent of Mitsubishi Power Systems of America,

11   pledged Mitsubishi's equipment as collateral to fulfill F.G.G.'s

12   obligation to provide letters of credit to C.F.E., the electric

13   company.

14            Has anyone on the panel, heard or know anything about

15   this case?  All right.

16            The United States is represented by its assistant

17   United States attorney, Ms. Debra Kanof, Ms. Anna Arreola and

18   Mr. Jose Luis Gonzalez, as you heard.  I'm going to ask you to

19   stand and introduce yourself and those at the your table to the

20   jury panel, please.

21            MS. KANOF:  Good morning.  My name is Debra Kanof.

22   I'm an assistant United States attorney for the Western District

23   of Texas.  I have at counsel table, assistant United States

24   attorney Anna Arreola and United States assistant attorney Jose

25   Gonzalez.  Also at counsel table are Special Agent Joshua Fry of

1    Homeland Security and Special Agent Brian Cunningham of Homeland

2    Security.  Also assisting us at counsel table is Amelia Serrano,

3    who is a paralegal in our asset forfeiture section in the U.S.

4    Attorney's Office.

5              THE COURT:  Thank you, Ms. Kanof.

6              Does anyone on the panel know any of the individuals

7    that were just introduced to you?

8              Does anyone on the panel know anyone who works at the

9    United States Attorney's Office here in El Paso or anywhere in

10   Texas?

11             All right.  Ms. Kanof if you would introduce us to

12   your perspective witnesses please.

13             MS. KANOF:  I think Mrs. Arreola is going to do that.

14             THE COURT:  All right.

15             Ms. Arreola?

16             MS. ARREOLA:  During the course of this trial, the

17   government will be calling the following witnesses:  John Adams,

18   Patrick Altamura, Kevin Beddard, Jennifer Brown, Yumiko

19   Coronado, Juan Pablo Matamala Cortes, Brian Cunningham, Irais

20   Davila, John Eick, Fernando Gireud, Joseph Gliva, Angel

21   Hernandez, Kenneth LeCense, Linda Medlock, Mace Miller, Liliana

22   Narvaez and Hector Ponce.

23             THE COURT:  Did anyone on the panel recognize any of

24   those individuals?  And if you need us to run something back

25   we're happy to do that.  Do any of you think you know any of

1    those individuals that you saw?  Very well.  Thank you.

2            The defendant, Marco Antonio Delgado, is represented

3    by his attorneys Mr. Erik Hanshew and Ms. Maureen Franco.  If

4    you'd stand, Mr. Hanshew and Ms. Franco and introduce yourselves

5    to the jury panel.

6            MS. FRANCO:  Hi.  Good morning.  I'm Maureen Franco.

7    I'm the Federal Defender for the Western District of Texas.

8    With my is Erik Hanshew, also with my office.  This is Mr. Marco

9    Delgado.  This is Irma Wyatt.  She's our investigator and

10   Cynthia Hernandez is a paralegal who will be assisting us.

11           THE COURT:  All right.  Thank you, Ms. Franco.

12           Does anyone on the panel know any of the individuals

13   that were just introduced to you?

14           Does anyone on the panel know anyone who works at the

15   Federal Public Defender's Office?

16           Has anyone been represented by them or know someone

17   who is been represented by them, the Federal Public Defender's

18   Office?

19           Ms. Franco, if you would please introduce us to your

20   witnesses.

21           MS. FRANCO:  Your Honor, I believe that they are the

22   same ones that the government has already --

23           THE COURT:  Very well.  Thank you.

24           The jury we select today will decide whether or not

25   the defendant is guilty or not guilty of the charges that are

1    made against him in the indictment.  And I expect that from what

2    I was told earlier that the jury we select today will serve no

3    more than three weeks, could be much less than that, so you

4    should expect to be here through at least September 30th.

5              Our standard courtroom hours, with the exception of

6    today, will be from 9:00 in the morning to 6:00 in the

7    afternoon.  Today we'll break at 4:30.  Tomorrow and days after,

8    expect to be here from 9:00 in the morning to 6:00 p.m.  And

9    this, as I say will -- may go as far as September 30th, probably

10   will not.

11             Is there anyone who -- anyone on the panel who feels

12   like they have a conflict or an inability to meet this schedule?

13             PETIT JUROR NUMBER 32:  Sharon Karns, Juror Number 32.

14   We just had a premie baby not quite a week old, but that would

15   be a problem.  She'll be taking it home and need help from me.

16             THE COURT:  All right.  I'll take that up with the

17   attorneys.  That may not be enough to get you off, but we'll

18   certainly talk to them.

19             PETIT JUROR NUMBER 49:  Good morning.  Mariena

20   Borrego, Number 49.  I'm a full time student at UTEP.

21             THE COURT:  And are -- have classes started already?

22             PETITE JUROR NO. 49:  Yes.

23             THE COURT:  Thank you.

24             PETITE JUROR NO. 1:  Susan Baca Number 1.  We have

25   plans on leaving and we have tickets to go to Houston on the

1    22nd of this month.

2             THE COURT:  All right.  How long are you going to be

3    in Houston.

4             PETITE JUROR NO. 1:  Gosh, 22, 23, 24, 25 and 26.

5             THE COURT:  Thank you, Ms. Baca.

6             PETITE JUROR NO. 19:  Maria Chavez, Juror Number 19.

7    I am a school teacher.  We just started the school year.  It is

8    very difficult.  I would have to set up a substitute for the

9    next three weeks.  We have beginning of the year assessments

10   coming up.  I just hope that you would consider that, because

11   that is very hard for my students, and with the trainings that I

12   have coming up, you know to implement programs.  Thank you.

13            THE COURT:  Yes, ma'am.  I'll take it up with the

14   attorneys and see what we can do, but generally economic

15   reasons, because they impact all of us, are not the kind of

16   things we excuse you from.

17            PETITE JUROR NO. 20:  Christina Herrera, Number 20.

18   We're going out of town on Friday for a wedding.

19            THE COURT:  Which Friday?

20            PETIT JUROR NUMBER 20:  This Friday, the 16th.  And I

21   also have two children that I have to pick up from day care and

22   the day care closes at 5:00, so that would be a time conflict.

23            THE COURT:  And on the out-of-town trip, when do you

24   return?

25            PETIT JUROR NUMBER 20:  We'll return Sunday the 18th.

```
 1              THE COURT:  And two kids, is there someone else that

 2      can pick them up?

 3              PETIT JUROR NUMBER 20:  No.  My husband is an

 4      over-the-road truck driver, so he's never home.

 5              THE COURT:  He's never home?

 6              PETITE JUROR NO. 20:  Well, he's home, but for three

 7      weeks.

 8              THE COURT:  All right.  I'll take that up with the

 9      attorneys as well.

10              PETIT JUROR NUMBER 24:  I'm Jacqueline Anaya, Number

11      24.  We have plans and airlines tickets to leave on

12      September 30th.

13              THE COURT:  All right.  Thank you, ma'am.

14              PETIT JUROR NUMBER 9:  I am Sarah Quinones, Number 9.

15      I have children that I pick up from school at 4:00 p.m. and I'm

16      able to get coverage to pick them up most days, but my in-laws

17      are older and they have a lot of doctors' appointments.  They

18      can't always pick them up.

19              THE COURT:  What about the dad?

20              PETIT JUROR NUMBER 9:  My husband is a teacher in

21      Socorro District, so he doesn't get out in time to pick them up

22      at the bus.

23              THE COURT:  Okay.

24              PETIT JUROR NUMBER 28:  Macario Gonzalez, Jr., Juror

25      28.  I'd like to speak to you on this.
```

1          MS. FRANCO:  I'm sorry, Your Honor.  I couldn't hear

2     what he said.

3          THE COURT:  He wants to speak to us at the bench.

4          PETIT JUROR NUMBER 41:  Oscar Hernandez, Number 41.

5     I'm a veteran, sir, and I have medical appointments for the rest

6     of the month.  This is several days.  So if possible, I would

7     like to ask for a postponement for maybe next month.  Thank you.

8          PETIT JUROR NUMBER 39:  Sarah Fry, Number 39.  I have

9     a son who is in preschool.  I have to drop him off at 8:20 and

10    pick him up at 11:20.  My husband is in the military.  We did

11    work it out today with much effort.  I don't know -- it would be

12    very difficult for me to continue.

13         THE COURT:  All right.  Thank you.

14         PETIT JUROR NUMBER 37:  Jose Raul Garcia.  My wife was

15    involved in an accident.  We both were.  She's going to therapy

16    twice or three times a week, and just a week and a half ago, my

17    daughter-in-law was also in an accident.  They lost their

18    vehicle, so I'm taking them also to their therapy also and

19    that's for her every day and the little one twice a week.

20         THE COURT:  I'll talk to the lawyers about that and

21    see if there's anything we can do to help.  As you can see,

22    there's a lot of you that have issues and if we let everybody

23    go, we don't have a trial so...

24         PETIT JUROR NUMBER 36:  Claudia Cochran, Juror Number

25    36.  I teach.  I'm a full time college professor.  I have seven

1    courses.  They were not able to secure a substitutes even for

2    today except for one class.  And I feel like many students, over

3    280 students would be affected if I'm out for three weeks.

4              THE COURT:  Okay.  Thank you.

5              PETIT JUROR NUMBER 37:  I'm sorry.  I forgot to

6    mention my number, Number 37, Jose Raul Garcia.

7              THE COURT:  Yes, sir.  Thank you.

8              All right.  Anyone else?

9              Yes, ma'am.

10             PETIT JUROR NUMBER 4:  I'm Mary Dibler Number 4, and

11   if I could just approach the bench please.

12             THE COURT:  Yes, ma'am.

13             Anyone else?

14             JUDICIAL ASSISTANT AGUILAR:  Your Honor, Juror Number

15   45 says he knows you.

16             THE COURT:  Hopefully, he knows good things about me.

17   And if you know any bad things, don't share those.

18             PETIT JUROR NUMBER 45:  Juror Number 45, Carlos Muro.

19   I used to work at the courthouse.

20             THE COURT:  The state courthouse?

21             PETIT JUROR NUMBER 45:  At the County Courthouse.

22             THE COURT:  How long were you there?

23             PETIT JUROR NUMBER 45:  I was there for 13 years.

24             THE COURT:  Yeah, and so I can't remember how long I

25   was there; 24 years or something like that.  Anything about that

1    relationship that would prevent you from being fair and

2    impartial?

3         PETIT JUROR NUMBER 45:  I used to deliver sometimes

4    files to your court.

5         THE COURT:  Anything about that would prevent you from

6    being fair and impartial?

7         PETIT JUROR NUMBER 45:  I don't know about that.

8         THE COURT:  Well, you are the only one that knows your

9    heart.  Was there anything about working there that causes you

10   not to be fair and impartial?

11        PETIT JUROR NUMBER 45:  At the courthouse?  It

12   wouldn't influence me.

13        THE COURT:  Okay.  Thank you.

14        Anyone else?

15        PETIT JUROR NUMBER 42:  Juror Number 42, Gricel Montes

16   De Orrantia.  You and my husband went to high school together.

17        THE COURT:  Oh, John?

18        PETIT JUROR NUMBER 42:  Yes.

19        THE COURT:  He's a good man.  Hopefully he doesn't

20   tell you any stories from high school.

21        PETIT JUROR NUMBER 42:  No, they've been all good.

22        THE COURT:  Anything about -- I mean I've known John

23   since we were freshman, '72 -- no, '68.  That's a long time.

24   Anything about that that would prevent you from being fair and

25   impartial in this case?

1          PETIT JUROR NUMBER 42:  No.

2          THE COURT:  Okay.  Thank you.

3          Anyone else?  Okay.

4          PETIT JUROR NUMBER 12:  Amabilia Valenzuela, Juror

5    Number 12.  I'd like to explain if I approach the bench later

6    please.

7          THE COURT:  Sure.

8          PETIT JUROR NUMBER 33:  Juror Number 33, Gina Delgado.

9    My father worked at the courthouse here as a deputy in charge,

10   and I've heard a lot about the judges and the courtroom.

11         THE COURT:  Anything about that relationship that your

12   father had here that would prevent you from being fair and

13   impartial in this case?

14         PETIT JUROR NUMBER 33:  Possibly, yes.

15         THE COURT:  We'll speak to you at the bench.

16         PETIT JUROR NUMBER 30:  Lydia Mlouhi, Number 30.  I'd

17   like to approach the bench or speak to the Judge.

18         THE COURT:  Sure.

19         PETIT JUROR NUMBER 37:  Roxana Lara, Number 47.  I

20   have my only daughter and she's pregnant.  She has high risk

21   delivery.  And it's due by September the 28th.  And I am the

22   only one that help her with the little one.

23         THE COURT:  Here's -- jury duty is a duty that we have

24   to carry out.  I know that you-all have lives.  I know you have

25   other things to do.  But your daughter is going to have to

1   figure out a way to deal with her pregnancy, because you need to

2   serve your jury duty.  You've heard all of the excuses.  I think

3   half of panel already has reasons why they can't be here.  We

4   can't grant all of those excuses and have a trial.  Your

5   daughter will have to figure out a way to deal with that

6   otherwise nothing would get done.

7            PETIT JUROR NUMBER 47:  She has nobody else that can

8   help her with the little one.  My granddaughter, she has two

9   years old.

10           THE COURT:  And your number was what?

11           PETITE JUROR NO. 47:  47.

12           THE COURT:  Okay.  Thank you.

13           PETIT JUROR NUMBER 27:  Paul Mora, 27, approach the

14  bench.

15           THE COURT:  Yes, sir.

16           Anyone else?  All right.

17           The function of the jury that we are going to select

18  today will be to determine the credibility of the witnesses, the

19  weight that you give to the evidence that you find credible and

20  the facts that you determine to be.

21           You as a juror can believe all of what a witness says,

22  none of what a witness says or you can believe some things a

23  witness says and not others.  How much you believe is entirely

24  up to you.  And in making these determinations of credibility,

25  weight and facts you should have no influence from the Court,

1        not by my facial expressions, my demeanor nor my rulings on

2        objections.  The function of the court, that means me the Court,

3        is to rule on the law.  My role is very limited and small.  On

4        the other hand, jury's role is very broad and very large,

5        because it is the jury who will determine who to believe.  It is

6        the jury that will determine what weight to give to what you

7        believe, and ultimately it's the jury that determines what

8        happened in this case, what the facts are.

9               So in this way, the jury trial is a partnership

10       between the Court and the jury.  The Judge determines what the

11       law is, very small role.  The jury determines the facts and then

12       the jury applies the law to the facts and decides whether or not

13       the United States is has proven beyond a reasonable doubt the

14       charge it made against the defendant in its indictment.  That's

15       a huge role.  And that role falls to the jury.

16              Now, the next thing we're going do here is cover some

17       general legal principles that apply in all trials.  The first of

18       these is the presumption of innocence.  In all criminal cases,

19       the defendant is presumed to be innocent until proven guilty

20       beyond a reasonable doubt.  As a juror, you must give the

21       defendant the benefit of this presumption.  You must hold to

22       this presumption of innocence during the government's evidence,

23       during the defendant's evidence, and it must follow you into the

24       jury room as you begin your deliberations.

25              Is there anyone here on the panel who as a juror if

1   are you selected to hear the case as a juror, could not or would

2   not give the defendant the benefit of the presumption of

3   innocence, you just couldn't do it?  All right.

4         The second legal principle we need to talk about is

5   the burden of proof.  The burden of proof tell us who needs to

6   prove something, what needs to be proven and how much proof is

7   needed.

8         In a criminal case, it is the government who must

9   prove something, and what the government needs to prove is the

10  allegations that it made in its indictment, whatever it said

11  happened in its indictment, they have to come to court and prove

12  that.  And how much proof is needed?  Well, they have to come up

13  with enough proof to convince you beyond a reasonable doubt that

14  the defendant is guilty.

15        In a criminal case, the burden of proof is always on

16  the government and it never moves.  The government must prove

17  beyond a reasonable doubt what it alleged in its indictment.

18  The government must prove beyond a reasonable doubt that a crime

19  was committed and that the defendant committed it.

20        The defendant has in no burden.  The defendant does

21  not have a burden to prove he's not guilty.  Sometimes jurors

22  have a hard time understanding that, but the defendant has no

23  burden.  He doesn't have to prove anything.

24        A criminal trial is not a competition between the

25  government and the defendant to see who can produce the most

1    evidence.  A criminal trial is a test to see if the government

2    can prove beyond a reasonable doubt what is alleged in its

3    indictment.

4         This being the case, the defendant can sit at the

5    counsel table, he can observe the trial like I everyone else and

6    observe the government as it puts on its case, and he can ask

7    not one single question.  His attorneys don't have to ask one

8    question or offer any proof at all.  And if the government did

9    not prove the allegations of its indictment beyond a reasonable

10   doubt, you must find the defendant not guilty, even if the

11   defendant did nothing to defend himself during the trial.  And

12   why is this case?  It's the case because the government has the

13   burden of proof in a criminal case and the presumption of

14   innocence favors the defendant.

15        Is there any member of the panel who as a juror could

16   not or would not hold the government to its burden of proving

17   the defendant guilty beyond a reasonable doubt?  Anyone who

18   couldn't do it or wouldn't do it?

19        The third general legal principle is the defendant's

20   right to remain silent.  As we all know, the Fifth Amendment to

21   the United States Constitution guarantees anyone accused of a

22   crime the right not to testify, the right to remain silent.  And

23   what is really important about the right to remain silent is

24   that no adverse inference can be made or taken from the decision

25   not to testify.  It's not enough to have the right.  You have to

 1   give effect to it.  So if someone doesn't testify you can make

 2   no adverse inference about that.

 3          So the important take away is that in reaching a

 4   verdict, no juror who is deliberating on guilt or non-guilt of

 5   the defendant, a defendant who exercises his right not to

 6   testify, no juror can consider as proof of guilt the fact that

 7   the defendant did not testify.

 8          So if we use the scales of justice as an example, you

 9   know the government is trying to put evidence on this scale to

10   prove its case beyond a reasonable doubt, the fact that the

11   defendant did not testify is not a bit of evidence that you draw

12   up on the scale.  It's nothing.  If he didn't testify, it's

13   nothing.  You don't add that to the government's scale in its

14   effort to tip it in its favor.

15          Is there any member of the panel that does not

16   understand a defendant's right to remain silent?  Have any

17   questions about that?

18          Is there any member of the panel that would not follow

19   the law and would consider the defendant's silence as a

20   circumstance against him?

21          The fourth general legal principle we need to speak

22   about are the two general kinds of evidence we have.  We have

23   direct examination and circumstantial evidence, and they are

24   both -- they're each equals.  Circumstantial evidence is good as

25   direct examination evidence.  Direct evidence is good as

 1    circumstantial evidence.

 2            For example, you have witness number one who testifies

 3    to you it snowed last night.  I know this because last night I

 4    saw the snow fall from the sky and come onto the ground.  I saw

 5    it snow.  It snowed last night.

 6            Circumstantial evidence is proof of facts from which

 7    you may infer or conclude that some other factor exists.  For

 8    example, if you have witness two who testifies it snowed last

 9    night, and I know this because when I went to bed there was no

10    snow on the ground, and when I got up this morning there was

11    snow on the ground.  I didn't see the snow falling from the sky

12    but I know it snowed at night.

13            First witness proved it snowed at night by direct

14    evidence because she saw it happen.  The second witness proved

15    it snowed at night, because she figured it out from the facts

16    that she had.  Each witness effectively proved that it snowed at

17    night, so circumstantial evidence is legally as good as direct

18    evidence and you may consider both kinds of evidence in reaching

19    your decision on the case.

20            Does anyone have any questions about that principle?

21            Is everyone able to give circumstantial evidence the

22    same weight and value as direct evidence ?  Anyone who cannot do

23    that?

24            You know you all are allowed to answer, raise your

25    hand or saying say something.  I didn't mean to chill you by

1    telling you that jury duty is a duty.

2            The fifth and last general principle is that the

3    indictment is not evidence.  It's the means by which the

4    government informs the defendant of what he is charged with that

5    tells him what he has to defend against.  It also sets out for

6    the rest of what the government must prove, especially to the

7    jury beyond a reasonable doubt in order for the jury to return a

8    verdict of guilty.  It is no evidence of guilt.  The indictment,

9    once again, is not something you draw up onto the scales of

10   justice to tip the scale in favor of the government.  It's no

11   evidence.

12           Is there anyone here who would consider an indictment

13   as evidence of guilt?  All right.

14           Is there any member of the panel who thinks that law

15   enforcement officers never lie, ever?  A few smirks.  No one?

16           Is there any member of a panel who thinks law

17   enforcement officers are incapable of lying when they are under

18   oath?  They're sworn in to tell the truth, anyone who thinks

19   that they will never lie if they are under oath?

20           Have you, any member of your family or any close

21   friend ever been employed by a law enforcement agency or group?

22   If you have, raise your hand.  Okay.  We'll go through this --

23   let's do this side and then do the other side.

24           PETIT JUROR NUMBER 34:  Priscilla Campos, I'm Number

25   34.  I have two uncles in the Border Patrol.

```
 1              THE COURT:  All right.  Are you very close?  Are you
 2    very close to those uncles?
 3              PETIT JUROR NUMBER 34:  Yes.
 4              THE COURT:  Anything about your relationship with them
 5    that would cause you to somehow be unfair to the defendant?
 6              PETIT JUROR NUMBER 34:  I don't think so.
 7              THE COURT:  You don't feel like it's team U.S.A.
 8    because your uncles are in the Border Patrol?  Are you team
 9    U.S.A. and not team defendant?
10              PETIT JUROR NUMBER 34:  No.
11              THE COURT:  You can be fair and impartial to both
12    sides?
13              PETIT JUROR NUMBER 34:  Yes.
14              PETIT JUROR NUMBER 33:  Juror Number 33, Deena
15    Delgado.  I have a cousin in the Border Patrol as well.
16              THE COURT:  A cousin?
17              PETIT JUROR NUMBER 33:  Uh-huh.
18              THE COURT:  And anything about that relationship that
19    would prevent you from being fair and impartial?
20              PETIT JUROR NUMBER 33:  No, sir.
21              THE COURT:  Thank you, ma'am.
22              PETIT JUROR NUMBER 30:  Lydia Mlouhi, Number 30.  I
23    have a cousin who is a Border Patrol agent.
24              THE COURT:  Anything about your relationship with your
25    cousin that would prevent you from being fair and impartial?
```

1              PETIT JUROR NUMBER 30:  No.

2              PETIT JUROR NUMBER 50:  My name Juan Aleman, Juror

3    Number 50.  I am currently a court enforcement officer.

4              THE COURT:  Okay.  And that's with the city, City of

5    El Paso?

6              PETIT JUROR NUMBER 50:  Yes, sir.

7              THE COURT:  Mr. Aleman, because you are in law

8    enforcement, anything about your service in law enforcement and

9    experiences you have had in code enforcement that would cause

10   you to favor the government and their position?

11             PETIT JUROR NUMBER 50:  No, Your Honor.

12             THE COURT:  You could be fair and impartial to both

13   sides?

14             PETIT JUROR NUMBER 50:  Yes, Your Honor.

15             THE COURT:  All right.  Thank you, sir.

16             Well let me ask you this.  If you were to be picked

17   for this jury and you returned a verdict of not guilty, would

18   you be able to face your brother code enforcers and you know

19   like --

20             PETIT JUROR NUMBER 50:  Yes, Your Honor.

21             THE COURT:  All right.  Thank you very much.

22             PETIT JUROR NUMBER 9:  Sara Quinones, Number 9.  My

23   cousin is a police officer and I work with a lot of police

24   officers and parole officers.

25             THE COURT:  Where do you work ma'am?

1          PETIT JUROR NUMBER 9:  At Cesar Chavez Academy, the

2    JJAP for Ysleta.

3          THE COURT:  Anything about your relationship with your

4    cousin or your work at the Cesar Chavez Academy that would cause

5    you to tend to disfavor the defendant and their position?

6          PETIT JUROR NUMBER 9:  No.

7          THE COURT:  You could be fair and impartial to the

8    defendant?

9          PETIT JUROR NUMBER 9:  Yes.

10          THE COURT:  Anything about your relationship with

11    those law enforcement officers that would prevent from you being

12    fair and impartial to the government?

13          PETIT JUROR NUMBER 9:  No, Your Honor.

14          THE COURT:  All right.  Thank you, ma'am.

15          PETIT JUROR NUMBER 7:  Josh Melissa Corella, Juror 7.

16    My prior employment was that of a parole officer here in El Paso

17    and my present employment is that of United States Probation in

18    the District of New Mexico.

19          I have one cousin who is Border Patrol.  I don't speak

20    with him although not a familial relationship.  I have

21    relationships with agencies through my employment.

22          THE COURT:  And in your prior life, were you a parole

23    officer here in El Paso County?

24          PETITE JUROR NUMBER 7:  Yes.

25          THE COURT:  And your prior life as a parole officer

 1    and interaction with law enforcement then, anything about that

 2    that would prevent you from being fair and impartial?

 3                PETIT JUROR NUMBER 7:  No, Your Honor.

 4                THE COURT:  Now, as a probation officer in the

 5    District of New Mexico, first you don't recognize any of these

 6    agents.

 7                PETIT JUROR NUMBER 7:  No, Your Honor, I don't.

 8                THE COURT:  Anything about your service as a probation

 9    officer with New Mexico that would prevent you from being fair

10    and impartial to both sides?

11                PETIT JUROR NUMBER 7:  No.

12                THE COURT:  You don't feel like if you sat on this

13    jury were to return a verdict of not guilty that you would have

14    to face criticism back at home?

15                PETIT JUROR NUMBER 7:  No, Your Honor.

16                THE COURT:  Okay.  Thank you, ma'am.

17                PETIT JUROR NUMBER 4:  Mary Dibler, Number 4.  My

18    son-in-law is a police detective in El Paso.

19                THE COURT:  You know when you sit around, you all get

20    together, does he ever talk about --

21                PETIT JUROR NUMBER 4:  No, sir.

22                THE COURT:  Is there anything about your relationship

23    with your son-in-law that would prevent you from being fair and

24    impartial in this case?

25                PETIT JUROR NUMBER 4:  No, sir.

1          THE COURT:  You wouldn't have any pressure if you sat

2    on this jury and returned a verdict of not guilty and having

3    going to go back and face your son-in-law and do any explaining?

4          PETIT JUROR NUMBER 4:  No, sir.

5          THE COURT:  Okay.  Thank you.

6          PETIT JUROR NUMBER 3:  Jaime Mendez, Juror Number 4.

7          THE COURT:  Are you three?

8          PETIT JUROR NUMBER 3:  My son's godfather is a retired

9    policeman.

10         THE COURT:  Juror 3?

11         Are you Juror Number 3?

12         PETIT JUROR NUMBER 3:  Juror Number 3?

13         THE COURT:  Right.  Go ahead, sir.

14         PETITE JUROR NO. 3:  My son's godfather is a retired

15   policeman.

16         THE COURT:  Anything about your relationship with your

17   son's godfather that would prevent you from being fair and

18   impartial in this case?

19         PETIT JUROR NUMBER 3:  No, sir.

20         THE COURT:  Okay.  You don't feel like because he was

21   a retired police officer that you have to somehow favor the

22   government if you are sat on this jury?

23         PETIT JUROR NUMBER 3:  No, sir.

24         THE COURT:  All right.  Thank you, sir.

25         PETIT JUROR NUMBER 2:  Good morning, Judge.  I'm Juror

 1    Number 2.

 2                THE COURT:  Good morning, Ms. Estrada.

 3                PETIT JUROR NUMBER 2:  My husband is an agent with

 4    Postal Service O.I.G.

 5                THE COURT:  All right.  And those individuals have a

 6    lot of interaction with the courts here.

 7                PETIT JUROR NUMBER 2:  Yes, he does.

 8                THE COURT:  Anything about -- does your husband talk

 9    about his work normally?

10                PETIT JUROR NUMBER 2:  Yeah.  You know, I listen

11    sometimes.

12                THE COURT:  Anything about those conversations that

13    would cause you to disfavor the defendant or his case?

14                PETIT JUROR NUMBER 2:  Absolutely not, Judge.

15                THE COURT:  And if you were sat on this jury, would

16    there be any kind of pressure on you to feel like you had to

17    return a verdict of guilty because then you have to go back and

18    face your husband?

19                PETIT JUROR NUMBER 2:  No, sir.  He's happily

20    harmless.

21                THE COURT:  You have him under good control.

22                PETIT JUROR NUMBER 2:  Yes.

23                THE COURT:  So you can be fair and impartial to the

24    defendant?

25                PETIT JUROR NUMBER 2:  Absolutely.

```
 1              THE COURT:  And to the government?

 2              PETIT JUROR NUMBER 2:  Absolutely.

 3              THE COURT:  Thank you so much.

 4              PETIT JUROR NUMBER 16:  Your Honor, my name is Susan

 5    Baca, Number 1.  I have close family members and good friends

 6    who are in Border Patrol, Immigration, Police Department and

 7    Sheriff's Department and the Texas Rangers.

 8              THE COURT:  So having all of that law enforcement as

 9    you surrounding your family and friendships, do you somehow feel

10    like team America, team U.S.A. versus the defendant?

11              PETIT JUROR NUMBER 1:  No, sir.

12              THE COURT:  You don't feel if you sat as a juror on

13    this case you would feel any kind of negative pressure from your

14    friends and family if you were to return a verdict of not

15    guilty?

16              PETIT JUROR NUMBER 1:  No, sir.

17              THE COURT:  You could be fair and impartial to both

18    sides?

19              PETIT JUROR NUMBER 1:  Yes.

20              THE COURT:  Thank you, ma'am.

21              PETIT JUROR NUMBER 19:  Maria Chavez, 19.  My nephew

22    works with the Border Patrol and my husband works with U.S.

23    Probation.

24              THE COURT:  Martin?

25              PETIT JUROR NUMBER 19:  Martin.
```

```
 1          THE COURT:  Yeah.  All right.  Anything about the
 2   relationship with your nephews, specifically with your husband
 3   who works very, very closely with the courts --
 4          PETIT JUROR NUMBER 19:  Oh, go ahead.
 5          THE COURT:  -- anything about those relationships that
 6   would cause you any issues of being fair and impartial to both
 7   sides, specifically to the defendant?
 8          PETIT JUROR NUMBER 19:  Well, with my nephew, no.  And
 9   as far as me being impartial, I feel I would.  I would just feel
10   that because I know they write the reports for these
11   proceedings.  I would hope that if I sat on the jury, that if we
12   were to find you know not guilty, he wouldn't get any kind of --
13   I don't know -- backlash or anything for whoever is writing -- I
14   don't even know if he is -- but anyone who would be writing the
15   report for this case.
16          THE COURT:  Normally, those reports are written if
17   there's a guilty finding for sentencing.  So if there's a
18   finding of not guilty, there wouldn't be an issue or you to sit
19   on this jury, and if that occurs we'll make sure he's the guy
20   not writing the report.
21          With that, would you be able to be fair and impartial
22   to both sides?
23          PETIT JUROR NUMBER 19:  Yes.
24          THE COURT:  You wouldn't have any hesitancy of
25   returning a verdict of not guilty if the government failed to
```

1  prove itself?

2          PETIT JUROR NUMBER 19:  No.

3          THE COURT:  You'd have no hesitancy?

4          PETIT JUROR NUMBER 19:  Hopefully, they wouldn't

5  connect the facts.

6          THE COURT:  It wouldn't affect Martin.

7          PETIT JUROR NUMBER 19:  Oh, yes.  Thank you.

8          PETIT JUROR NUMBER 24:  Jaclyn Anaya, Juror Number 24.

9  I have a close family friend and my brother-in-law are in the

10  Sheriff's Department.

11          THE COURT:  A brother-in-law in the Sheriff's

12  Department?

13          PETIT JUROR NUMBER 24:  Yes.

14          THE COURT:  Anything about either of those would

15  prevent you from being fair and impartial in this case?

16          PETIT JUROR NUMBER 24:  No, sir.

17          THE COURT:  All right.  Thank you, ma'am.

18          PETIT JUROR NUMBER 28:  Macario Gonzalez, Jr., Number

19  28.  My daughter-in-law is U.S. Customs, three nephews and three

20  nieces are sheriffs.  And that's it.

21          THE COURT:  Anything about those relationships that

22  would prevent from you being fair and impartial?

23          PETIT JUROR NUMBER 28:  Possibly.

24          THE COURT:  We're already speaking to you.  We'll

25  speak to you as well on that.

1           Anyone else?

2           Has any member of the panel -- is there someone else?

3    No?  Okay -- any member of this panel who has ever applied for a

4    job with a law enforcement group and didn't get it?  Obviously,

5    you've told us if you are part of law enforcement.  Someone

6    applied -- back there in the back, Juror Number 50.  Mr. Aleman?

7           PETIT JUROR NUMBER 50:  Yes, sir.

8           THE COURT:  You're a code enforcement officer now.

9           PETIT JUROR NUMBER 50:  Yes, sir.  Previously when I

10   was younger, I applied for U.S. Customs and I didn't pass the

11   polygraph test.

12          THE COURT:  Okay.  Thank you very much.  Appreciate

13   it.

14          Anyone else?  Yes, ma'am.

15          PETIT JUROR NUMBER 26:  Good morning.  Melissa Montes

16   Number 26.  Right out of high school I applied for Border Patrol

17   and I didn't get past the oral board exam.

18          THE COURT:  So you did have an interest in law

19   enforcement.  Is that interest in law enforcement in any way

20   going to be an impediment to being fair and impartial as a juror

21   in this case?

22          PETIT JUROR NUMBER 26:  No, Your Honor.

23          THE COURT:  All right.  Thank you, ma'am.

24          Has any member of the panel ever had an experience

25   either good or bad, a notable experience that sticks in your

1    mind, good or bad with law enforcement or the criminal justice

2    system in any way, so strongly good or so strongly bad, that it

3    could affect your ability to be fair and impartial?

4          Yes, sir?

5          PETIT JUROR NUMBER 11:  Fernando Gonzalez, Juror

6    Number 11.  Back in 2010, 2011, I was actually a victim at a

7    robbery at a Popeye's, I believe, where the perpetrator actually

8    had a barrel shotgun right next to me.  Law enforcement said

9    they were going to follow up.  They never did.  Never got a

10   call, no nothing, and I had to deal with that ever since.  It

11   was a pretty bad experience.

12         THE COURT:  So you reported it to law enforcement,

13   they came initially -- did they show up initially?

14         PETIT JUROR NUMBER 11:  Yes, they did.  They sat us

15   down by the curb, everybody out, perpetrator obviously took off,

16   but they said they were going to give us a call probably a week

17   or two weeks to see how we were doing, no further investigation.

18         THE COURT:  You felt like you were let down by the El

19   Paso -- was it the El Paso Police Department or Sheriffs.

20         PETIT JUROR NUMBER 11:  I feel like I was let down by

21   the system.

22         THE COURT:  And is that sentiment so strong that it

23   would affect your ability to be fair and impartial to this?

24         PETIT JUROR NUMBER 11:  I still have a little bit of a

25   death sentiment with me and it's already 2016.

```
 1              THE COURT:  All right.  Okay.  Thank you.

 2              Anyone else?

 3              And thank you for sharing that.  And obviously I know

 4    some of these issues are impactful emotionally, but they are

 5    important to us, so please, I encourage you to share with us.

 6    And if you need to do it at the bench and not in front of the

 7    panel, you can do that, too, but please let us know.  And thank

 8    you so much Mr. Gonzalez.

 9              Anyone else?

10              Has any member of the panel, your spouse, close friend

11    or a relative ever been the subject of any government

12    investigation?  Okay.  All right.

13              PETIT JUROR NUMBER 32:  Sharon Karns, 32.  Actually,

14    not he, himself, but the company he was employed by.

15              THE COURT:  Who is he, your husband?

16              PETIT JUROR NUMBER 32:  Yes.  Savings and loan.  And

17    it was an ongoing thing for anybody maybe seven years and he had

18    to testify several times.

19              THE COURT:  That was when we had the savings and loan

20    crisis and a lot of those folded up.

21              PETIT JUROR NUMBER 32:  And he was a real estate

22    broker, right?

23              THE COURT:  Do you feel like he -- do you feel like he

24    was treated fairly in that investigation?

25              PETIT JUROR NUMBER 32:  Yes, him.  I don't know about
```

1   the savings and loan, necessarily, and head of that, but it was

2   emotional.

3           THE COURT:  But you feel like your husband was treated

4   fairly?

5           PETIT JUROR NUMBER 32:  Yes.

6           THE COURT:  You feel like the head of the savings and

7   loan was not treated fairly.

8           PETITE JUROR NUMBER 32:  No.  I think it was pretty

9   much targeting and he couldn't win.  He died shortly after.

10          THE COURT:  Okay.  I know that was some years back,

11  but do you still hold some residual --

12          PETIT JUROR NUMBER 32:  I would hope not.  Would it

13  re-enter?  I don't know.  I can't be positive.  It depends upon

14  the circumstances.

15          THE COURT:  All right.  Well, see, the way we do voir

16  dire is we have to know up front, because once you are on the

17  jury, it's too late.

18          PETIT JUROR NUMBER 32:  I say it probably would affect

19  somewhat.

20          THE COURT:  Thank you so much.

21          PETIT JUROR NUMBER 33:  33, Deena Delgado.  My uncle

22  was part of the Socorro I.S.D. investigation.

23          THE COURT:  And do you feel like he was treated

24  fairly?

25          PETIT JUROR NUMBER 33:  Yes.

1          THE COURT:  And was there anything about that

2    investigation in that prosecution that would in anyway impact

3    your ability to be fair and impartial to both sides?

4          PETIT JUROR NUMBER 33:  No, sir.

5          THE COURT:  Thank you, ma'am.

6          Anyone else who had a response to that question?  Any

7    family member or friend, government investigation?

8          Has any member of the panel, your spouse, close friend

9    or relative, ever had any disputes with agents or employees of

10   the Department of Homeland Security?  Homeland Security

11   Investigations, often referred to as H.S.I., or any other

12   federal law enforcement agency or service, any disputes of any

13   kind?  Any kind?

14         Have you, your spouse or any family member or close

15   friend ever been employed by the federal government.  If you've

16   not already indicated, please indicate it now.  Ever been

17   employed by the federal government in any position?

18         Yes, ma'am.  I see a hand in the back.

19         PETIT JUROR NUMBER 39:  Sarah Friar, Juror Number 39.

20   I'm a member of the U.S. Army Reserve.

21         THE COURT:  I'm sorry.  You are what?

22         PETIT JUROR NUMBER 39:  A member of the U.S. Army

23   Reserve.

24         THE COURT:  All right.  As a member of the reserve, is

25   there anything about your service there that would prevent you

1  from being fair and impartial to both sides?

2              PETIT JUROR NUMBER 39:  No.

3              THE COURT:  Thank you, ma'am.

4              Has any member of the panel studied law or worked in a

5  law office or in the legal field?

6              PETIT JUROR NUMBER 7:  Your Honor, Melissa Corella,

7  Number 7.  When I was in college, I was employed at a law firm

8  in Las Cruces.  My master's and bachelor's degrees are both in

9  criminal justice.  And my present employment, as I mentioned

10  before, is a United States probation officer.

11             THE COURT:  All right.  If you know something because

12  of that experience that might be contrary to the instructions I

13  gave you as a juror, can you set aside what you know and accept

14  what I tell you as the law applicable to this case?

15             PETIT JUROR NUMBER 7:  Sure.  Yes.

16             THE COURT:  All right.  Thank you.

17             Have you -- is there someone else that had an answer?

18  I think there's a hand.

19             PETIT JUROR NUMBER 2:  Number two again, Judge.  I

20  work with a law office of Lisa Hays.

21             THE COURT:  Lisa Hays.  Please give her my regards.

22             Anything about your service there that would prevent

23  you from accepting the law and the charge that I give you?

24             PETIT JUROR NUMBER 2:  No.

25             THE COURT:  Anything about your service there that

1     would prevent you from being fair and impartial to both sides?

2              PETIT JUROR NUMBER 2:  No.

3              THE COURT:  Thank you.

4              Anyone else?  In the back?

5              PETIT JUROR NUMBER 45:  Carlos Muro, Juror 45.  My

6     last position at the courthouse was in probation and that had to

7     deal with a lot of rules and regulations and laws of the state

8     governing probation.

9              THE COURT:  Okay.  Anything about that service that

10    would prevent you from being fair and impartial in this case?

11             PETIT JUROR NUMBER 45:  Well I used to work with a lot

12    of the attorneys and the judges so.

13             THE COURT:  Would it prevent from you being fair and

14    impartial?

15             PETIT JUROR NUMBER 45:  Somewhat.

16             THE COURT:  Why would that?  Are those judges over

17    there not fair and impartial?

18             PETIT JUROR NUMBER 45:  Well, the interactions, you

19    get certain opinions about them, so...

20             THE COURT:  All right.  We'll speak to you about that.

21    Thank you.

22             Anyone else?

23             PETIT JUROR NUMBER 48:  Rocio Salas, Juror Number 48.

24    I have a bachelor's degree in criminal justice, law enforcement,

25    and I'm currently one the legal assistance for Mr. Ruben Ortiz.

1    I work in the office of Ruben Ortiz.

2            THE COURT:  Ruben tries a lot of criminal cases.

3    Anything about that experience that would prevent you from being

4    fair and impartial in this case?

5            PETIT JUROR NUMBER 48:  No.

6            THE COURT:  Could you be fair and impartial to the

7    government?  Because Ruben tries a few cases here in federal

8    court for this very offense, could you be fair and impartial to

9    the United States Attorney's Office?

10           PETIT JUROR NUMBER 48:  As my civil duty, yes.

11           THE COURT:  Is there anything in your heart that would

12   keep you from wanting to be fair and impartial?

13           PETIT JUROR NUMBER 48:  No.

14           THE COURT:  Okay.  Thank you, ma'am.

15           Have you, your spouse or any family member or close

16   friend ever been arrested, charged, convicted or otherwise

17   involved in a criminal matter either as a defendant, a witness,

18   a victim in any way?  Anything involving any criminal case in

19   any capacity?

20           Yes, ma'am?

21           PETIT JUROR NUMBER 26:  Before we were married, my

22   spouse was --

23           THE COURT:  And you are Juror Number?

24           PETIT JUROR NUMBER 26:  Oh, I'm sorry.  Juror Number

25   26.

1           THE COURT:  Ms. Montes?

2           PETIT JUROR NUMBER 26:  Yes.

3           Before we were married, my spouse was arrested for

4    assault with a deadly weapon and he did go through trial, but it

5    led to a mistrial.

6           THE COURT:  In that process, do you feel the police

7    were fair in how they treated him?

8           PETIT JUROR NUMBER 26:  Yes.

9           THE COURT:  Do you feel like the prosecution was fair

10   in the way they treated him?

11          PETIT JUROR NUMBER 26:  Yes.

12          THE COURT:  Do you feel like the trial that mistrial

13   that hung that they were fair in the way they treated him?

14          PETIT JUROR NUMBER 26:  Yes.

15          THE COURT:  Anything about that experience that would

16   prevent you from being fair and impartial in this case?

17          PETIT JUROR NUMBER 26:  No.

18          THE COURT:  All right.  Thank you.

19          PETIT JUROR NUMBER 8:  Oscar Rosales, Juror Number 8.

20   My son was arrested for possession of marijuana.

21          THE COURT:  Possession of what?

22          PETIT JUROR NUMBER 8:  Marijuana.

23          THE COURT:  Oh, okay.  Was he prosecuted?

24          PETIT JUROR NUMBER 8:  Yes.

25          THE COURT:  In that process, do you feel like the

1    police were fair in the way they treated him?

2              PETIT JUROR NUMBER 8:  Yes.

3              THE COURT:  Do you feel like the prosecution was fair

4    in the way they treated him.

5              PETITE JUROR NUMBER 8:  Yes.

6              THE COURT:  Did he have a jury trial?

7              PETIT JUROR NUMBER 8:  No.

8              THE COURT:  Anything about that experience that would

9    prevent you from being fair and impartial to both sides?

10             PETIT JUROR NUMBER 8:  No.

11             THE COURT:  Thank you, sir.

12             PETIT JUROR NUMBER UNKNOWN:  For this question, may I

13   approach the bench?

14             THE COURT:  Oh, yes, ma'am.  Let me just make a note

15   here.

16             Yes, ma'am.  We'll call you up.  Thank you.

17             Anyone else?  Have you your spouse or any family

18   member or close friend ever had any experience involving the

19   charges or charges similar to those charges which are the

20   subject of this trial?

21             Yes, ma'am?

22             PETIT JUROR NUMBER 7:  Your Honor, just in my present

23   employment, I previously offered presentence reports dealing

24   with I believe wire fraud and also -- I mean it escapes me now

25   that I have to answer this, but I have preauthorized financial

1    investigations and fraud.

2           THE COURT:  Yeah.  You are probably pretty familiar

3    with these kinds of cases.

4           PETIT JUROR NUMBER 7:  Not super familiar, thankfully,

5    but I have offered a few reports.

6           THE COURT:  Anything about your involvement as a

7    probation officer in preparing these sentencings report that

8    would prevent you from being fair and impartial in this case?

9           PETIT JUROR NUMBER 7:  No, Your Honor.

10          THE COURT:  Thank you.

11          PETIT JUROR NUMBER 1:  Your Honor, my name is Susan

12   Baca, Number 1.  Recently or in the last two years, money was

13   embezzled from my husband's business and it has now come to --

14   they're going to go to court in a couple of weeks.

15          THE COURT:  Okay.  Two things:  One, do you feel like

16   law enforcement who's investigating the case has treated your

17   husband fairly?

18          PETIT JUROR NUMBER 1:  Yes, I am.

19          THE COURT:  Do you feel the prosecutor's office is

20   treating him fairly?

21          PETIT JUROR NUMBER 1:  Yes.

22          THE COURT:  Is there anything about being the victim

23   of an offense like that that would prevent you from being fair

24   and impartial to this defendant or something similar?

25          PETIT JUROR NUMBER 1:  I'm not sure.  I don't know

1    what the outcome would come with my husband's hearing, but at

2    the same time you know you can't judge until you know you are

3    there.

4              THE COURT:  Well, this sentiment about having that

5    money embezzled, is that so strong that you feel like you're

6    going to hold it against this defendant?

7              PETIT JUROR NUMBER 1:  That's a hard question.  Mainly

8    because it was so much money that was embezzled from my

9    husband's business that it stays in the back of your mind and so

10   I don't know if I could be partial to that?

11             THE COURT:  Thank you.  Yes, ma'am.  Thank you very

12   much.

13             PETIT JUROR NUMBER 1:  Thank you.

14             THE COURT:  Anyone else?  Okay.

15             Here's the next question, Ms. Baca, but for anyone

16   else, have you, your spouse, any family member or close friends,

17   been the victim of a fraud or theft?  Not necessarily wire fraud

18   or anything like that, just general fraud or theft.  Any of you

19   been victimized by that?

20             Yes, sir, Juror Number six?

21             PETIT JUROR NUMBER 6:  Martin Duran, Juror Number 6, a

22   case of identity theft.

23             THE COURT:  I'm sorry?

24             PETIT JUROR NUMBER 6:  Identity theft.

25             THE COURT:  And did you lose some money as a result of

```
 1   that?

 2           PETIT JUROR NUMBER 6:  Not money.  I was about to,

 3   but...

 4           THE COURT:  Did it cause you problems trying to fix

 5   that issue?

 6           PETIT JUROR NUMBER 6:  Yes, to this day.

 7           THE COURT:  Was law enforcement assisting you in that?

 8           PETIT JUROR NUMBER 6:  They never assisted me.  They

 9   never followed up to this date.

10           THE COURT:  Do you have some sort of resentment

11   because law enforcement didn't do that?

12           PETIT JUROR NUMBER 6:  Yes, I do.

13           THE COURT:  Is that resentment so strong that it would

14   impact your ability to be fair and impartial to the government

15   in this case?

16           PETIT JUROR NUMBER 6:  Yes, it will.

17           THE COURT:  All right.  Thank you.

18           Anyone else a victim of a fraud or theft?

19           PETIT JUROR NUMBER 30:  Juror Number 30.  As a

20   business owner, we have been the victims of theft.  We own a

21   home building company, and so we've had homes that we own and

22   are under construction vandalized at least two or three times.

23           THE COURT:  Are those losses covered by insurance or

24   not?

25           PETIT JUROR NUMBER 30:  Some of them were, some of
```

 1   them weren't.

 2          THE COURT:  Did you involve law enforce in this

 3   process?

 4          PETIT JUROR NUMBER 30:  Yes we did.

 5          THE COURT:  Anything about that experience with --

 6   well, do you think they did a good job of investigating the

 7   case?

 8          PETIT JUROR NUMBER 30:  I don't believe they were

 9   thorough enough in terms of their follow-up, and so their

10   inability to do that did lead to another theft in another home

11   in the same subdivision a couple of weeks after a previous

12   incident.

13          THE COURT:  Do you have some resentment in your heart

14   towards law enforcement because of those failures?

15          PETIT JUROR NUMBER 30:  I do not.

16          THE COURT:  You do not?

17          PETIT JUROR NUMBER 30:  I -- I know they could have

18   done a better job.  I don't think it's something that would

19   prevent me from being impartial in a trial.

20          THE COURT:  Right.  And that's what I'm getting at.

21   So I heard you say "I don't think it would prevent," so I --

22   unfortunately, we need to know ahead of time whether it would or

23   wouldn't.

24          PETIT JUROR NUMBER 30:  It wouldn't.

25          THE COURT:  You could be fair and impartial to the

1    government in this case?

2              PETIT JUROR NUMBER 30:  Yes.

3              THE COURT:  Nothing about those losses in your

4    experience that would cause you to be unfair to the government?

5              PETITE JUROR NUMBER 30:  No.

6              THE COURT:  Now what about the defendant, because he's

7    accused of causing losses?  Is there something about the fact

8    that he's charged with this offense that would cause you some

9    resentment towards him?

10             PETIT JUROR NUMBER 30:  Possibly.

11             THE COURT:  So could you not tell me right now that it

12   would not affect your ability to be fair and impartial to the

13   defendant?

14             PETITE JUROR NUMBER 30:  I could not say that it

15   wouldn't.  I'm also a real estate broker and I'm aware that

16   money has to be handled a certain way, and I strongly believe

17   that one needs to follow the rules of the law in terms of how

18   other peoples' money is supposed to be handled and deposited and

19   so forth.

20             THE COURT:  Right.  And hopefully all people feel that

21   way, but the question I'm asking is just because he's charged

22   with this offense, does that cause you to hold some resentment

23   towards Mr. Delgado or prevent you from being fair and impartial

24   to his case?

25             PETIT JUROR NUMBER 30:  No, I would be open-minded in

1    listening to the evidence.

2            THE COURT:  You could be fair and impartial to him?

3            PETIT JUROR NUMBER 30:  Yes.

4            THE COURT:  The fact that he's charged with this would

5    not somehow add to your readiness to return a verdict of guilty

6    somehow?

7            PETIT JUROR NUMBER 30:  No.

8            THE COURT:  All right.  Thank you.

9            Anyone else?

10           Has any member of the panel served on a jury?  And I'm

11   talking about not like you are doing now, but actually in the

12   jury box where you are deciding the case.  Have you served on a

13   jury prior to today?  All right.  Got a few hands.

14           PETIT JUROR NUMBER 11:  Genaro Gonzalez, Juror Number

15   11.  Probably about say close to ten years, served on -- it was

16   civil several case a fender-bender.

17           THE COURT:  All right.  And were you able -- was that

18   in state or federal court?

19           PETIT JUROR NUMBER 11:  It was municipal, I believe.

20           THE COURT:  Did you each a verdict?

21           PETIT JUROR NUMBER 11:  Yes, we did.

22           THE COURT:  Thank you.

23           PETIT JUROR NUMBER 3:  Jaime Mendez, Juror Number 3.

24   I served in a civil and a criminal with the El Paso County.

25           THE COURT:  So both criminal and civil in --

 1              PETIT JUROR NUMBER 3:  Yes, two of them.

 2              THE COURT:  Did you reach verdicts in both of those?

 3              PETIT JUROR NUMBER 3:  Yes, sir.

 4              THE COURT:  All right.  Thank you.

 5              PETIT JUROR NUMBER 28:  Macario Gonzalez, Jr., Number

 6     28.  I served on a murder trial.

 7              THE COURT:  Okay.  It was a criminal case, I'm

 8     assuming.

 9              PETIT JUROR NUMBER 28:  Yes.

10              THE COURT:  State court?

11              PETIT JUROR NUMBER 28:  No.

12              THE COURT:  This courthouse or the other courthouse?

13              PETIT JUROR NUMBER 28:  The other courthouse.

14              THE COURT:  And verdict or no verdict?

15              PETIT JUROR NUMBER 28:  Verdict.

16              THE COURT:  And when you say the other courthouse or

17     the old courthouse?

18              PETIT JUROR NUMBER 28:  The one Across the street.

19              THE COURT:  Okay.  Thank you.

20              PETIT JUROR NUMBER 23:  Manuel Venegas, Juror Number

21     23, criminal, across the street.

22              THE COURT:  Verdict?

23              PETIT JUROR NUMBER 23:  Yes, sir.

24              THE COURT:  Thank you.

25              PETIT JUROR NUMBER 37:  Jose Garcia, Number 37, civil

1    and criminal.

2              THE COURT:  State or federal?

3              PETIT JUROR NUMBER 37:  I really don't remember.

4              THE COURT:  Okay.  And verdict or not?

5              PETIT JUROR NUMBER 37:  Verdict.

6              THE COURT:  Thank you.

7              PETIT JUROR NUMBER 36:  Claudia Cochran Miller, Juror

8    Number 36, and it was a civil case, municipal.

9              THE COURT:  Verdict?

10             PETIT JUROR NUMBER 36:  Yes.

11             THE COURT:  Thank you.

12             PETIT JUROR NUMBER 35:  Maria Velez, Juror Number 35,

13   and I served on a civil jury and the verdict was reached.

14             THE COURT:  There was a verdict?

15             PETITE JUROR NUMBER 35:  Yes.

16             THE COURT:  Do you remember if it was a state

17   courthouse or a federal courthouse?

18             PETIT JUROR NUMBER 35:  It was where you report at

19   Liberty Hall.

20             THE COURT:  Okay.  Thank you.

21             PETIT JUROR NUMBER 41:  Oscar Hernandez, Number 41,

22   and I served in both criminal and in civil courts.

23             THE COURT:  State or federal?

24             PETIT JUROR NUMBER 41:  Pardon me, sir?

25             THE COURT:  Was it the state courthouse?

1            PETIT JUROR NUMBER 41:  Yes, sir, state and the

2    county.

3            THE COURT:  And did you reach a verdict in both of

4    those?

5            PETIT JUROR NUMBER 41:  Yes.  Yes, sir.

6            THE COURT:  Thank you, sir.

7            PETIT JUROR NUMBER 44:  Rene Salas, Juror Number 44.

8    I served in a civil with the state.

9            THE COURT:  Verdict?

10           PETIT JUROR NUMBER 44:  Yes, sir.

11           THE COURT:  Thank you.

12           PETIT JUROR NUMBER 45:  Carlos Muro, 45, State of

13   California, armed robbery.

14           THE COURT:  Did you reach a verdict in this case?

15           PETIT JUROR NUMBER 45:  Yes.

16           THE COURT:  Thank you.

17           PETIT JUROR NUMBER 32:  Barnes, 32.  It was municipal

18   and there was a verdict.

19           THE COURT:  Was it civil or criminal?

20           PETIT JUROR NUMBER 32:  Civil.

21           THE COURT:  Thank you.

22           PETIT JUROR NUMBER 34:  Priscilla Campos, 34.

23   Criminal and civil.

24           THE COURT:  Verdict?

25           PETIT JUROR NUMBER 34:  Yes.

1             THE COURT:  Do you remember if it was the state or

2    federal courthouse?

3             PETIT JUROR NUMBER 34:  I don't remember.

4             THE COURT:  Thank you.

5             PETIT JUROR NUMBER 50:  Juror Number 50, Juan Aleman,

6    county courthouse, civil lawsuit.

7             THE COURT:  Verdict?

8             PETIT JUROR NUMBER 50:  Yes.

9             THE COURT:  Thank you.

10            PETIT JUROR NUMBER 12:  Amabilia Valenzuela, Juror

11   Number 12.  I served in federal court and we did reach a

12   verdict.

13            THE COURT:  Was it a civil or criminal?

14            PETIT JUROR NUMBER 12:  Criminal case.

15            THE COURT:  Thank you, ma'am.

16            Is there any member of the panel who is a member of

17   any religious group whose doctrine prohibits your service or

18   prohibits your jury service?

19            Does any member of the panel know any other member of

20   the panel?

21            THE COURT:  All right.  Let's begin in the front row.

22   We've got two right here.

23            PETIT JUROR NUMBER 11:  Leonardo Gonzalez, Jr., Juror

24   Number 11.  I actually know the gentleman right next to me.

25            THE COURT:  Mr. Juarez, Number 10.

1          PETITE JUROR NUMBER 11:  Yes, we actually --

2          THE COURT:  How do you know Mr. Juarez?

3          PETIT JUROR NUMBER 10:  I grew up with his son.  He

4    lives not too far away from where my parents live.

5          THE COURT:  In that long relationship where you've

6    known him, if you are both on this jury would you be able to

7    reach -- basically, would you be able to think for yourself and

8    not be concerned about what Mr. Juarez is thinking?

9          PETIT JUROR NUMBER 10:  Yes.  I would not let it

10   affect me.

11         THE COURT:  His being on the jury is not going to

12   impact your service as a juror in any way?

13         PETIT JUROR NUMBER 10:  No.

14         THE COURT:  You wouldn't be afraid to be at odds with

15   his opinion in the jury room and then go home afterwards and see

16   him back at your friend's house?

17         PETIT JUROR NUMBER 10:  We've known each other for a

18   long time and we respect each other a lot, so I don't think that

19   would.

20         THE COURT:  All right.  Thank you.

21         Mr. Juarez, how about you?

22         PETIT JUROR NUMBER 11:  Valentin Juarez, Number 10.

23   Well I've known him since he was a baby and then his parents are

24   neighbors and then he lives a couple, a few houses away from us.

25   And my son and him, they went to school all the way up to -- my

1    wife used to drive them.  So I got -- influenced a lot.  And

2    then another hobby I had together was cars, high performance

3    engines and all of this.  He has a lot of fancy cars.  So I

4    don't know, we might get influenced by being, you know, old,

5    since I knew him since he was not a baby, but two or

6    three years.

7         THE COURT:  All right.  He's telling me that him being

8    on the same jury wouldn't affect him, so now I'm going to ask

9    you the same question.  If you are both on the same jury, would

10   you be able to state your opinion if it was different from

11   Mr. Gonzalez' opinion?

12        PETIT JUROR NUMBER 10:  I don't think so, but the --

13   on the other hand, he's into technology and he shows more with

14   cars, and I don't know nothing about this high tech computer or

15   wire fraud.  I'm almost 70 years old in a few months.  I don't

16   know.  I don't even know how to use the direct controls on the

17   TV.  My wife sets it up for me.  When I graduated from high

18   school, the biggest thing was the transistor radio, so...

19        THE COURT:  I'm not far behind you, Mr. Juarez.  I'm

20   63, so I'm right there with you.  I know how that feels.  But

21   everything you need to know, the government will show you, and

22   if they don't, you do what you need to do.

23        Here's what I'm asking you.  The fact that you know

24   Mr. Gonzalez, is that going to influence you in your decision in

25   any way?  Because you know him so well, whatever he says, is

  1    that what you're going to believe, that's what you're going to

  2    think?

  3            PETIT JUROR NUMBER 10:  Yeah, because I mean I respect

  4    his opinions like in cars.  He knows more than I do.

  5            THE COURT:  We're not going to be talking about cars.

  6    We're going to be talking about this case.

  7            PETIT JUROR NUMBER 10:  Yeah.

  8            THE COURT:  Do you think that would influence you?

  9            PETIT JUROR NUMBER 10:  No.  I think too okay.

 10            THE COURT:  So it will not influence you?  Is that

 11    what you are telling me?

 12            PETIT JUROR NUMBER 10:  Yes.

 13            THE COURT:  Okay.  Thank you.

 14            PETIT JUROR NUMBER 27:  Paul Mora, Juror 27.  I know

 15    23.  We work together.

 16            THE COURT:  And that's Mr. Venegas?

 17            PETIT JUROR NUMBER 27:  Yes, sir.

 18            THE COURT:  And how long have you known him from work?

 19            PETIT JUROR NUMBER 27:  About 19 years.

 20            THE COURT:  Wow.  Are you all in any

 21    supervisory-subordinate kind of relationship.

 22            PETITE JUROR NUMBER 27:  Yes, sir.

 23            THE COURT:  How does that work?

 24            PETIT JUROR NUMBER 27:  He used to be a supervisor and

 25    I used to be a lead.

```
 1              THE COURT:  So he was your supervisor?

 2              PETIT JUROR NUMBER 27:  No, the department.

 3              THE COURT:  Right now is he your supervisor?

 4              PETIT JUROR NUMBER 27:  No, not anymore.

 5              THE COURT:  Are you his supervisor?

 6              PETIT JUROR NUMBER 27:  No, sir.

 7              THE COURT:  So he doesn't have any influence or

 8      impact?

 9              PETIT JUROR NUMBER 27:  No, sir, none.  Nothing.

10              THE COURT:  Anything about the 19 years of friendship

11      that would impact your ability to independently think about this

12      case?

13              PETIT JUROR NUMBER 27:  It would not impact me, sir.

14              THE COURT:  Okay.  And it would not influence your

15      verdict in any way?

16              PETIT JUROR NUMBER 27:  No, sir.

17              THE COURT:  Okay.  Thank you, sir.

18              Mr. Venegas, how about you?

19              PETIT JUROR NUMBER 23:  No, sir.

20              THE COURT:  You could think for yourself, wouldn't be

21      impacted by Mr. Mora being on the jury with you?

22              PETIT JUROR NUMBER 23:  Yes, sir, I could think for

23      myself.

24              THE COURT:  Okay.  So he's a big guy.  I mean there's

25      nothing about that that's going --
```

1              PETIT JUROR NUMBER 23:  He's like a teddy bear.  He's

2      fine.

3              THE COURT:  All right.  So you could think

4      independently?

5              PETIT JUROR NUMBER 23:  Yes, sir.

6              THE COURT:  Okay.  Thank you, sir.

7              Anyone else?

8              Well, I'm not very familiar with the evidence in this

9      case, but I suspect it will involve some evidence and testimony

10     regarding the nation of Mexico.  Is there any member of the

11     panel who has a negative opinion about Mexico and have negative

12     opinions about anything relating to Mexico?

13             Yes, sir?

14             PETIT JUROR NUMBER 37:  Jose Garcia, Juror 37.

15             THE COURT:  Yes, sir.

16             PETIT JUROR NUMBER 37:  Mexico does have a

17     representation being corrupt.  And I do have a brother-in-law

18     who was involved in politics presently who expresses some shady

19     things about government in Mexico.

20             THE COURT:  Okay.  I do know that this involves

21     contracts and the Mexican power company.  Do you think you can

22     put aside the knowledge that you have from speaking with your

23     brother-in-law and your opinion about Mexico to listen to the

24     facts without having some biased opinion about those facts?

25             PETIT JUROR NUMBER 37:  I believe I'm a good listener.

1    I will listen to the facts.

2             THE COURT:  Would you not allow your personal opinion

3    or that of your brother-in-law to influence you in making the

4    determination in this case?

5             PETIT JUROR NUMBER 37:  No.

6             THE COURT:  Here's what I'm concerned about, is that

7    you would go back to your personal knowledge about your

8    conversations with your brother-in-law informing an opinion

9    about the facts in this case.  That would not happen?

10            PETIT JUROR NUMBER 37:  No, I keep things separate.

11            THE COURT:  So you could be fair and impartial to both

12   sides?

13            PETIT JUROR NUMBER 37:  Yes.

14            THE COURT:  Okay.  Thank you.

15            Anyone else?  All right.

16            The crime alleged to have been committed by the

17   defendant allegedly occurred at least, in part, in places

18   outside the United States.  Is there anything about those facts

19   if they are proven to you that would affect your ability to be

20   fair and impartial in this case just because it involves actions

21   outside the United States?

22            Has anyone on the panel ever been authorized to act

23   for another person pursuant to a power of attorney?

24            Has anyone on the panel have an offshore --

25            Okay.  This is regarding the power of attorney

1    question?

2            PETIT JUROR NUMBER 35:  Maria Velez, Juror Number 35.

3    I have power of attorney for my mother who has dementia and so

4    you know I help her with Social Security or whatever decision

5    needs to be made for her.

6            THE COURT:  So in getting that power of attorney, did

7    you use an attorney to get -- to draft up the power of attorney?

8            PETIT JUROR NUMBER 35:  Yes.

9            THE COURT:  And what -- did you have an understanding

10   of how the power of attorney works and what authorities you

11   have?

12           PETIT JUROR NUMBER 35:  Right.  Yes, sir.

13           THE COURT:  Okay.  Thank you.

14           PETIT JUROR NUMBER 37:  Jose Garcia, Number 37.  I

15   have power of attorney of a child.  Her parents were deported.

16   The child stays with me during the week, gets her education

17   here.  Weekend, I take her to her parents.

18           THE COURT:  Did you use an attorney to get that power

19   of attorney?

20           PETIT JUROR NUMBER 37:  No.

21           THE COURT:  You just drew that up yourself or did the

22   school draw it up?

23           PETIT JUROR NUMBER 37:  A notary.

24           THE COURT:  Did they explain to you how that works?

25           PETIT JUROR NUMBER 37:  Yes.

1              THE COURT:  Thank you.

2              PETIT JUROR NUMBER 32:  Sharon Karns, 32.  I have

3    power of attorney over my mother and I've had temporary power of

4    attorney for my son when I was in another -- when he was in

5    Japan to close a deal for a real estate action.

6              THE COURT:  And was this power of attorney drawn up

7    for you by an attorney?

8              PETIT JUROR NUMBER 32:  Yes, it was.

9              THE COURT:  Did you have a conversation with him about

10   what that document did and what powers you had?

11             PETIT JUROR NUMBER 32:  With the lawyer?  Yes.

12             THE COURT:  Okay.  Thank you.

13             Anyone else?

14             Anyone on the panel have an offshore bank account?

15             Any business connection with F.G.G. Enterprises?

16             Has anyone on the panel had a direct business

17   connection with any Mexican governmental agency?

18             PETIT JUROR NUMBER 15:  Elisa Sklar, Juror Number 15.

19   I work for the International Boundary and Water Commission, U.S.

20   Section, at the Department of State Agency, and we are one half

21   of the agency.  The other half is the Mexican section.

22             THE COURT:  Right.  And so you all deal pretty closely

23   with the water issues and how much water we send down the river

24   to them.

25             PETIT JUROR NUMBER 15:  Exactly.

1            THE COURT:  Anything about your relationship in

2    working for the International Boundary and Water Commission that

3    would prevent from you being fair and impartial in this case?

4            PETIT JUROR NUMBER 15:  No, Your Honor.

5            THE COURT:  Have you learned anything in your role

6    there about how the Mexican government does business in anything

7    other than the water issues?

8            PETIT JUROR NUMBER 15:  No.  We have not -- we have

9    power production plants in U.S. and Mexico, so I don't know.

10           And I've worked in engineering, so I don't know if --

11           THE COURT:  These are hydro electric plants?

12           PETIT JUROR NUMBER 15:  Hydro electro dams.

13           THE COURT:  And in any of those relationships, do you

14   deal with the C.F.E.?

15           PETIT JUROR NUMBER 15:  No.

16           THE COURT:  Can you be fair and impartial to both

17   sides?

18           PETIT JUROR NUMBER 15:  Yes, sir.

19           THE COURT:  All right.  Thank you.

20           Has anyone on the panel had any significant training,

21   education or experience in accounting, economics or finances

22   finance?

23           PETIT JUROR NUMBER 11:  Juror Number 11, Leonardo

24   Gonzalez.  I currently have bachelor's degree from UTEP

25   management and obviously in marketing as well, where we took

1    accounting, finances and other courses like that.

2                THE COURT:  All right.  Thank you.

3                PETIT JUROR NUMBER 5:  Daniel Munoz, Juror Number 5.

4    I have a bachelor degree from UTEP with a major in finance.

5                THE COURT:  All right.  Thank you, sir.

6                Where do you work now?

7                PETIT JUROR NUMBER 5:  I'm employed by Interstate

8    Capital Corporation.

9                THE COURT:  Okay.  And you deal with wire transfers

10   and things like that?  Do you have knowledge about those sorts

11   of things?

12               PETIT JUROR NUMBER 5:  Every day.

13               THE COURT:  Are you pretty experienced about how that

14   works?

15               PETIT JUROR NUMBER 5:  Yes, sir.

16               THE COURT:  Thank you.

17               PETIT JUROR NUMBER 30:  Juror Number 30.  I do have an

18   MBA and I currently handle all of the financial and accounting

19   functions for a business which my husband and I co-own.

20               THE COURT:  And that's a home building business?

21               PETIT JUROR NUMBER 30:  Correct.

22               THE COURT:  Thank you, ma'am.

23               Do you deal in wire transfers?

24               PETIT JUROR NUMBER 30:  Yes, we do.

25               THE COURT:  How often do you?

1          PETIT JUROR NUMBER 30:  Often.  I also handle sales

2    contracts for home purchases with our buyers and oftentimes they

3    do wire funds to us.  For instance, they were in the process of

4    transferring to El Paso and we're working on the contract from

5    other states, other cities.

6          THE COURT:  How about other nations?

7          PETIT JUROR NUMBER 30:  I can't recall of an instance

8    where they've wired funds -- oh, in fact, there was one this

9    year where money was wired to us from Europe.

10          PETIT JUROR NUMBER 46:  Juror 46.  I have a bachelor's

11    degree in management.  I have education on management, finance

12    and economics.

13          THE COURT:  What do you do for a living?

14          PETIT JUROR NUMBER 46:  I'm a registered nurse.

15          THE COURT:  So you don't deal regularly in finance?

16          PETIT JUROR NUMBER 46:  I was trying to attempt to get

17    to a bachelor in management and then masters, but due to my

18    parents' sickness and need for me to transport them to

19    appointments, et cetera, so actually my RN got more.  I'm a

20    registered nurse.

21          THE COURT:  So you don't deal regularly in wire

22    transfers and things like that?

23          PETIT JUROR NUMBER 46:  No, sir.

24          THE COURT:  That's not something you do?  Okay.  Thank

25    you.

1                    PETIT JUROR NUMBER 46:  Thank you.

2                    PETIT JUROR NUMBER 47:  Roxana Lara.  I'm in charge of

3      accounting department for town of (indiscernible).

4                    THE COURT:  Okay.  Do you deal in wire transfers

5      there?

6                    PETIT JUROR NUMBER 47:  Every day.

7                    THE COURT:  How about wire transfers from Mexico?

8                    PETIT JUROR NUMBER 47:  Yes, sir.

9                    THE COURT:  Or other companies?

10                   PETIT JUROR NUMBER 47:  Once in a while, yes.

11                   THE COURT:  Thank you, ma'am.

12                   PETIT JUROR NUMBER 47:  You're welcome.

13                   PETIT JUROR NUMBER 48:  Juror Number 48, Rocio Salas.

14     I used to work for a title company, real estate title company,

15     and worked in their accounting department, so I would do bank

16     deposits, bank reconciliations and incoming-outgoing and money

17     wires.

18                   THE COURT:  So you dealt in wire transfers?

19                   PETIT JUROR NUMBER 40:  Yes, sir.

20                   THE COURT:  From other nations?

21                   PETIT JUROR NUMBER 40:  No.

22                   THE COURT:  Thank you.

23                   PETIT JUROR NUMBER 40:  Jose Arrieta, Number 40.  I

24     work for Automatic Data Processing, deal with --

25                   THE COURT:  I think the mic just went out.  Can we get

```
 1    him the other mic?
 2              PETITE JUROR NUMBER 40:  -- capital management
 3    accounts and we do handle wiring all across the world.
 4              THE COURT:  How often do you deal with those?
 5              PETIT JUROR NUMBER 40:  Every day.
 6              THE COURT:  Thank you, sir.
 7              Anyone else?
 8              Has anyone on the panel had any significant training,
 9    education or experience in energy development or contract
10    negotiations?  And those of you that have already told us about
11    your contracting, we don't need to hear that again, but how
12    about energy development, anybody that has experience in that
13    energy?
14              Have you, your spouse, any family member or close
15    friend been involved in a contract dispute?
16              Have you, your spouse or any family member or close
17    friend been involved in a civil legal dispute in Mexico?
18              Have you, your spouse, any family member or close
19    friend ever entered into a business contract in Mexico?
20              Have you, your spouse, any family member or close
21    friend ever been a member of a Mexican labor union?
22              Have you, your spouse, any family member or close
23    friend ever been employed by the Commisión Federal de
24    Electricidad de Mexico, the C.F.E.?
25              Is there any member of the panel who would not be able
```

1    to render a verdict solely upon the evidence presented at trial

2    and in the context of the law as I will give you in my

3    instructions?

4         Yes, sir?

5         PETIT JUROR NUMBER 37:  Jose Garcia, Number 37.  Sir,

6    I presently have a problem with the way the IRS was handled in

7    our government with people pleading the Fifth and people around

8    the candidate, Hillary Clinton, pleading the Fifth.  You

9    mentioned that a person is not guilty because he doesn't witness

10   or doesn't testify.

11        THE COURT:  Whether or not he's guilty or not is

12   something the jury decides.  No adverse inference can be taken

13   from the fact that he doesn't testify.  The people that don't

14   testify can be found guilty.

15        PETIT JUROR NUMBER 37:  I mention presently, because

16   of the cases going on watching TV.  All of these people that

17   plead the Fifth, in my mind, because I listen a lot to Fox News,

18   them just being silent and pleading the Fifth and knowing what

19   is reported, I have a problem with that, with people remaining

20   silent.

21        THE COURT:  So if this defendant were to choose to

22   remain silent, you would take that adversely and because you

23   have a problem with that, would you hold it against him for not

24   testifying?

25        PETIT JUROR NUMBER 37:  I might.  After hearing the

```
 1    evidence and the accused being silent, if the evidence weighed

 2    heavily against the defendant, I might be influenced by

 3    everything that's going on right now in politics.

 4            THE COURT:  All right.  Thank you.  You are Juror

 5    Number 37, Mr. Garcia?

 6            PETIT JUROR NUMBER 37:  Number 37.

 7            THE COURT:  Thank you, sir.

 8            If are you selected to serve and in reaching your

 9    verdict, will you be able to follow the law as given to you by

10    the Court, disregarding any other ideas or notions or beliefs

11    that you may have about the law that you've encountered during

12    your life?  In other words, you will accept the law as I give it

13    to you and put aside your own personal ideas of what you think

14    the law is or what you think the law should be, anyone who would

15    could not accept my instruction of the law as the law of this

16    case?

17            Is there any member of the panel who could not

18    consider the facts of the case impartially?

19            Is there any member of the panel who could not render

20    a verdict according the evidence?

21            Is there any member of the panel who has any special

22    physical need that would make serving as a member of the jury

23    difficult, something that they may have to accommodate, anyone?

24            PETIT JUROR NUMBER UNKNOWN:  The reason I requested

25    earlier to speak to you.
```

KATHLEEN A. SUPNET, CSR

1          THE COURT:  We'll speak to you at the bench.

2          PETIT JUROR NUMBER UNKNOWN:  Thank you.

3          THE COURT:  Anyone else?

4          Having heard the questions put to you by the Court

5    during this voir dire, does any other reason suggest itself to

6    you as to why you could not sit on this jury and render a fair

7    verdict based upon the evidence and the law?  Any other reason

8    that you can think of that I have not asked you that would keep

9    you from being fair in this case?

10          All right.  That concludes my address to you.

11   Following will be the attorneys.  They will each have ten

12   minutes to address you.  We've been here over an hour and a

13   half, so is there anyone who needs a bathroom break?  Yes?

14   Okay.  Here's what we're going to do.

15          Please remember where are you seated, one.  Two,

16   remember who your neighbor is, because when we come back I'm

17   just going to ask you if anyone is missing their neighbor, that

18   way we don't have to call role for all 50 people.  You are going

19   to be your brother's keeper, because we cannot restart our

20   proceeding until all 50 of you are back.

21          So we're going to take a recess for 15 minutes.  It's

22   10:45 now .  Hold on.  We're going to take a recess till 11:00.

23   At 11 o'clock, please be back in your seat.  And it's important

24   you get be back in 15 minutes.  15 minutes go by real quick.

25   There's bathrooms on every floor.  You are not restricted to the

1    bathrooms on this floor.  But you have to come back.  If not, I

2    have to send the marshal to go get you and we can't start till

3    you all are here.  Please don't keep your fellow jurors waiting.

4               THE COURT SECURITY OFFICER:  All rise.

5               (Break at 10:48 a.m. to 11:02 a.m.)

6               THE COURT:  Let the record reflect the jury panel is

7    not present.

8               Ms. Franco, you had something wanted to address?

9               MS. FRANCO:  Yes, Your Honor.

10              Your Honor, I believe Juror Number 37, Jose Raul

11   Garcia, Jr., based upon his comments that he made regarding the

12   defendant's right not to testify against themselves and basing

13   it on current political climate, made to the possibility that

14   the entire panel has been polluted by his opinion with regard to

15   that.  It was towards the end of your voir dire where you had

16   already discussed the right to be presumed innocent, the right

17   to remain silent, that the fact that you don't testify couldn't

18   be used against you, and so I'm concerned to the point that I'm

19   making this for the record that he could've and possibly has

20   polluted this panel.

21              And so, Your Honor, I'd ask that you take that into

22   consideration and perhaps we select a completely new panel to

23   voir dire.

24              Second, Your Honor, the -- there were a lot of excuses

25   for people.  I think the three-week potential trial might have

1  put a lot of people off, and I think as we got more and more

2  excuses from people not coming, understandably it was -- I have

3  to take my dog to the vet by the time we got done, because you

4  very probably reminded that it is a civil duty, it may have shut

5  them down a little bit.  The Court was perhaps concerned about

6  that as well.  So I think based upon the combination of these

7  two things, I'm concerned about us proceeding with this panel.

8         THE COURT:  And I'll allow to you cover that on your

9  voir dire of the panel.

10        MS. FRANCO:  Thank you.

11        THE COURT:  But otherwise I'm denying your motion.

12        MS. KANOF:  Your Honor, do you want me to address them

13  from here?

14        THE COURT:  It doesn't matter.

15        (Petit Venire present.)

16        THE COURT:  Be seated please.

17        Ladies and gentlemen of the jury panel, are any of you

18  missing your neighbor?  Anyone who was here before the break who

19  is not here now?

20        All right.  No one?  All right.

21        Ms. Kanof?

22        MS. KANOF:  Thank you, Your Honor.

23               VOIR DIRE BY THE GOVERNMENT

24        MS. KANOF:  I'm going to be very, very brief.  There's

25  another company that you may hear about the testimony in this

1    case.  It's called Mitsubishi Power Systems America.  Mitsubishi

2    Power Systems America is a company located in Lake Saint Mary,

3    Florida, very close to Disney World, the happiest place in the

4    United States.  It's power system is a sub-company of

5    Mitsubishi, Mitsubishi Heavy Industries.  They are all related

6    to the car manufacturer, Mitsubishi car manufacture.  All I want

7    to know if there is anybody that they could not be fair in

8    listening to testimony that was related to Mitsubishi Power

9    Systems America?

10           That's all I have, Your Honor.

11           THE COURT:  Thank you, Ms. Kanof.

12           Ms. Franco?

13                     VOIR DIRE DEFENSE

14           MS. FRANCO:  Thank you, Your Honor.  I just had a

15   couple of questions as well.

16           Juror Number 37, I appreciate you with your honesty

17   that you showed and talked about and how if one didn't testify

18   that possibly you would hold that against them.

19           I know the Judge had gone over that instruction

20   before, but now that you've had a little time to think about it,

21   is there anyone else who has that same feeling that you would

22   hold it against a person who is accused of a crime if they

23   didn't testify?  Anyone else who has that concern, point of

24   view?  Anyone?

25           Juror Number 2, Ms. Baca and Ms. Salas, both of you

1    work for attorneys.  Mr. Delgado is an attorney.  Is there

2    anything about the fact that you work for attorneys that you

3    would either hold that against him or give him the benefit of

4    the doubt that you wouldn't normally give because of the fact

5    that you work for attorneys?

6              Juror Number 2?

7              PETITE JUROR NUMBER 2:  No.

8              MS. FRANCO:  Yes?

9              PETITE JUROR NUMBER 2:  Yes.

10             THE COURT:  So you could be?

11             MS. FRANCO:  So you could be fair to both sides the

12   fact that you work or an attorney?

13             PETIT JUROR NUMBER 2:  Yes, absolutely.

14             THE COURT:  And how about Ms. Salas?

15             PETIT JUROR NUMBER 48:  Yes.

16             MS. FRANCO:  That's Juror Number 48.

17             Thank you very much.

18             The Judge spoke to you about whether or not any of you

19   had offshore bank accounts and there as a negative response.  Is

20   there anyone on the panel that believes that if someone were to

21   have an offshore account that would be some sort of proof being

22   guilty of a crime?  Anyone on the first row, we'll feel that

23   way?

24             MS. FRANCO:  Yes, sir.  Number 14?

25             PETIT JUROR NUMBER 14:  I actually do.

```
 1            MS. FRANCO:  Your Honor, can we speak to 14 at the

 2   bench?

 3            Anyone else feel the same as Juror 14?  I appreciate

 4   that.  Anyone else?

 5            That's all we have, Your Honor.  Thank you.

 6            THE COURT:  All right.

 7            There was some concern that perhaps I may have chilled

 8   those of you that have a reason why you can't be us with the

 9   three weeks because I mentioned to you that jury service is a

10   duty, it's a jury duty, and so I know there were some people

11   where there were reasons why they can't be, which I told you I'd

12   take it up with the attorneys.  Many of those are not reasons

13   that would grant you an excuse, but simply we might be able to

14   accommodate you or might not.

15            Is there anyone else who didn't get a chance to tell

16   me why they couldn't be here that wants to share with me a

17   reason why they cannot be?

18            Yes, ma'am?

19            PETIT JUROR NUMBER 26:  Juror Number 26, Melissa

20   Montes.  May I approach the bench?

21            THE COURT:  Yes, ma'am.

22            Anyone else?  Yes, ma'am.

23            PETIT JUROR NUMBER 13:  Juror Number 13.  The reason I

24   can't be here is because my English not too good.  I don't

25   understand a lot of things.  Okay.
```

```
 1              THE COURT:  All right.  We'll speak to you about that.
 2     Thank you.
 3              Anyone else?  All right.
 4              Ladies and gentlemen, if you would just give us a few
 5     minutes I'm going to meet with counsel and we'll decide who
 6     we're going to need to speak to at the bench, and we'll excuse
 7     the rest of you for about 30 or 40 minutes.
 8              (Bench conference.)
 9              THE COURT:  All right.  Juror 1 said she couldn't be
10     fair.  There's a lot of money taken from --
11              MS. FRANCO:  I move stricken for cause.
12              MR. GONZALEZ:  We'll agree.
13              THE COURT:  Okay.  Juror Number 2 I think is okay.  2
14     is okay.
15              4 wants to speak to us at the bench.  We need to call
16     her up.
17              5 wants to speak to us at the bench.  We'll call him
18     up.
19              Number 6, fair to the government because he was a
20     victim of ID theft and feels like he was treated poorly.
21              MR. GONZALEZ:  Struck for cause.
22              MS. FRANCO:  No objection.
23              THE COURT:  6 by agreement.
24              7 is okay.  8 is okay.  If you have something that I
25     missed, please bring it to my attention.
```

VOIR DIRE                                                                    76

```
 1              9 has an issue with the children.  She needs to pick
 2    up by 4:00.
 3              MS. FRANCO:  Your Honor, I move that we strike her.
 4              MR. GONZALEZ:  Which one?
 5              MS. FRANCO:  And she was a teacher.
 6              THE COURT:  She says she has to pick up her teacher?
 7    I don't know --
 8              MS. FRANCO:  No, he's a teacher as well.
 9              THE COURT:  In Socorro.  That's right.  She said her
10    in-laws pick them up, but can't always pick them up.  Yeah.
11              MS. KANOF:  It's okay.
12              THE COURT:  You --
13              MS. KANOF:  It's okay.
14              THE COURT:  Ms. Franco?
15              MS. FRANCO:  Yes, Your Honor.
16              THE COURT:  If you disagree, let us know.
17              Number 10, his only influence will be influenced by
18    Number 11.
19              MS. FRANCO:  I challenge him for cause.
20              MR. GONZALEZ:  No objections.
21              UNKNOWN SPEAKER:  We'll challenge 11 for cause.
22              THE COURT:  What was his?
23              MS. KANOF:  Victim.
24              THE COURT:  Right.  Okay.
25              Ms. Franco?
```

```
 1              MS. FRANCO:  No, objection.

 2              THE COURT:  Number 11 is gone.

 3              Number 12 wants to speak to us at the bench.

 4              Speak to 13 with her English.  14 wants to speak to us

 5      at the bench.  15, 16, 17, similar, 18, okay.  19 seems okay.

 6              UNKNOWN SPEAKER:  19, Your Honor, I'm concerned

 7      because her husband is Martin Chavez and she's the wife and she

 8      was very concerned about some kind of backlash that he could get

 9      if there was not a guilty verdict.

10              THE COURT:  That is because he writes the report.

11              MS. FRANCO:  Right, she brought it up twice.

12              THE COURT:  We can talk to her.

13              MS. FRANCO:  Okay.

14              THE COURT:  20 is going to be out of town Friday to

15      Sunday, this Friday.

16              MS. FRANCO:  And she said day care.

17              MS. KANOF:  That's the over-the-road truck driver.

18              THE COURT:  Any objection?

19              MS. ARREOLA:  No.

20              MS. FRANCO:  Agree.

21              THE COURT:  All right.  21, 22 okay.  23.  I think 23

22      is okay.  24.  Oh, she's got airline tickets to leave on the

23      30th.

24              MS. KANOF:  September 30th we'll be done.

25              THE COURT:  Okay.  So she's okay.  25 okay.  26.
```

1              MS. FRANCO:  Wants to talk to you.

2              THE COURT:  Yes.  27.  Bench.

3              MS. FRANCO:  Yes.

4              THE COURT:  28 bench.  Also.  I have family, law.

5              MS. FRANCO:  They thought that having family in law

6    enforcement would affect him.

7              MR. GONZALEZ:  That person said they couldn't be fair

8    and impartial.

9              THE COURT:  Do you agree with the state?

10             MS. FRANCO:  Let's get rid of him.

11             THE COURT:  28?

12             MS. FRANCO:  I move for cause.

13             THE COURT:  Ms. Franco agrees.  Do you agree.

14             MR. GONZALEZ:  Yes.

15             THE COURT:  Okay.  Anybody want to speak to us at the

16   bench might be unfair to the defendant.

17             MS. FRANCO:  And 30, Your Honor, also.  I thought you

18   said 31.  Yes, I move for cause.

19             THE COURT:  Do you want to agree to him?

20             MS. KANOF:  Which one?

21             THE COURT:  It's a her.  Ms. -- she said she might be

22   unfair to the defendant.  "Might" is a scary word when you are a

23   defendant.

24             MS. FRANCO:  Right.

25             MS. KANOF:  She's --

```
 1              MS. FRANCO:  She couldn't be fair because of

 2    embezzlement theft.

 3              MS. KANOF:  She said they were victims of theft and

 4    vandalism from homes that they built, but I didn't hear her say

 5    anything.

 6              THE COURT:  She said she might be unfair because he's

 7    charged with taking money and she feels like they've lost.

 8              MS. FRANCO:  I move to strike her for cause.

 9              THE COURT:  32 could affect -- I'm not sure what.

10    She's a daughter with a premature baby.  Husband was part, got

11    caught with a savings and loan.

12              MS. KANOF:  I have a concern about that because I

13    handled every savings and loan case.

14              THE COURT:  Did you?

15              MS. KANOF:  Uh-huh.

16              THE COURT:  She said she couldn't be fair.

17              MR. GONZALEZ:  Yeah, she said she couldn't be fair.

18    That's what my concern was.

19              MS. FRANCO:  All right.

20              THE COURT:  Do you agree?

21              MS. FRANCO:  Yes.

22              THE COURT:  32 wants to speak to us at the bench.

23    Father works.

24              MS. FRANCO:  Delgado.  That's Richard Delgado's

25    daughter and her uncle is Charley Garcia.
```

```
 1              THE COURT:  Is that a problem?

 2              MS. FRANCO:  Not for me.

 3              MS. KANOF:  I prosecuted him.

 4              THE COURT:  Charley Garcia?

 5              Who is that?

 6              MS. KANOF:  Socorro Independent School District.  He

 7    went through the Sendaria program.

 8              THE COURT:  Do you all agree to her or speak to her?

 9              MS. KANOF:  Strike for cause.  I took his guilty plea.

10              MS. FRANCO:  She said she could be fair.

11              THE COURT:  We'll talk to her.  She wants to talk to

12    you anyway.

13              Two cousins, Border Patrol.  Yeah, 34 I think is okay.

14    35 looks okay.  36 is a college professor who has no substitute

15    and UTEP college professor.  36 she said that they couldn't find

16    anybody to cover her classes today and no one can cover her

17    classes.

18              MR. GONZALEZ:  That's not a basis, but we'll agree.

19              THE COURT:  We're going to run out of jurors here in a

20    minute.

21              MS. KANOF:  I think that the college has an

22    obligation.

23              THE COURT:  That's not really our problem.

24              MS. FRANCO:  I think we should strike her.

25              THE COURT:  We're going to run out of jurors.
```

1          MS. FRANCO:  I have said, yes, strike her.

2          THE COURT:  Do you agree?

3          MS. KANOF:  You said strike her.

4          MR. GONZALEZ:  Do you want to agree?

5          MS. KANOF:  I agree with the Judge that we're going to

6    run out of the jurors.  I don't agree.  I will tell you if she's

7    in a community college, I don't know if she was community or

8    UTEP, if it's a community college they to have to find

9    substitutes.

10          MR. HANSHEW:  It is.

11          MS. KANOF:  Then I will agree to strike her.  I know

12   they have to find their own substitutes.

13          THE COURT:  36, 37.

14          MS. KANOF:  Yes.

15          MS. FRANCO:  I really want him, Judge.  Don't do that

16   to me.

17          THE COURT:  39 says she has a son in preschool.  I

18   don't remember if that was an issue she -- the Army?

19          MR. HANSHEW:  Drop off.

20          THE COURT:  How does she do Reserves?

21          MS. FRANCO:  She was in the reserves.  She's a

22   homemaker now.

23          THE COURT:  Are you sure?

24          MR. HANSHEW:  She said that she was.

25          MR. GONZALEZ:  We should talk to her.

1          THE COURT:  40 is okay.  41.  Oh, he's a vet, has

2    appointment.

3          How about 41?

4          MS. KANOF:  That's had a hard one.

5          THE COURT:  Maybe we can find out when his

6    appointments are.  We might have to accommodate him.

7          42 is okay.  I think that's my friend John's wife.

8          MS. KANOF:  Unless you know something about him.

9          THE COURT:  No.  We were just kids.

10          MR. HANSHEW:  I should have mentioned my son goes to

11    Cathedral then.  I have the inside.  We'll figure out a way.

12          THE COURT:  Probably not, probably not.  Save.  45.

13    45.  What about 45?  He's the guy that's been trying hard not to

14    be on the jury.

15          MR. HANSHEW:  He has lots of courts.

16          THE COURT:  And that he would be partial.

17          MS. KANOF:  You agree to strike?

18          MS. FRANCO:  Yes, Your Honor.

19          THE COURT:  46.  Okay.

20          47, her daughter is pregnant.

21          MS. FRANCO:  And she didn't have someone to take care

22    of the two year old.

23          THE COURT:  I mean that's her daughter's issue not the

24    grandmother's.

25          48.

1           MS. FRANCO:  She wants to talk to you.

2           THE COURT:  49 full time student.  I think she's

3    entitled to.

4           MS. KANOF:  I think she's entitled to an exemption.

5           THE COURT:  Move to strike her?

6           Then 50.  50 is okay.

7           Okay.  So here's who we're going to talk to and if you

8    need somebody else we're going to talk about it now.

9           4, 5, 13, 14, 19, 26, 27, 33, 35, 39, 41, 47 and 48.

10   Do you have anybody else?

11          MS. FRANCO:  34.  7.  She didn't think she could be

12   fair and impartial.

13          THE COURT:  Who did?

14          MS. FRANCO:  34.

15          THE COURT:  She said that?  She said she had two

16   workers, had a -- with a Border Patrol and had a civil and

17   criminal history -- criminal --

18          MS. FRANCO:  That's what I wrote.  Didn't think so.

19          MR. HANSHEW:  Couldn't be fair and impartial.

20          UNKNOWN SPEAKER:  She said she didn't think so.

21          THE COURT:  I didn't get that.  We'll talk to her as

22   well.  Anybody else?  Okay.  All right.  So...

23          That's about 42 minutes.  Figure about 45 minutes to

24   talk to them, 30 minutes for strikes, that's an hour and 15.  We

25   may run short on jurors.

```
 1              MS. KANOF:  We need 30 jurors.

 2              THE COURT:  We need 26.  I mean, we need 28.  12 and

 3    10.

 4              MS. KANOF:  Alternates?

 5              THE COURT:  If we have enough.

 6              MS. KANOF:  Make sure nobody gets pneumonia.

 7              THE COURT:  If we'll run out, we'll call another panel

 8    tomorrow and have these to go, so we'll have plenty.

 9              (Bench concludes.)

10              THE COURT:  Ladies and gentlemen, we need to speak to

11    14 of you.  So my guess is that's going to take us about

12    45 minutes to speak to you individually at the bench, and then

13    30 minutes after that for quiet time fir strikes.  It's an hour

14    and 15 minutes so that's going to put us at about 12:40.  So I'm

15    going to call the names of those individuals that we need to

16    speak to.  If I call your name, please remain seated in the

17    courtroom.  The rest of you will be excused till 1240.  At

18    12:40, please be outside in the foyer and I'm hoping that we'll

19    be able to start then or shortly thereafter.

20              All right.  Here are the individuals that we need to

21    speak to.

22              Juror Number 4, Number 5.  Juror Number 7, Juror

23    Number 12, Juror Number 13, Juror Number 14, Juror Number 19,

24    Juror 26, Juror 27, Juror 33, Juror 34, Juror 39, Juror 41,

25    Juror 47, Juror 48.
```

```
 1              Those of you whose numbers I called, please wait
 2     outside.  The rest of you please be back at 12:40.
 3              COURT SECURITY OFFICER:  All rise.
 4                        INDIVIDUAL VOIR DIRE
 5              THE COURT:  So this is how we're going to proceed,
 6     those of you remaining in the courtroom.
 7              COURT SECURITY OFFICER:  There's also 28 who wants to
 8     speak to you.
 9              THE COURT:  Tell Juror Number 28 that we've resolved
10     those issues.  We won't be needing to speak to him.
11              COURT SECURITY OFFICER:  Yes, sir.  Thank you.
12              THE COURT:  I'm going to ask you to exit the courtroom
13     and remain outside the courtroom.
14              Mr. Heidtman, do we have room in the attorney's rooms
15     to accommodate 14 jurors or not?  Are there chairs outside?
16              COURT SECURITY OFFICER:  Yes, they're outside.  We can
17     make room for them.
18              THE COURT:  This might take a while.
19              So I'm going to ask you to exit the courtroom out to
20     the foyer and then we're going to call you in one by one by the
21     foyer, which there's only one juror in the courtroom at that
22     time.  So let's go ahead and do that.
23              Ms. Dibler, if you come on up we'll start with you.
24     The rest of you, follow my court security officer outside.
25              (Individual Jurors exit.)
```

1          THE COURT:  All right, Ms. Dibler.

2          PETIT JUROR NUMBER 4:  Mary Dibler.  And this has

3    nothing to do with the case, but I've never been picked for a

4    jury.  My husband's late wife and daughter were murdered in

5    their house and they've never picked me for -- I just want you

6    to be aware of that.

7          THE COURT:  Is there anything about that experience in

8    talking with your husband that would prevent you from this kind

9    of case?

10          PETIT JUROR NUMBER 4:  No, sir.

11          THE COURT:  Did you have any questions Ms. Franco?

12          MS. FRANCO:  No, Your Honor.

13          THE COURT:  Ms. Kanof?

14          MS. KANOF:  No, Your Honor.

15          THE COURT:  All right.  Thank you, ma'am.  If you

16    would be out in the foyer at 12:40, please.

17          (Individual Juror 4 exits.)

18          THE COURT:  All right.  Juror Number 5, Daniel Munoz

19    please.

20          (Individual Juror 5 present.)

21          THE COURT:  Are you Daniel Munoz, Juror Number 5?

22          PETITE JUROR NUMBER 5:  Yes, sir.

23          THE COURT:  You wanted to speak to us at the bench I

24    think.

25          PETIT JUROR NUMBER 5:  No, sir.  I did not indicate

1    that.

2              THE COURT:  Okay.  Any reason why you can't be fair

3    and impartial in this case?

4              PETIT JUROR NUMBER 5:  None.

5              THE COURT:  Mr. Hanshew?

6              MS. FRANCO:  No, Your Honor.

7              THE COURT:  Ms. Kanof?

8              MS. KANOF:  No, Your Honor.

9              THE COURT:  Thank you, sir.  If you'd be out in the

10   foyer at 12:40.

11             PETIT JUROR NUMBER 5:  Thank you.

12             (Individual Juror 5 exits.)

13             THE COURT:  Are you Melissa Corella, Juror Number 7.

14             PETIT JUROR NUMBER 7:  Yes, sir.

15             THE COURT:  All right.  Did you have some questions?

16             MS. FRANCO:  Ms. Corella, am I saying it correct?

17             You're a probation officer and you write PSRs in New

18   Mexico.

19             PETIT JUROR NUMBER 7:  Yes.

20             MS. FRANCO:  And you indicated that you have worked on

21   wire fraud, mail fraud cases before?

22             PETIT JUROR NUMBER 7:  Correct.

23             MS. FRANCO:  And in preparing those reports, do you,

24   in order to put the paragraphs into the presentence report for

25   the Judge and parties, do you use the information as provided to

1    you from the government?

2            PETIT JUROR NUMBER 7:  Correct.

3            MS. FRANCO:  And from the case agent?

4            PETIT JUROR NUMBER 7:  Correct.

5            MS. FRANCO:  Do you ever provide any offerings

6    regarding the offense conduct from the defense in the

7    presentence report?

8            PETIT JUROR NUMBER 7:  Had it been provided, but that

9    hasn't been the case in that particular or instance.

10           MS. FRANCO:  When you prepare your reports, it's based

11   upon the government's evidence?

12           PETIT JUROR NUMBER 7:  It's on the discovery and

13   information on the case, so, yes.

14           MS. FRANCO:  Okay.

15           THE COURT:  Anything else?

16           Ms. Kanof, did you have any questions?

17           MS. KANOF:  I don't, Your Honor.

18           MS. FRANCO:  Going back to my question about the

19   presentence reports and receiving the information from the

20   government through their discovery from the case agents, so when

21   you receive that information, you take the information that the

22   government has provided to you as being truthful information and

23   an accurate statement of what the case is?

24           PETIT JUROR NUMBER 7:  Yes.

25           MS. FRANCO:  I move that she be struck for cause.

1          THE COURT:  Is there anything about that experience

2     that causes you to not be fair and impartial to either side?

3          PETIT JUROR NUMBER 7:  I mean I'm working I guess from

4     a different perspective on the point that I'm seeing their case.

5          THE COURT:  I'm asking as a juror.  I know that as a

6     probation officer you do what Ms. Franco just pointed out.  As a

7     juror, if you are seated on this juror is your work as a

8     probation officer going to impact your ability to be fair and

9     impartial in this case?

10          PETIT JUROR NUMBER 7:  Potentially, Your Honor, yes.

11          THE COURT:  Okay.  All right.  I'll grant your motion.

12     Be out in the foyer at 12:40, please.

13          PETIT JUROR NUMBER 7:  All right.

14          (Petit Juror exits.)

15          THE COURT:  Juror Number 12.

16          THE COURT SECURITY OFFICER:  Yes, sir.

17          (Petit Juror present.)

18          THE COURT:  You are Ms. Valenzuela?

19          PETIT JUROR NUMBER 12:  Yes, I'm Amabilia Valenzuela

20     and I am a part-time instructor at the El Paso Community College

21     as one of the -- I already expressed I would have a difficult

22     time finding a substitute.  I teach Tuesdays and Thursdays from

23     2:30 to 7:00.

24          THE COURT:  All right.  Thank you.

25          Ms. Franco, did you have any questions?

```
 1              MS. FRANCO:  No, Your Honor.  I move that she be

 2    struck for cause.

 3              THE COURT:  Ms. Kanof, anything?

 4              MS. KANOF:  No, objection, Your Honor.

 5              THE COURT:  All right.  If you'd be out in the foyer

 6    at 12:40 please.

 7              PETIT JUROR NUMBER 12:  Okay.

 8              (Petit Juror exits.)

 9              THE COURT:  I think the better practice is to wait on

10    challenges until they're out just in case it goes against you.

11              I'm not sure I see any legal reason for striking her.

12    I think those are issues that they have to deal with.  It

13    doesn't impact her ability to be fair and impartial.  I suppose

14    there are going to be lots of people that find substitutes for

15    their work, so I'll leave it to Ms. Franco moved to challenge

16    her.

17              MS. KANOF:  Your Honor, I don't think it's an issue of

18    cause either.  My concern is more her ability to pay attention.

19              THE COURT:  But we didn't ask her that.

20              MS. KANOF:  I know.

21              Can we call her back in?

22              THE COURT:  Can we catch her before she gets to the

23    elevator?

24              MS. KANOF:  But with regard to that, Your Honor, we

25    did agree to release the other instructor.
```

1          THE COURT:  She was a full time.  This is a part-time.

2          MS. KANOF:  Oh, that's true.  She had seven classes.

3     This one does not.  That is correct.

4          THE COURT:  But if you agree I'll excuse her.

5          MS. KANOF:  I think we would like to ask her, talk to

6     her.

7          THE COURT:  Maybe we'll get a chance then.  The

8     problem is that's going to be difficult.

9          Juror 13, Manuela Martinez.

10         (Petit Juror present.)

11         THE COURT:  Ms. Martinez, I heard you address me in

12    English.  You spoke pretty good English.  Did you fill out your

13    jury form?

14         PETIT JUROR NUMBER 13:  I only went to school for two

15    years in Mexico.

16         THE COURT:  Where did you learn English?

17         PETIT JUROR NUMBER 13:  Working, just listening to the

18    people.

19         THE COURT:  How long have you lived here?

20         PETIT JUROR NUMBER 13:  25 years.

21         THE COURT:  So you are a United States citizen, right?

22         PETIT JUROR NUMBER 13:  Yes.

23         THE COURT:  When did you become a United States

24    citizen?

25         PETIT JUROR NUMBER 13:  1997.

1            THE COURT:  And at that time you had to speak English.

2            PETIT JUROR NUMBER 13:  Say it again?

3            THE COURT:  You had to speak English to become a

4    citizen.

5            PETIT JUROR NUMBER 13:  Yes.

6            THE COURT:  Okay.  So you --

7            PETIT JUROR NUMBER 13:  I learned the questions.

8            THE COURT:  Okay.  So you learned to read and write

9    English in order to become a citizen.

10            PETIT JUROR NUMBER 13:  Not write.

11            THE COURT:  Just speak it.

12            PETIT JUROR NUMBER 13:  Yes, I speak.

13            THE COURT:  Okay.  All right.

14            Ms. Franco, did you have any questions?

15            MS. FRANCO:  Yes, Your Honor.

16            Ms. Martinez, I appreciate you letting us know that

17    you are concerned about your ability to understand this trial

18    because it's going to be a complicated trial.  Is that why you

19    wanted to let the us know that you are not very proficient in

20    English, that your English isn't very good?

21            PETIT JUROR NUMBER 13:  Yes.  And I don't really know

22    what they are talking about.

23            MS. FRANCO:  And how about reading English?  Are you

24    able to read English?

25            PETIT JUROR NUMBER 13:  Some words I understand.

```
 1                 MS. FRANCO:  Okay.  And you said when you asked the

 2     Judge, you said that you learned what the questions were on the

 3     exam.  Was that so that you would be able to answer the

 4     questions in English when the examiner asked you the questions?

 5                 PETIT JUROR NUMBER 13:  Yes.  Yes.

 6                 MS. FRANCO:  Thank you.  I appreciate your honesty.

 7                 THE COURT:  All right.

 8                 Ms. Kanof?

 9                 MS. KANOF:  No questions.

10                 THE COURT:  Where do you work, ma'am?  Where do you

11     work?

12                 PETIT JUROR NUMBER 13:  Where I work?

13                 THE COURT:  Where do you work?

14                 PETIT JUROR NUMBER 13:  When I work?

15                 THE COURT:  Yes, ma'am.

16                 PETIT JUROR NUMBER 13:  I used to work in a factory in

17     a sewing machine.

18                 THE COURT:  And that was the last employment you had?

19                 PETIT JUROR NUMBER 13:  Yes, that's the last job I

20     have.

21                 THE COURT:  Okay.  All right.  Did you speak English

22     there at your employer?

23                 PETIT JUROR NUMBER 13:  Sometimes because the people I

24     work is from Juarez and from El Paso, they speak Spanish.

25                 THE COURT:  Okay.  All right.  If you'd be out in the
```

1    foyer at 12:40, please.

2               (Petit Juror exits.)

3               COURT SECURITY OFFICER:  Your Honor, we do have number

4    12.

5               THE COURT:  Okay.  Hold on before you bring her in

6    here.

7               What did you want to do with Ms. Martinez?

8               MS. FRANCO:  I move that she be struck for cause.  I

9    think her English is not proficient enough to serve as a juror.

10              THE COURT:  Thank you.  I understand that's your

11   opinion.  I appreciate that.

12              Ms. Kanof?

13              MS. KANOF:  Your Honor, can I confer for a second?

14   I'm not really sure about the law as to whether or not it's a

15   cause.

16              THE COURT:  In Texas the law was they had to have some

17   ability, not an expert ability or anything like that, just some

18   ability to speak.  If this were a state court proceeding, I have

19   no doubt she does not have a problem.

20              MS. KANOF:  I'm sorry.  That she does not?

21              THE COURT:  If it were a state court proceeding, I

22   would be very comfortable denying Ms. Franco's challenge for

23   cause, because she has some ability to speak English.

24              MS. KANOF:  And like I said, I would want to know the

25   law.

1          My biggest concern and I think Ms. Franco addressed

2     it, it's a document intensive case and some of the documents are

3     in Spanish.  She could obviously read those except she just had

4     two years of education so maybe not.  And -- but there are 143

5     at least documents in English, and I'm concerned about her

6     ability to comprehend the nature of the case.  But I would not

7     agree with the cause depending on what the definition is under

8     federal law with regard to this.

9          THE COURT:  Even just a regular guy who grew up,

10    speaks English is going to have difficulty understanding the

11    case.

12         MS. KANOF:  I don't know.  That's probably true, Your

13    Honor.  So we're not going to agree with the motion to strike.

14         THE COURT:  So I'll take it into consideration.  Let's

15    see what the law is and so I'll take your challenge under

16    consideration.

17         All right.  Juror Number 12 is back?

18         COURT SECURITY OFFICER:  Yes, sir, she is.

19         (Petit Juror present.)

20         THE COURT:  I'm sorry.  Ms. Valenzuela, we had some

21    additional questions.

22         Ms. Kanof?

23         MS. KANOF:  Yes, Your Honor.

24         You said you were a part-time instructor.  Which

25    campus?

1          PETIT JUROR NUMBER 12:  Rio Grande.

2          MS. KANOF:  And what are you instructing?

3          PETIT JUROR NUMBER 12:  Psychology.

4          MS. KANOF:  And how many classes do you teach?

5          PETIT JUROR NUMBER 12:  Two classes.

6          MS. KANOF:  And your concern is this is only going to

7   be two, three weeks at the very most.  Your concern was getting

8   substitutes for those two classes?

9          PETIT JUROR NUMBER 12:  Yes.

10          MS. KANOF:  So two Tuesday and two Thursday.

11          PETIT JUROR NUMBER 12:  Yes.

12          MS. KANOF:  That would be it, Your Honor.

13          THE COURT:  Okay.  Are you going to ask about not

14   being able to concentrate?

15          MS. KANOF:  Oh, I'm sorry.  Yes, I forgot.

16          Would -- do you have to find your own substitutes?

17          PETIT JUROR NUMBER 12:  In some cases, yes.  I know

18   that we're allowed one day of jury duty according to the rules

19   and then we are on an exchange program where I have to find my

20   own substitute.

21          MS. KANOF:  Regardless, if you were put on the jury

22   whether or not you have a substitute, that you would not be able

23   to pay attention to the evidence and render a true and fair

24   verdict.

25          PETIT JUROR NUMBER 12:  No, I would not.

1          MS. KANOF:  You would be able to pay attention to the

2   evidence?

3          PETIT JUROR NUMBER 12:  Yes.

4          MS. KANOF:  You would be able to render a true

5   verdict?

6          PETIT JUROR NUMBER 12:  Yes.

7          THE COURT:  All right.

8          Ms. Franco, did you have anything you wanted to ask

9   additionally?

10          MS. FRANCO:  Just a moment, Your Honor.

11          I didn't have anything further, Your Honor.

12          THE COURT:  Ms. Valenzuela, if you would be out in the

13   foyer at 12:40.

14          PETIT JUROR NUMBER 12:  Thank you.

15          (Petit Juror exits.)

16          THE COURT:  Paul Fretz, Juror Number 14.

17          (Petit Juror present.)

18          THE COURT:  Good morning, Mr. Fretz.  Are you Juror

19   Number 14?

20          PETIT JUROR NUMBER 14:  Yes, sir.

21          THE COURT:  And you wanted to speak to us at the bench

22   about something?

23          MS. FRANCO:  Your Honor, I asked.

24          THE COURT:  You did?

25          MS. FRANCO:  Yes, sir.  Because in response to my

1    question regarding offshore accounts, Mr. Fretz had indicated

2    that he thought that that might be some proof of guilt based

3    upon --

4              THE COURT:  Okay.  All right.

5              MS. FRANCO:  His personal beliefs.

6              I wanted to talk to you about that.  If you wouldn't

7    mind, Mr. Fretz.  You said that you thought if someone had an

8    offshore account that could mean he had a tax evasion?

9              PETIT JUROR NUMBER 15:  My opinion is why would you

10   have an offshore account if you weren't trying to hide

11   something?  If everything was legal and above board, you

12   wouldn't need an offshore.  You could do it at Wells Fargo or

13   Chase or wherever, you know.  The very fact that you had to have

14   one means something illegal is happening.  That's in my mind.

15             MS. FRANCO:  Does that opinion that you have, would

16   that affect your ability to serve as a juror on this case?

17             PETITE JUROR NUMBER 15:  Well, yeah.  I couldn't

18   believe everything that they said was untrue if that was in fact

19   in the case.

20             MS. FRANCO:  Thank you.  I appreciate your honesty.

21             THE COURT:  Ms. Kanof?

22             MS. ARREOLA:  You haven't heard any of the evidence,

23   correct?  You don't know the basis for the offshore account.

24             PETIT JUROR NUMBER 15:  No, I don't.

25             MS. ARREOLA:  Would have any problems listening to the

1   evidence?

2           PETIT JUROR NUMBER 15:  Not listening to the evidence

3   but I would not feel this would be a legitimate reason he would

4   do it.

5           MS. ARREOLA:  So if one was given to you, you would

6   not believe it?

7           PETIT JUROR NUMBER 15:  No.

8           THE COURT:  Thank you, Mr. Fretz.  If you would be out

9   in the foyer at 12:40 please.

10          PETIT JUROR NUMBER 15:  All right.

11          THE COURT:  Thank you.

12          (Petit Juror exits.)

13          MS. FRANCO:  I move that he be struck for cause.

14          THE COURT:  That'll be granted.

15          All right.  Juror Number 19.

16          (Petit Juror present.)

17          THE COURT:  Good morning, Ms. Chavez.

18          PETIT JUROR NUMBER 19:  Good morning.

19          THE COURT:  Are you Juror Number 19?

20          PETIT JUROR NUMBER 19:  Yes.

21          THE COURT:  And Ms. Franco, did you want to speak to

22   Ms. Chavez?

23          MS. FRANCO:  Yes, Your Honor.

24          Ms. Chavez, during the questioning by the Judge, you

25   indicated that your husband, Martin Chavez, great guy, we all

1    like him here and we've all done a lot of work with him, based

2    on what we do for a living, you indicated you were concerned

3    that if you were sat on this jury and you found Mr. Delgado not

4    guilty, in other words, that you did not convict him, you're

5    concerned that might have some bad effect on Martin's job or

6    career or his position within the office; is that what you are

7    saying?

8              PETIT JUROR NUMBER 19:  Yes, it is.

9              MS. FRANCO:  And the other issue, you indicate that

10   you are a school teacher and so is that another concern for you

11   as far as serving on this jury?

12             PETIT JUROR NUMBER 19:  Yes, it is.  It's a big

13   concern.

14             MS. FRANCO:  And that is because why?

15             PETITE JUROR NUMBER 19:  Because three weeks out from

16   my classroom, especially since I work in Ysleta, we just

17   started.  I'm still implementing -- I teach first graders --

18   classroom rules, rituals, procedures.  And for me to leave my

19   class, I feel that I would be very far behind and letting them

20   down.  And I know parents would probably start complaining even

21   though I know this is something that wouldn't be helped.

22   Parents in my area, they tend to kind of do that kind of stuff

23   and they probably would not just go to my principal but probably

24   go to the district.

25             I have several kids with special needs, one with

1    autism and a condition where she cannot be bumped or hit or

2    anything because she could bleed internally, so I think I have

3    that -- I'm very concerned about that.

4            MS. FRANCO:  So those two huge factors in your life,

5    your husband's career and also your own, do you think that that

6    would affect your ability to listen to the evidence and be able

7    to render an -- impartial decision in this case.

8            PETIT JUROR NUMBER 19:  Yes, it would, especially the

9    part about my job, because I know I'd be constantly thinking

10   about what's going on, you know, not even being able to contact

11   them is everything.  Okay.  I know that would impact me.

12           MS. FRANCO:  Thank you.  I appreciate your honesty.

13           MS. KANOF:  Ms. Chavez, your husband is a federal

14   probation officer, correct?

15           PETIT JUROR NUMBER 19:  Yes.

16           MS. KANOF:  And the Judge has already said that in the

17   event that a jury, whether you are sitting on that jury or not

18   or if you were sitting on that jury and does find a guilty

19   verdict, the Court would make sure that your husband would not

20   be assigned to the case.  Did you understand when the Judge said

21   that?

22           PETIT JUROR NUMBER 19:  Yes.  And I think my husband

23   has expressed that if there's ever you know someone or you know

24   are you related in some way to the case that of course it would

25   be assigned to someone else.

1          MS. KANOF:  So if our husband was not assigned to the

2   case, how is it that it would affect his career?

3          PETIT JUROR NUMBER 19:  No.  I'm just thinking if

4   people knew that I sat on the jury that you know in that respect

5   regardless -- well if -- look, you said if it was not guilty it

6   wouldn't impact him at all, but if it was -- I just think that

7   because there's --

8          MS. KANOF:  So if you sat on a jury and a defendant

9   was found guilty, this is just a scenario, if you sat on a

10  jury -- so are you saying you could never sit on a federal jury?

11         PETIT JUROR NUMBER 19:  Well, I think obviously I know

12  the possibility and I guess I really didn't even think about it

13  being connected to be honest, like somehow, but obviously I

14  probably -- if it happened, I would have to if so chosen, you

15  know.

16         MS. KANOF:  You do understand that you know people

17  teasing your husband would probably not be -- that -- the slight

18  possibility that your husband would be teased that his wife was

19  on a jury that found somebody guilty, that wouldn't affect your

20  welfare, would it?

21         PETIT JUROR NUMBER 19:  No.  Not so much as being

22  fair.  I just -- at that time I was just thinking, oh, well I

23  make the connection, well my husband is involved in all of this

24  and that was it, but, no, so much as being fair.

25         MS. KANOF:  Since the Judge has made assurances that

1    your husband wouldn't be involved in this case, you can be fair?

2           PETIT JUROR NUMBER 19:  Yes.

3           MS. KANOF:  Thank you.

4           THE COURT:  All right.  Ms. Chavez, I want to be sure.

5    If you are sat on this jury as a juror could you be fair and

6    impartial to both sides?

7           PETIT JUROR NUMBER 19:  I think so.

8           THE COURT:  Is there any doubt in your mind that your

9    service on this jury is not going to impact your husband in any

10   way?

11          PETIT JUROR NUMBER 19:  Yes, that I do understand.

12          THE COURT:  All right.  Thank you.  If you would be

13   out in the foyer at 12:40, please.

14          (Petit Juror excused.)

15          MS. FRANCO:  Your Honor, I would move for cause, not

16   necessarily because of her husband's employment, but more of the

17   preoccupation she's going to have regarding her employment with

18   her special needs students.  She indicated that she could not

19   sit and listen.

20          THE COURT:  That she would be thinking about that.

21   All right.  I'm going to grant that begrudgingly.

22          Juror 26.

23          (Petit Juror present.)

24          THE COURT:  Are you Juror Number 26.

25          PETIT JUROR NUMBER 26:  Yes.

1          THE COURT:  And did you indicate you wanted to speak

2     to us at the bench?

3          PETIT JUROR NUMBER 26:  Yes.

4          THE COURT:  Okay.

5          PETIT JUROR NUMBER 26:  I just wanted to go ahead --

6     did you want me to go up there or just here?

7          I just wanted to ask if there was any way that I could

8     be excused.  I know you mentioned earlier that financial burden,

9     you know, didn't really -- civic duties, but my employer's jury

10    duty policy only compensates us for five days per jury summons.

11    Other than that, we would either have to go without pay for the

12    rest of the time or use personal time or vacation time.  I

13    wouldn't mind, but I've already allotted what I have for a

14    vacation that we're going to take at the end of the year.

15         THE COURT:  The thought now is this trial may only go

16    two weeks and you don't go completely without pay.  We do pay

17    you $40.00 a day.  It probably doesn't even cover parking.  We

18    do pay you $40.00 a day, but I'll take that issue up with the

19    lawyers and see what they think about it and we'll let you know.

20         PETIT JUROR NUMBER 26:  Okay.  Thank you very much.

21         THE COURT:  Be back in the foyer at 12:40.

22         Ms. Franco, did you have any questions that you wanted

23    to ask?

24         MS. FRANCO:  No, Your Honor.

25         THE COURT:  Ms. Kanof?

1              MS. KANOF:  Who do you work for?

2              PETIT JUROR NUMBER 26:  Dish Network.

3              MS. KANOF:  And Dish Network only pays you five days

4     on a jury summons?

5              PETIT JUROR NUMBER 26:  Yes.

6              THE COURT:  Some employers don't pay you at all.

7              PETIT JUROR NUMBER 26:  Thank you.

8              THE COURT:  We'll take it up.

9              (Petit Juror exits.)

10             THE COURT:  Juror 27, Paul Mora raw.

11             (Petit Juror present.)

12             THE COURT:  Are you Paul Mora, Juror Number 27?

13             PETIT JUROR NUMBER 27:  Yes, sir.

14             THE COURT:  You indicates you wanted to speak to us

15    about something at the bench.

16             PETIT JUROR NUMBER 27:  Yes, sir.

17             THE COURT:  Okay.

18             PETITE JUROR NUMBER 27:  I was on probation back in --

19             THE COURT:  Are you on probation?

20             PETIT JUROR NUMBER 27:  Back in '98.

21             THE COURT:  Was that for a felony or a misdemeanor?

22             PETIT JUROR NUMBER 27:  It was falsifying a secure

23    document, food stamps.

24             THE COURT:  Okay.  It was deferred adjudication.

25             PETIT JUROR NUMBER 27:  Yes, sir, adjudication.

1          Ms. Franco, anything?

2          MS. FRANCO:  No, Your Honor.

3          THE COURT:  Ms. Kanof?

4          MS. KANOF:  Nothing, Your Honor.

5          THE COURT:  All right.  Sir, if you'd be outside of

6    the foyer at 12:40.  Thank you.

7          Do you know the difference between deferred

8    adjudication?

9          PETIT JUROR NUMBER 27:  Deferred means I can get it

10   dismissed on my record.

11         THE COURT:  Well back in the day, probably it wouldn't

12   be expunged, but when you enter a plea of guilty under an

13   agreement for deferred adjudication of guilt, it's deferred to

14   see how you do on the terms and conditions you are on probation.

15   If you are successful of the terms and conditions of your

16   probation then everything is dismissed.  Your guilty plea is

17   basically handed back to you as if you never pled guilty.  It

18   it's a regular probation then they do accept your plea of

19   guilty, they find you guilty, then they put you on probation.

20         PETIT JUROR NUMBER 27:  I don't know, sir.

21         THE COURT:  That was in '98.  Was this in El Paso

22   County?

23         PETIT JUROR NUMBER 27:  Yes, sir.

24         THE COURT:  Was it under the name Paul Mora?

25         PETIT JUROR NUMBER 27:  Yes, sir.

1            THE COURT:  All right.  Thank you, sir.  If you'd be

2    back out in the foyer at 12:40, please.

3            (Petit Juror exits.)

4            THE COURT:  Waheed, would you ask Elena to check the

5    El Paso County website for this person's name, Paul Mora?  See

6    if we can find that record.

7            (Petit Juror present.)

8            THE COURT:  Are you Juror Number 33, Ms. Delgado?

9            PETIT JUROR NUMBER 33:  That's correct.

10            THE COURT:  Good afternoon, ma'am.  You wanted to

11    speak to us at the bench?

12            PETIT JUROR NUMBER 33:  That's fine.

13            THE COURT:  Oh, you didn't?

14            PETIT JUROR NUMBER 33:  I just -- no, I was called up,

15    so I --

16            THE COURT:  You didn't ask to speak to us outside the

17    presence?  I'm sorry.

18            Ms. Franco, did you have some questions?

19            MS. FRANCO:  No, Your Honor.

20            THE COURT:  Ms. Kanof?  This is the Socorro

21    Independent School District.

22            MS. KANOF:  You indicated that you had a relative that

23    was with the Socorro Independent School District?

24            PETIT JUROR NUMBER 33:  Yes.  Garcia.

25            MS. KANOF:  And how are you related to him?

1          PETIT JUROR NUMBER 33:  He's by -- he's -- my

2     understanding is she's my dad's sister's husband.

3          THE COURT:  This was a superintendent?

4          MS. KANOF:  No, was on the board of trustees and he

5     was convicted of a felony.

6          PETIT JUROR NUMBER 33:  Yes, correct.

7          MS. KANOF:  By the U.S. Attorney's Office.

8          PETIT JUROR NUMBER 33:  That's correct.

9          MS. KANOF:  Is there anything about that that would

10    make you judge the evidence that the U.S. Attorney brings into

11    this case a little bit sceptical or more sceptical then if your

12    uncle hadn't been --

13          PETIT JUROR NUMBER 33:  No.

14          THE COURT:  You can be fair and impartial to both

15    sides?

16          PETIT JUROR NUMBER 33:  Yes.

17          THE COURT:  If you could be out in the foyer at 12:40,

18    please.

19          PETIT JUROR NUMBER 33:  Okay.  Thank you.

20          (Petit Juror exits.)

21          THE COURT:  34, Priscilla Campos.

22          (Petit Juror present.)

23          THE COURT:  Good afternoon, Ms. Campos.  You are Juror

24    Number 34.

25          PETIT JUROR NUMBER 34:  Yes.

1          THE COURT:  Ms. Franco, did you have any questions?

2          MS. FRANCO:  Your Honor, yes I do.

3          Ms. Campos, thank you for answering the questions

4    truthfully when the Judge was asking you questions.  I know it's

5    kind of scary to talk in front of a bunch of people you don't

6    know.  But one of the things that you were talking to the Judge

7    about, you said you had two uncles that were Border Patrol and

8    that you are pretty close to your uncles, and that based upon

9    that closeness and the fact that they're in law enforcement, you

10   thought that perhaps it would be hard for you to, you know, have

11   a defense on the same playing ground as the U.S. Attorney's

12   Office because obviously that's more law enforcement.  I just

13   wanted to ask you about that.

14          You're feeling is you don't think you could be a fair

15   juror in this case based upon that relationship that you had

16   with your uncles and the feeling that you have about what they

17   do for a living?

18          PETIT JUROR NUMBER 34:  I feel I can be fair.

19          MS. FRANCO:  You could be fair?

20          So if you were sitting in this chair and talking to

21   you, would you want you on the jury?  Based upon what you said

22   that you were concerned about being fair to the defense, so if I

23   was representing, you would want you on your jury?

24          PETIT JUROR NUMBER 34:  Yes.

25          MS. FRANCO:  Okay.

1          THE COURT:  Did you say that you were concerned about

2    being fair to the defense?  Did you say that?  Because I don't

3    remember hearing it.

4          PETIT JUROR NUMBER 34:  I believe you asked me a

5    question and I responded with I don't think so, but I don't

6    remember the question you asked me.

7          THE COURT:  You don't -- and when you said you don't

8    think you can be fair to the defendant or can you be?

9          PETIT JUROR NUMBER 34:  No, I can.

10         THE COURT:  You can be fair?

11         PETIT JUROR NUMBER 34:  Yes.

12         THE COURT:  Is there any doubt in your mind whatsoever

13   that you can be impartial to both sides of the case?

14         PETIT JUROR NUMBER 34:  No, sir.

15         THE COURT:  Ms. Kanof, do you have any questions?

16         MS. KANOF:  No, Your Honor.

17         THE COURT:  If you would be out in the foyer at 12:40,

18   please.

19         (Petit Juror exits.)

20          Juror Number 39, Sarah Friar.

21         (Petit Juror present.)

22         THE COURT:  Good afternoon, Ms. Friar.  Are you Juror

23   Number 39?

24         PETIT JUROR NUMBER 39:  I am.

25         THE COURT:  Did you ask to speak to us at the bench or

1    did we just call you?

2             PETIT JUROR NUMBER 39:  I did not.

3             MS. FRANCO:  Yes, Your Honor.  I think the concern we

4    had Ms. Friar, you indicated you were a reserve advisor, is

5    that -- are you currently a reserve advisor?

6             PETIT JUROR NUMBER 39:  No, I am now.

7             MS. FRANCO:  Okay.  And then the other concern I had

8    was your son, taking him to day care or preschool and picking

9    him up.  Could you explain that to us what the situation is?

10            PETIT JUROR NUMBER 39:  The crux of the issue is that

11   my husband is active duty.  He's involved in field operations,

12   Your Honor.

13            Anyways, he's not in the field right now.  I couldn't

14   know what the future holds.  He was able to get one off in order

15   to do this.  I don't know, you know, if he'll be able to do that

16   in the future.  I doubt it.  So we would have to obviously

17   construct a plan in order to allow my son to go to school.

18            THE COURT:  As a member of the Army Reserve, are you

19   ever, do you ever do that two weeks away from home training

20   thing?

21            PETIT JUROR NUMBER 39:  I do every summer, yes.

22            THE COURT:  And do you make accommodations for your

23   child in the Army Reserve?

24            PETIT JUROR NUMBER 39:  What my husband does is he

25   takes two weeks of leave and that's what we've done.

1              THE COURT:  Ms. Kanof, did you have any questions?

2              MS. KANOF:  No, Your Honor.

3              THE COURT:  If you would be outside in the foyer at

4    12:40 Ms. Friar.

5              PETIT JUROR NUMBER 39:  I appreciate it.  Thank you,

6    Your Honor.

7              (Petit Juror exits.)

8              THE COURT:  Juror Number 41, Oscar Hernandez.

9              (Petit Juror present.)

10             THE COURT:  Good afternoon, Mr. Hernandez.  Are you

11   Juror Number 41?

12             PETITE JUROR NUMBER 41:  Yes, sir.

13             THE COURT:  And you indicated that you had a number of

14   appointments with the V.A., which are hard to come by.  Is there

15   a way we can work with you in those appointments?

16             PETIT JUROR NUMBER 41:  Well, yes and no.  No, because

17   I had eye surgery last month and I need to go back to the doctor

18   for a checkup --

19             THE COURT:  Okay.

20             PETIT JUROR NUMBER 41:  -- following the surgery.  And

21   then I have other, like I said I have other appointments,

22   medical appointments.

23             THE COURT:  How about if I accommodate your checkup,

24   we break for an afternoon, so you can go do your doctor's?

25             PETIT JUROR NUMBER 41:  My checkup is on the 15th of

1    this month which is Wednesday.  Like I said, it's pretty hard to

2    get appointments at the V.A., unless you would be willing to

3    wait about two months or so.

4              THE COURT:  So the 15th, what time?

5              PETIT JUROR NUMBER 41:  At 8:00 in the morning.

6              THE COURT:  In the morning?  How long do those

7    appointments generally last?

8              PETIT JUROR NUMBER 41:  It's hard to say, but

9    approximately two, three hours or maybe more.

10             THE COURT:  Okay.  All right.  And what are the dates

11   of your other appointments?

12             PETIT JUROR NUMBER 41:  The other time, the 29th of

13   this month.

14             THE COURT:  Okay.

15             PETITE JUROR NUMBER 41:  And also my wife has an

16   appointment on the 19th of this month and on that aspect we have

17   only one car as transportation.  We're both retired, so I need

18   to take her to that appointment if possible.

19             THE COURT:  What time is her appointment?

20             PETIT JUROR NUMBER 41:  9:00 and 9:30 a.m.

21             THE COURT:  How about if she drops you off and she

22   drives to the appointment?

23             PETIT JUROR NUMBER 41:  Yes, that would work.

24             THE COURT:  All right.  I think we might be able to

25   accommodate those appointments.

1           Ms. Ms. Franco, did you have any questions?

2           MS. FRANCO:  No, Your Honor.

3           THE COURT:  Ms. Kanof?

4           MS. KANOF:  No, Your Honor.

5           THE COURT:  All right.  Sir, if you would be out in

6    the foyer at 12:40, I'm hoping we'll be able to start then or

7    very shortly after.  Thank you so much.

8           PETIT JUROR NUMBER 41:  Thank you.

9           (Petit Juror exits.)

10          THE COURT:  I think we can accommodate him by late

11   start on Thursday if we start at 1:00 and go to 7:00.

12          MS. KANOF:  I think he said Wednesday, but he said the

13   15th, so I don't know.

14          THE COURT:  September.  I'm looking at September 2016.

15   It's a Thursday, unless my calendar is wrong.  What's today?

16          MR. HANSHEW:  Today is the 12th day.

17          THE COURT:  So, today is Monday the 15th is a

18   Thursday.

19          MS. KANOF:  Right.  And they said Wednesday, so I

20   was --

21          THE COURT:  Oh, he did.  I don't know whether --

22   either way, we can start at 1:00 go to 7:00.

23          MS. KANOF:  It would be fine with me.

24          THE COURT:  And that way we can accommodate him.

25          This is looking better.

1            Okay.  Juror Number 47, Ms. Lara.

2            (Petit Juror present.)

3            THE COURT:  Are you Ms. Lara?

4            PETIT JUROR NUMBER 47:  Yes, sir.

5            THE COURT:  Juror Number 47?

6            PETIT JUROR NUMBER 47:  Yes.

7            THE COURT:  And Ms. Franco, did you have some

8    questions?

9            MS. FRANCO:  Your Honor, I think that the parties and

10   the Court was concerned about her daughter's pregnancy and the

11   care of her grandchild.

12           PETIT JUROR NUMBER 47:  Yes, ma'am.

13           THE COURT:

14           MS. FRANCO:  So Ms. Lara, if you could explain to us

15   what your concern is, who takes care of the two-year-old?  Right

16   now it looks like you are employed.  I don't think you take care

17   of the two-year-old right now.

18           PETIT JUROR NUMBER 47:  I'm sorry?

19           MS. FRANCO:  Do you take care of your two year old

20   grandchild?

21           PETIT JUROR NUMBER 47:  No, it's because my daughter

22   has a high risk delivery.  Since a long time ago, I asked my

23   employer those days to take care of my granddaughter.

24           MS. FRANCO:  Which days are those?

25           PETIT JUROR NUMBER 47:  Starting the 27th.  She's due

1    by the 28th.

2              MS. FRANCO:  That's all I have, Your Honor.

3              THE COURT:  Ms. Kanof?

4              MS. KANOF:  No questions, Your Honor.

5              THE COURT:  All right.  Ms. Lara, if you would be out

6    in the foyer at 12:40, please.

7              (Petit Juror exits.)

8              THE COURT:  Juror 48, Ms. Salas.

9              (Petit Juror present.)

10             THE COURT:  Good afternoon, Ms. Salas.  You are Susana

11   Salas, Juror Number 48?

12             PETIT JUROR NUMBER 48:  Correct.

13             THE COURT:  And you wanted to speak to us at the

14   bench?

15             PETIT JUROR NUMBER 48:  Yes.  I was just going to

16   address the question that you had asked the jury panel in

17   regards to if anybody from the jury panel had a family member or

18   anybody had been investigated.

19             THE COURT:  By the government.

20             PETIT JUROR NUMBER 48:  I'm speaking for myself.  Back

21   in 2003, I was charged with tampering with government records.

22   That later case was dismissed, but that's --

23             THE COURT:  So you were never convicted of that

24   charge?

25             PETIT JUROR NUMBER 48:  No.

1          THE COURT:  You don't have any felony convictions?

2          PETIT JUROR NUMBER 48:  No.

3          THE COURT:  All right.  Thank you, ma'am.

4          Ms. Franco, do you have any questions?

5          MS. FRANCO:  No, Your Honor.

6          MS. KANOF:  Were you charged by the state?  Was it

7     state or federal?

8          PETIT JUROR NUMBER 48:  State, back in 2003.

9          MS. KANOF:  And was there anything about that

10    experience that sort of soured you of law enforcement?

11         PETIT JUROR NUMBER 48:  No.  No.

12         MS. KANOF:  You could be fair and render a fair

13    verdict regardless of the -- I'm assuming you are falsely

14    accused?

15         PETIT JUROR NUMBER 48:  It was a misunderstanding of

16    paperwork.

17         MS. KANOF:  Were you actually arrested?

18         PETIT JUROR NUMBER 48:  Yes.

19         MS. KANOF:  And I would think I would be sort of not

20    be very happy with the government if that happened to me.  Can

21    you listen to the evidence in this case?

22         PETIT JUROR NUMBER 48:  Yes.

23         MS. KANOF:  I'm sorry?

24         PETIT JUROR NUMBER 48:  Yes, I would be able to.  I

25    would listen to the --

1          MS. KANOF:  Okay.

2          THE COURT:  Thank you, ma'am.  If you would be out in

3    the foyer at 12:40, and I'm hoping we'll start there shortly

4    thereafter.

5          (Petit Juror exits.)

6          THE COURT:  All right.

7          Okay.  There's -- we found the document on Mr. Mora.

8    He's charged with securing execution of documents by deposition.

9    You can check.  We checked his birth.  Deferred adjudication.

10   There was some motions to revoke filed, but they were dismissed.

11   And in the end, he filed a motion for early release and it was

12   granted.  So if this is him, it appears he does not have a

13   felony conviction.  What's his date of birth?

14         THE COURTROOM DEPUTY:  8-19-1960.

15         THE COURT:  Okay.  That's it.  Thank you.  All right.

16   So he's good to go.

17         So we do have enough jurors if we were to strike

18   Ms. Martinez for the English issue?  We'd have 33 jurors.  We

19   can still pick 12 and 2 alternates.  And if we don't, we'll have

20   34 jurors.

21         And what did you find on the English?

22         LAW CLERK WAHEED:  Sir, statutory requirement, and

23   it's subject to strike or cause, but if strike improperly.

24         THE COURT:  How about if I don't strike improperly?

25         LAW CLERK KAHN:  That's discretion.

 1          THE COURT:  So when they said have the ability to

 2    speak, do they give --

 3          LAW CLERK KHAN:  Speak, read, write.  There's a few

 4    cases on there, so...

 5          THE COURT:  Strike her?

 6          MS. FRANCO:  Yes, Your Honor.

 7          MS. KANOF:  It's going to be torture.

 8          THE COURT:  So 13 is out.

 9          So these are the people that I think we still have on

10    the panel:  2, 3, 4, 5, 8, 12, 15, 16, 17, 18, 21, 22, 23, 24,

11    25, 26, 27, 29, 31, 33, 34, 35, 38, 39, 40, 41, 42, 43, 44, 46,

12    47, 48 and 50.

13          Do you agree with that?

14          MS. FRANCO:  Yes, Your Honor.

15          THE COURT:  All right.

16          Government?

17          MS. KANOF:  Yes, Your Honor.

18          THE COURT:  All right.  So then we have -- I think we

19    have 33.  So we can pick 12, 28 jurors, and then it will take 4

20    more, 30.  Yeah, 4 more, so we can pick two alternates.  So

21    that's 32, so we have enough to do that.

22          So just so we can agree on the process.  We'll call

23    the strike range for the ten and six, a strike range, and the 12

24    will come from that, and then the next four jurors will be the

25    alternate range and you'll each get one strike against one of

1    those four jurors.  And the last two standing or the first two

2    standing will be our two alternate jurors.

3             Ms. Franco, do you agree with that?

4             MS. FRANCO:  Could you repeat it, Your Honor?  I'm not

5    quite sure I understand.

6             THE COURT:  We'll figure out what the initial panel

7    strike range is.  Basically, 12 jurors and then 16 strikes, 28.

8    The first 28, that's our initial panel strike zone.  So no

9    matter what happens there, for purposes of the alternates, we'll

10   go outside that box to the next four and then the next four will

11   be who we'll pick alternates.

12            MS. FRANCO:  So we would have one strike out of the

13   four alternates?

14            THE COURT:  And the government would have one if you

15   each strike a different person, than the last two will be

16   alternate jurors.  Do you agree with that?

17            Ms. Kanof?

18            MS. KANOF:  Yes, Your Honor.

19            MS. FRANCO:  Yes, Your Honor.

20            THE COURT:  Let's see what the strike range is.  See

21   if you can figure it on your own.  Let's see if we can agree.

22            Has anybody done the math?

23            MS. FRANCO:  Takes us through Juror 43 and alternates

24   would be 44 on.

25            THE COURT:  I agree with you.  That's my math as well.

```
1              Let's see if the government does the math the same way
2    we do.
3              MS. ARREOLA:  We agree with that as well.
4              THE COURT:  So then the first strike range will be
5    through 43, then after that the alternate juror will be 44, 46,
6    47 and 48.
7              Ms. Franco?
8              MS. FRANCO:  I agree, Your Honor.
9              THE COURT:  Government?
10             MS. KANOF:  Yes, Your Honor.
11             THE COURT:  Okay.  All right.  Who's going to stay?
12             (Break at 12:25 p.m. to 12:52 p.m.)
13             (Petit Venire not present.)
14             THE COURT:  Let the record reflect that all members of
15   the jury are not present, the United States through its
16   assistant Unites States's attorney is present, the defendant and
17   his attorneys are present.
18             I understand both sides have provided their strikes to
19   Ms. Duenas.
20             And Ms. Duenas, are we ready to indicate who this jury
21   would be?
22             JURY CLERK DUENAS:  Yes.
23             5, Daniel Munoz, is Juror Number 1.
24             12, Amabilia Valenzuela is Juror Number 2.
25             22, Frank Sandoval is Juror Number 3.
```

1          23, Manuel Antonio Venegas is Juror Number 4.

2          24, Jack Danielle Anaya is Juror Number 5.

3          25, Patricia Anna Rominsky is Juror Number 6.

4          27, Paul Mora is Juror Number 7.

5          29, Janice Ponder is Juror Number 8.

6          31, Monica Rodriguez is Juror Number 9.

7          33, Deena Delgado is Juror Number 10.

8          35, Maria Velez is Juror Number 11.

9          40, Jose Arrieta is Juror Number 12.

10          44, Rene Saucedo is Alternate Number 1.

11          47, Roxana Lara is Alternate Number 2.

12          THE COURT:  All right.  Ms. Kanof, is the jury as

13     stated, does that comport with your strikes?

14          MS. KANOF:  Yes, Your Honor.

15          THE COURT:  And Ms. Franco, does it comport with the

16     defendant's strikes?

17          MS. FRANCO:  Yes, Your Honor.

18          THE COURT:  All right.  Let's go ahead and get the

19     panel in any order or whatever order they want.

20          (Petit Venire present.)

21          THE COURT:  Thank you.  Be seated.

22          Ladies and gentlemen of the panel, thank you very much

23     for your patience.  I did misguess what time it would be before

24     we selected you.  I apologize to you for that.  And I know that

25     in moving people in and the out of the courtroom sometimes it

1    seems like we're cold and uncaring, but as individuals, and I

2    just want you to know in spite of how everything works, we're

3    very grateful to each and every one of you for answering your

4    summons.  We don't do this without your help.

5         Jury trials are expensive.  They're cumbersome and

6    other nations don't do it.  They consider it archaic.  It's

7    still strong in America and continues to be.  There's no better

8    way to test our freedoms and our laws and to have people coming

9    in from the community to make decisions and I thank each and

10   every one of you for answering your summonses.

11        The clerk is now going to call the names of the

12   individuals whoever has been selected to serve on this jury.

13   She's going do call your old number then tell you what your new

14   number is.  When she calls your number, please come forward and

15   have your seat in the jury box.

16        Ms. Dueñas?

17                         PANEL SEATED

18        JURY CLERK DUENAS:

19        5, Daniel Munoz, is Juror Number 1.

20        12, Amabilia Valenzuela is Juror Number 2.

21        22, Frank Sandoval is Juror Number 3.

22        23, Manuel Antonio Venegas is Juror Number 4.

23        24, Jack Danielle Anaya is Juror Number 5.

24        25, Patricia Anna Rominsky is Juror Number 6.

25        27, Paul Mora is Juror Number 7.

PANEL SEATED                                                                    124

1              29, Janice Ponder is Juror Number 8.

2              31, Monica Rodriguez is Juror Number 9.

3              33, Deena Delgado is Juror Number 10.

4              35, Maria Velez is Juror Number 11.

5              40, Jose Arrieta is Juror Number 12.

6              44, Rene Saucedo is Alternate Number 1.

7              47, Roxana Lara is Alternate Number 2.

8              THE COURT:  As the clerk calls your name, please

9   answer "here" loudly for the record.

10             JURY CLERK DUENAS:  Daniel Munoz.

11             JUROR 1:  Here.

12             JURY CLERK DUENAS:  Amabilia Valenzuela.

13             JUROR 2:  Here.

14             JURY CLERK DUENAS:  Frank Sandoval.

15             JUROR 3:  Here.

16             JURY CLERK DUENAS:  Manuel Antonio Venegas.

17             JUROR 4:  Here.

18             JURY CLERK DUENAS:  Jack Danielle Anaya.

19             JUROR 5:  Here.

20             JURY CLERK DUENAS:  Patricia Anna Rominsky.

21             JUROR 6:  Here.

22             JURY CLERK DUENAS:  Paul Mora.

23             JUROR 7:  Here.

24             JURY CLERK DUENAS:  Janice Ponder.

25             JUROR 8:  Here.

```
 1              JURY CLERK DUENAS:  Monica Rodriguez.

 2              JUROR 9:  Here.

 3              JURY CLERK DUENAS:  Deen Delgado.

 4              JUROR 10:  Here.

 5              JURY CLERK DUENAS:  Maria Velez.

 6              JUROR 11:  Here.

 7              JURY CLERK DUENAS:  Jose Arrieta.

 8              JUROR 12:  Here.

 9              JURY CLERK DUENAS:   Rene Saucedo.

10              ALTERNATE JUROR 1:  Here.

11              JURY CLERK DUENAS:  Roxana Lara.

12              ALTERNATE JUROR 2:  Here.

13              THE COURT:  All right.

14              Ms. Kanof, any objection to the jury as seated?

15              MS. KANOF:  No, Your Honor.

16              THE COURT:  Ms. Franco, on behalf of defendant, any

17      objection as the jury is seated?

18              MS. FRANCO:  No, Your Honor.

19              THE COURT:  Ladies and gentlemen of the panel, thanks

20      once again for your service.  We're almost done.  If you would

21      please indulge me to take more of your time.  Give me ten

22      minutes to thank some pretty special people that we have in our

23      panel, and those would be the men and woman who do the fighting

24      and dying for us when there's fighting and dying to be done on

25      behalf of our nation.
```

1          I've done this in almost every jury selection that

2     I've had and in over 300-plus jury panels always had veterans on

3     the panel.  What quickly came obvious to me is how few veterans

4     we had on each panel.  And the reason we had few veterans is not

5     because veterans a not doing their duty.  It's because those are

6     few in number that do that great service for all of us.  So it's

7     underscored for me how our veterans do so much for all the rest

8     of us and I would like to honor them with a very short tribute

9     video.

10          And as an intro to the video, there are words that

11     were written by a soldier in Word War II about the sacrifices

12     that our wars make on behalf of us all, sacrifices that go

13     unnoticed an unreported.  Here's what he wrote:

14          I wonder if people back home only ever know what it

15     costs the soldiers to win this war.  In America, things were

16     already beginning to look like peace time.  The standard of

17     living was on the rise.  Racetracks and nightclubs were booming.

18     You couldn't get a hotel in Miami Beach it was so crowded.  How

19     could anyone ever know of the price paid by soldiers in terror,

20     agony and bloodshed if they had never been in places like

21     Normandy and Bastogne and Haguenau.

22          On any day, at any hour, in any weather, to any place,

23     there's an American soldier who will answer our nation's call.

24          Mr. Duenas, if you would show the video please.

25          (Video played with sound.)

```
 1              THE COURT:  Who among us are veterans of our military
 2    service or active members?  Stand please.  Let us thank you for
 3    your service.
 4              (Applause.)
 5              THE COURT:  How many you are Vietnam veterans?
 6              All right.  Welcome home soldiers.
 7              All right.  That's all I have.  Thank you so much for
 8    your service.  You are free to go.
 9              COURT SECURITY OFFICER:  All rise.
10              (Petit Venire excused.)
11              (Jury panel sworn by the Court.)
12              THE COURT:  All right.  Thank you.  You may be seated.
13              We're going to take a lunch recess at this time.
14    Before you go to lunch, my court security officer will show you
15    the jury room.  You are welcome to stay in the jury room during
16    the lunch, during the breaks or all of the breaks.  You are also
17    welcome to leave the jury room and hope to get something to eat
18    in the jury room, as long as you are back in the jury room by
19    the designated time.
20              At this time, you don't know who the witnesses are,
21    you don't know.  Be careful about discussing anything about this
22    case until you come back into the courtroom.  I'm going to give
23    you some additional instructions once you get back from lunch.
24    Then following, that we'll begin our trial.
25              So if you would follow Mr. Heidtman, he'll show you
```

KATHLEEN A. SUPNET, CSR

1    where the jury room is and suggestions on places to eat, if you

2    want to go out and eat or stay in the jury room.

3          COURT SECURITY OFFICER:  Your Honor, when should they

4    return from lunch?

5          THE COURT:  2:10.

6          COURT SECURITY OFFICER:  Yes, sir.

7          (Jury recessed for lunch. )

8          THE COURT:  All right.  See you all back at 2:10.

9          (Voir dire concluded.)

10                              *  *  *

1                          * * * * *

2          I certify that the foregoing is a correct transcript

3    from the record of proceedings in the above-entitled matter.  I

4    further certify that the transcript fees and format comply with

5    those prescribed by the Court and the Judicial Conference of the

6    United States.

7    Signature:/S/KATHLEEN A. SUPNET          December 31, 2018
              Kathleen A. Supnet, CSR          Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25