UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | § | |
| | § | |
| *Plaintiff*, | § | |
| **v.** | § | **EP-13-CR-00370-DCG** |
| | § | |
| **MARCO ANTONIO DELGADO,** *also* | § | |
| *known as Marco Delgado Licon*, | § | |
| | § | |
| *Defendant*. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>
<u>**DENYING MOTION FOR NEW TRIAL**</u>

Presently before the Court is Defendant Marco Antonio Delgado's "Motion for New Trial" (ECF No. 383) filed pursuant to Federal Rule of Criminal Procedure 33(b)(1). For the reasons that follow, the Court denies the motion.

## I.   BACKGROUND

On February 27, 2013, a grand jury sitting in the Western District of Texas, El Paso Division, returned a seventeen-count indictment against Defendant in the above-referenced case. On January 22, 2014, a grand jury sitting in this District returned a Superseding Indictment (ECF No. 55), charging the Defendant with three counts of wire fraud, in violation of 18 U.S.C. § 1343, seven counts of money laundering, in violation of 18 U.S.C. § 1956, and nine counts of engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957. On September 21, 2016, after a six-day trial, a jury found Delgado guilty on all nineteen counts in the Superseding Indictment.

**A.  Factual Allegations in the Superseding Indictment**

In April 2009, FGG Enterprises, LLC (hereinafter referred to as FGG) was organized under the laws of the State of Nevada, and according to its articles of incorporation, Fernando

Gireud was its sole owner and managing member.  In 2009, the *Comision Federal de Electricidad* (hereinafter referred to as CFE), a Mexican state-owned utility company, announced a solicitation for bids for project No. 18164067-012-9 (hereinafter referred to as the Agua Prieta II Project) for the acquisition of power generating equipment and for the provision of long-term maintenance services of said equipment to be installed at the Agua Prieta II power plant located in Agua Prieta, Sonora, Mexico.

On or about September 16, 2009, Defendant, doing business as the law firm Delgado & Associates, P.C., entered into an agreement with FGG, entitled "Memorandum of Understanding."  Pursuant to the agreement, Defendant agreed, in part, to prepare and submit a bid offer/proposal to CFE on behalf of FGG; in exchange, Defendant was to be paid 62.5 percent of the difference between the purchase price to FGG—of all of the equipment, transportation and field services required to satisfy the bid requirements—and the amount for which the equipment would ultimately be sold to CFE, plus other expenses.  Defendant and FGG agreed, among others, that the estimated sales price of the equipment to CFE would be $127 million and the current negotiated purchase price for the equipment was $105 million.

In October of 2009, Defendant, on behalf of and as the legal representative of FGG, submitted a bid proposal to CFE to provide the equipment and services for the Agua Prieta II Project.  As part of the bid, FGG represented that if CFE were to award the contract to FGG, FGG would obtain letters of credit in the amount of $20 million to guarantee FGG's fulfillment of its obligations under the Agua Prieta II Project contract.

In January of 2010, CFE awarded the Agua Prieta II Project contract to FGG; the power generating equipment to be sold, through FGG to CFE, was comprised of two natural gas turbogenerators and one steam turbogenerator, both owned and warehoused by Mitsubishi Power

Systems America, Inc. (hereinafter referred to as MPSA).  Pursuant to the contract, the payments

from CFE to FGG were to be deposited into an FGG bank account located at a branch of Wells

Fargo Bank in El Paso, Texas.

On or about January 10, 2010, Defendant wrote and transmitted a fraudulent and

fictitious letter to CFE purporting to be from an MPSA Vice President of New Projects (John

Adams) to Gireud, as president of FGG; in the letter, Defendant falsely reported that MPSA had

reviewed the "desirability of pledging its equipment instead of posting an LC (letter of credit) as

discussed."  Defendant apparently forged the signature and letterhead of said MPSA official,

when Defendant, knew that on December 28, 2009, MPSA sent a letter to FGG, expressly

prohibiting FGG from using MPSA-owned equipment as collateral to fulfill FGG's obligation to

provide letters of credit to CFE.

Despite the fact that FGG contractually agreed to provide letters of credit to CFE,

Defendant did, in fact, pledge the MPSA equipment as collateral, to fulfill that term of the FGG

contract with CFE.

On or about March 3, 2010, Defendant, as a representative of FGG, sent a letter to CFE

in which he directed a change of the location for the deposit of payments to FGG by instructing

CFE to make the deposits to a bank account located in the Turks and Caicos Islands instead of

the FGG Wells Fargo Bank account as stipulated in the contract for the Agua Prieta II Project.

**B.  Trial and Appeal**

A jury trial began on September 12, 2016.  Defendant, by this time, was represented by

the Office of the Federal Public Defender.  At trial, among the Government's witnesses were:

Gireud; Mace Miller, FGG's in-house counsel; Hector Ponce, MPSA's Executive Vice President

of Operations; John Adams, MPSA's Senior Vice President of New Projects; Joseph Beddard, a

general manager of projects at MPSA; and Juan Pablo Matamala Cortez, an attorney in the

Attorney General's office with CFE.  In his case-in-chief, Defendant did not call any witness.

The trial concluded on September 20, 2016.

On September 21, 2016, the jury returned a verdict finding Defendant guilty of the

nineteen offenses charged in the Superseding Indictment.  Verdict Form, ECF No. 247.  The

Court sentenced him to one hundred twenty months in federal prison.  Am. J. in Crim. Case, ECF

No. 317.  On February 28, 2018, Defendant filed a Notice of Appeal (ECF No. 319).  At the

Fifth Circuit, Defendant's appeal was docketed as Case No. 17-50919.

## C.  Limited Remand and Relevant Procedural Background

On April 12, 2019, the Fifth Circuit granted Defendant's "motion for limited remand so

the district court may decide his Rule 33(b)(1) motion."  *See* Order, *United States v. Delgado*,

No. 17-50919, Doc. No. 00514914076 (5th Cir.), *docketed in this case as* ECF No. 359.  In the

meantime, on March 21, 2019, before this Court, Counsel Bernard V. Kleinman filed a notice of

appearance (ECF No. 354) on behalf of Defendant.

On September 20, 2019, Defendant filed the instant motion for new trial (ECF No. 383).

Together with the motion, he filed a brief, *see* Mem. of Law in Support of Rule 33(b)(1) Mot. for

New Trial [hereinafter cited as "Mem. Br."], ECF No. 383-1, and twenty-eight exhibits, *see* Mot.

Exs., ECF No. 383-2 – 383-29.[1]

On September 28, 2019, the Government filed a motion requesting that the Court require

Defendant to demonstrate compliance with Federal Rule of Criminal Procedure 33 and address

several "deficiencies" that render Defendant's motion confusing.  Gov't Mot. for Requiring

---

[1] The exhibits do not have any cover page or are otherwise marked with exhibit numbers.  For purposes of citation, the Court refers to them as "Mot. Ex." (singular) or "Mot. Exs" (plural).  Moreover, pincites to an exhibit refer to CM/ECF system (*i.e.*, the Court's Case Management/Electronic Case Filing system) generated page numbers imprinted at the top of each page of the exhibit, rather than to the original page number, if any, at the bottom of the page.

Def. to Demonstrate Compliance with Rule 33 at 3–6, ECF No. 384.  Among other deficiencies, although Defendant, in his brief, cites to exhibits by chronological numbers, none of the attachments (ECF Nos. 383-2 – 383-29) is marked by, or has a cover page with, an exhibit number; moreover, the exhibit numbers used in the brief do not chronologically correspond to the electronic case filing (ECF) numbers assigned to the attachments by the Court's CM/ECF system.  On October 9, 2019, the Court therefore issued an order  requiring Defendant to submit a table correspondingly mapping the brief's exhibit numbers to the attachments' ECF numbers and to file a supplemental brief addressing compliance with Rule 33, including the *Berry* rule.  Order at 3–4, ECF No. 399; *see also* Order (extending certain deadlines), ECF No. 402.

In response, on October 30, 2019, Defendant filed a document containing a table mapping the exhibit numbers to the corresponding ECF numbers.  Def.'s Notice of Exhibit/ECF Cross Ref., ECF No. 403.  On November 22, 2019, further in response to the Court's October 9, 2019 Order, Defendant filed a number of documents.  Among them, Defendant filed a notice of additional exhibits. *See* Def.'s Notice of Filing Add'l Exs., ECF No. 407.  Separately, Defendant submitted his personal declaration, *see* Delgado Decl., ECF No. 409, together with seven attachments (ECF Nos. 409-1 – 409-7), which appear to be the additional exhibits.

Kleinman, for his part, submitted three separate documents, each containing his own declarations and signed by him; for ease of discussion, the Court will refer to them as Kleiman's first (ECF No. 406), second (ECF No. 408), and third (ECF No. 410) declarations.  Along with his first declaration, Kleinman submitted three attachments, one of which is 251 pages long (ECF No. 406-2); this attachment contains some of the additional exhibits Defendant submitted on November 22, 2019, and for ease of citation, the Court will refer to it as "Add'l Exs."  With his second declaration, Kleinman submitted a document which contains declarations by Agustin

Azcon, an attorney from Mexico retained by Defendant.  *See* Azcon Decl., ECF No. 408-1.

Finally, with his third declaration, Kleinman submitted eleven attachments (ECF No. 410-1 –

410-11) purported to be certified translations of some of the exhibits filed with the motion.

Third Kleinman Decl. at ¶ 3, ECF No. 410.

On February 12, 2020, the Government filed its response in opposition to Defendant's

motion for new trial.  *See* Gov't's Resp. to Mot., ECF No. 414.  On February 26, 2020,

Defendant filed a reply in support of his motion.  *See* Def.'s Reply to Mot., ECF No. 415.  On

March 6, 2020, the Court issued an order (ECF No. 416) requiring the Government to file a sur-

reply in response to Defendant's reply.  On May 1, 2020, the Government filed its sur-reply in

further opposition to Defendant's motion.  *See* Gov't's Sur-Reply to Mot., ECF No. 423.

## II.   APPLICABLE LAWS

Federal Rule of Criminal Procedure 33 permits a district court to grant a new trial upon a

defendant's motion "if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  Generally,

motions for new trial "are disfavored and must be reviewed with great caution."  *United States v.*

*Dickerson*, 909 F.3d 118, 125 (5th Cir. 2018).  In order to warrant a new trial on the basis of

"newly discovered evidence," Fed. R. Crim. P. 33(b)(1), the defendant must demonstrate the

prerequisites of "the *Berry* rule":

> (1) the evidence is newly discovered and was unknown to the defendant at the
> time of trial; (2) the failure to detect the evidence was not due to the defendant's
> lack of diligence; (3) the evidence is not merely cumulative or impeaching; (4) the
> evidence is material; and (5) the evidence if introduced at a new trial would
> probably produce an acquittal.

*United States v. Piazza*, 647 F.3d 559, 565 (5th Cir. 2011).  Failure to demonstrate any one of

these five prerequisites is fatal to the motion.  *United States v. Chapman*, 851 F.3d 363, 381 (5th

Cir. 2017).

## III.   DISCUSSION

Defendant argues that his alleged "newly discovered evidence," laid out in the exhibits accompanying his motion, establishes his likely innocence, because it shows that he was "authorized to act as he did."  Mem. Br. at 1–2, ECF No. 383-1.  That is, he claims, the alleged "new evidence" establishes that he was authorized to (1) change a bank account and (2) pledge MPSA's equipment.[2]  *Id.* at 24.  Before assessing whether the documents in the exhibits comply with the *Berry* rule, the Court briefly pauses to address two preliminary matters.

### A.   Preliminary Matters

#### *(1)   Various Contracts Mentioned*

For ease of discussion, the following is a list of the contracts mentioned throughout this opinion: (1) a teaming agreement executed by MPSA and FGG on August 8, 2009; (2) a subcontract for procurement of goods, *i.e.*, two gas turbo generators, executed by MPSA and FGG on December 16, 2009; (3) a contract for procurement of the generators executed by CFE and FGG on January 6, 2010 (hereinafter, referred to as the CFE-FGG equipment contract); (4) a contract for guarantee/warranty services guaranteeing functionality of gas turbine generators executed by CFE and FGG on January 6, 2010 (hereinafter, referred to as the CFE-FGG long-term service agreement); and (5) an instrument pledging MPSA's equipment as collateral to guarantee FGG's performance under the CFE-FGG equipment contract executed by Defendant on January 15, 2010 (hereinafter, referred to as the pledge agreement).

---

[2] In his reply brief, Defendant does not mention the first line of arguments that he was authorized to change the bank account; instead, he focuses on the second line of arguments regarding the equipment pledge.  Def.'s Reply to Mot. at 4.

### *(2)  Discovery and Source of the Alleged New Evidence*

Defendant states that the so-called "Buendia Report" led him to the alleged newly

discovered evidence.  First Kleinman Decl. at ¶ 8, ECF No. 406.  That report, together with the

so-called "Moreno Report," is approximately 600 pages long and in Spanish.  *Id.* at ¶ 10.  These

reports contain findings of *Unidad de Responsabilidades en la Comision Federal de*

*Electricidad, Empresa Productiva del Estado*'s administrative proceedings; the proceedings were

conducted to investigate allegations of mishandling the CFE-FGG contracts against Eduardo

Buendia, an engineer and manager in CFE's External Energy Generation Projects, and Francisco

Moreno, a CFE counsel who was involved with the contract.[3]  The Government produced the

reports to the defense team about ten days before trial.[4]  In part because the Court denied

Defendant's oral motion to continue trial on the basis of this production, Defendant claims, the

defense did not have adequate time to translate and analyze the reports, and consequently, the

Buendia Report and any alleged newly discovered evidence that the report led him to were "not

available" before trial in any practical or reasonable sense.  *Id.* at ¶ 17–18.

Defendant clarifies that the alleged new evidence was not, in fact, in the Buendia Report,

but that the report included references to the evidence.  *Id.* at ¶¶ 8, 15.  Specifically, Defendant

avers, certain documents that were submitted as part of FGG's bid offer/proposal to CFE were

referenced in the report, and they are newly discovered.  *Id.* at ¶¶ 14–15 (listing the bid offer

documents); *see also* Delgado Decl. at ¶¶ 8(i)–(v), (vii).  In other words, Defendant's arguments

suggest that but for the Buendia Report, he was not aware of these documents.  Yet, in an effort

---

[3] Mot. for Recons. of Ct.'s Sept. 6, 2016 Order Denying Oral Mot. for Continuance at 1, 6, 7, ECF No. 214; Status Hr'g Tr. at 5, 16, ECF No. 331; Trial Tr., vol. 10, at 155:11–15 (Beddard testimony), ECF No. 340; Azcon Decl. at 7.

[4] *See* Status Hr'g Tr. at 3:23–25.

to authenticate them, Defendant declares that he was "present at the preparation, presentation, and execution" of these documents.  Delgado Decl. at ¶ 7.

Defendant further states that prior to trial, he diligently sought all relevant records from CFE, but the alleged newly discovered evidence was unavailable or inaccessible to him because prior to the Superseding Indictment, CFE had sealed the "contract" and pledge agreement.  *E.g.*, *id*. at ¶¶ 7, 12; First First Kleinman Decl. at ¶ 22; Azcon Decl. at 4.  The alleged new evidence, he says, "came to [his] attention" through former CFE officials, including Alberto Ramos Elorduy, former Deputy Director of Project Finance, and Eugenio Laris Alanis, former Director of Project Finance.[5]  Delgado Decl. at ¶¶ 5–6.  Defendant does not state when—before or after trial—the former CFE officers (and/or the unidentified members of their staff) brought the alleged new evidence to his attention.

Finally, despite that the contract and the pledge agreement are "still under seal," First Kleinman Decl. at ¶ 33, Azcon, Defendant's Mexican attorney, states that he was able to, and did, obtain a copy of the complete pledge agreement from "Corredor Publico" following certain process, Azcon Decl. at 2, and further obtained a copy of the CFE-FGG equipment contract from the "National Institute for Access to Information," *id.* at 4.  Azcon moreover declares that he received the so-called "Bid Offer" documents—*i.e.*, certain documents that were allegedly part of FGG's bid offer/proposal submission to CFE and are allegedly newly discovered evidence, *see* Part III(B)(2) (discussing these documents)—from the "defense team."  *Id.* at 5.

Nowhere in his personal declaration, does Defendant identify the source wherefrom he, in turn, received these Bid Offer documents.  To be sure, Kleinman, in his declaration, does attempt

---

[5] It appears that Ramos and Laris were fired (or forced to resign) from CFE a long time before trial.  Status Hr'g Tr. at 15:20–15:1, 30:9–17 (statement of prosecuting attorney); Trial Tr., vol. 16(A), at 60:15–22 (Matamala testimony), ECF No. 346.

to identify the source, Kleinman Decl. ¶ 7 ("The source(s) of the newly discovered evidence are current and former CFE officials and/or their legal representatives."), but his declarations, in turn, are "based upon discussions with my client  and other records and documents as provided to me by the client, and other sources," *id.* ¶ 2.

## B. Application of the *Berry* Rule to the Documents in the Exhibits

As explained in the margin,[6] it remains a mystery—among the more than thirty-five exhibits Defendant submitted, which ones do and, as important, *which ones do not* contain the

---

[6] Defendant's brief states that the alleged "[n]ew [e]vidence" is "laid out in detail infra, and the accompanying Exhibits"; twenty-eight exhibits accompany the brief.  Mot. Br. at 2; Mot. Exs., ECF No. 383-2 – 383-29.  The motion brief nowhere provides a list of the exhibits that Defendant claims include newly discovered evidence.  According to Defendant, in the brief, beginning on the page numbered 24, the sections under the heading "C. 'Newly Discovered Evidence' Meriting Relief Under Rule 33" set forth the specific items of newly discovered evidence.  Def.'s Reply to Mot. at 1.  So, it may be hoped that in discussing or citing a particular exhibit, the brief would alert the reader whether or not that exhibit contains an item of the alleged newly discovered evidence.  No such effort is demonstrated.

Take, for example, on page numbered 26, begins a sub-section with the heading "a. Responsibility for posting CFE Contract Performance Guarantees" and it appears to end on page numbered 32.  Before the sub-section heading, the brief states, "[t]he newly discovered evidence, however, proves" among others, that the assertion that "FGG was responsible for posting the financial performance guarantees" is "patently false."  Mem. Br. at 26.  And at the conclusion of the subsection, the brief states "[t]he *preceding* newly discovered evidence" makes it incontrovertible that MPSA was responsible for posting the corresponding financial guarantees.  *Id.* at 32 (emphasis added).  In between, however, the brief cites at least eight different exhibits, without ever mentioning whether or not each of those exhibits contains what he claims newly discovered evidence.  In other words, the documents in *all* of those exhibits are presumably newly discovered evidence.

To address this issue, the Court's October 9, 2019 order required Defendant to, among others, provide a summary list of all pieces of evidence Defendant claims are newly discovered, Order at 4, ECF No. 399, *as modified by* Order (modifying certain deadlines), ECF No. 402.  Although Defendant has since identified certain exhibits that he claims contain new evidence, he has not done so for the others.  *See*, *e.g.*, Delgado Decl. at ¶ 8 (listing and discussing a few documents, but with the introductory statement that "[t]his newly discovered evidence consists *among other things of:*" (emphasis added)).  Moreover, when Defendant and Kleinman attempt to list the exhibits that, they claim, *do* contain the alleged newly discovered evidence, each of their lists includes one or more exhibits or documents that are not listed in the other.  *See* Gov't's Resp. to Mot. at 6–8.

The issue is further complicated by Defendant's submissions of duplicate exhibits, *compare, e.g.,* ECF 406-2 (251 pages), *with* ECF Nos. 409-1 – 409-7; briefs lacking citations, *see, e.g.*, Def.'s Reply to Mot. at 4 (stating "[t]he newly discovered evidence at its most basic form consists of the following:" and

alleged newly discovered evidence.  The Court therefore undertakes the task of evaluating each and all exhibits, keeping in mind that if a document fails a single *Berry* factor, the Court need not to evaluate the remaining factors for that document.

Below, in Part III(B)(1), the Court addresses the exhibits Defendant submitted with his motion, Mot. Exs., ECF Nos. 383-2 – 383-29; *see also* Def.'s Notice of Exhibit/ECF Cross Ref., ECF No. 403, and in Part III(B)(2), additional exhibits he subsequently submitted, Add'l Exs., ECF No. 246-2; *see also* Delgado Decl., Attachs., ECF Nos. 409-1 – 409-7; Def.'s Notice of Filing Add'l Exs. at ¶¶ 3–4 (explaining that the additional exhibits are discussed in the motion brief, but due to inadvertence, were not submitted with the motion), ECF No. 407.

### *(1)  Exhibits Submitted with the Motion*

Initially, the Court infers, based upon Defendant's discussion in the brief, that he does not claim that the documents in Exhibits 7 (ECF No. 383-9), 13 (ECF No. 383-17), and 15 (ECF No. 383-19) are newly discovered; instead, he relies on them to provide background information.[7] Likewise, Exhibits 20 (ECF No. 383-24), 21 (ECF No. 383-25), and 25 (ECF No. 383-29) appear to be copies of certain provisions of the Mexican Federal Civil Code, which Defendant cites in support of his arguments.  The Court therefore does not address these exhibits.

---

listing three types of evidence without any citation), and statements providing citations to bates numbers of unknown origin, *see, e.g.*, First Kleinman Decl. at ¶ 15.

[7] Exhibits 7 is a copy of a letter purported to be from Adams to Gireud dated January 10, 2010; at trial, the Government introduced a copy of the same as, Gov't Trial Ex. 21, ECF No. 390-4, and argued, at opening and at closing, that Defendant manufactured the letter, Trial Tr., vol. 9(C), at 16:25–17:7, ECF No. 339; Trial Tr., vol. 16(B), at 12:9–18, ECF No. 348; *see also* Mem. Br. at 21, 23 (discussing Government's Trial Exhibit 21).

Exhibit 13 is a copy of an excerpt from the transcript of a pretrial hearing held on the morning of September 12, 2016, the first day of trial, Mots. Hr'g Tr. at 45:14–18, ECF No. 338, and Exhibit 15 is a copy of the final judgment in this case, Am. J. in Crim. Case, ECF No. 317; *see also* Mot. Br. at 56 (citing Exhibit 15), 66 n.20 (citing Exhibit 13).

Further, for ease of discussion, the Court defers addressing Exhibits 7a, 7b, and 22, which, he claims, are newly discovered evidence, until Part III(B)(2), *post*. All other exhibits attached to the instant motion are addressed below.

### (a)  Exhibit 1

Defendant describes Exhibit 1 (ECF No. 383-2) as a memorandum of understanding among Gireud, Miller, and Defendant. Mot. Br. at 32–33. The document appears to be dated January 26, 2012, and signed by Gireud and Miller, but not by Defendant (a space for his signature is left blank). At trial, the Government introduced into evidence a memorandum of understanding dated September 16, 2009, and signed by Gireud and Defendant. *See* Gov't's Trial Ex. 8, ECF No. 387-4. Exhibit 1's memorandum of understanding is cumulative of that in the trial exhibit at least insofar as Defendant appears to rely on Exhibit 1's information in his brief. Mot. Br. at 32–33, 46; *compare* Mot. Ex. 1 at 1 (Defendant is "retained to manage both contracts" and assigned 62.5% of net collections derived from referenced contract), *with* Gov't's Trial Ex. 8 (Defendant is "instructed to prepare and present said bid on behalf of FGG" and will receive 62%).

### (b)  Exhibit 2

Defendant describes Exhibit 2 (ECF No. 383-3) as FGG's article of organization under Nevada laws. Mot. Br. at 34–36. At trial, the Government introduced into evidence a copy of the article of organization. *See* Gov't's Trial Ex. 3, ECF No. 386-2. As such, the document in Exhibit 2 is not newly discovered evidence. *See United States v. Rittweger*, 309 F. App'x 504, 505–06 (2d Cir. 2009) (the document in question is not "newly discovered evidence" because it was offered into evidence at trial by the government).

### (c)  Exhibit 4

Exhibit 4 (ECF No. 383-5) is a copy of a power of attorney executed on July 13, 2009, by Gireud in favor of Defendant.  Mem. Br. at 40–44.  In his brief, Defendant relies on certain portions of this exhibit, including one that appears to recite Federal Civil Code of Mexico § 2555, to argue that Gireud granted him "broad" authority and thereby "approv[ed] the change of bank account."  *Id.* at 41–42.  He insists it is newly discovered evidence.  *See* Delgado Decl. at ¶¶ 8 ("This newly discovered evidence consists among other things of: . . . ."), 8(vii) (discussing Exhibit 4).  So does Kleinman.  *See* Second Kleinman Decl. at ¶¶ 2 ("Summary of New Evidence"), 4 (discussing Exhibit 4), ECF No. 408.

Based on an inspection of the document "header" information[8] imprinted on the pages of Exhibit 4 by the CM/ECF system, it is clear that the five pages of Exhibit 4 were in fact excerpted from yet another exhibit of record that was entered on the Court's electronic docket on September 12, 2016 (the first day of trial).  Gov't Mots. Hr'g Ex. 7 at 16–20, ECF No. 226.  At a pretrial hearing held on that day on Defendant's motion to dismiss the superseding indictment, the Government offered the latter exhibit into evidence, which was admitted without any defense objection, Mots. Hr'g Tr. at 45:14–18, ECF No. 338; it consists of a copy of the documents

---

[8] The CM/ECF system has a software option for its users called "include headers when displaying PDF documents," which can be turned on (enabled) or turned off (disabled).  *See, e.g.*, U.S. Bankr. Ct., E.D. Mo, *CM/ECF - PDF HEADERS Turning Them Off and On* (May 2013), https://www.moeb.uscourts.gov/sites/moeb/files/PDF_Header-2.pdf (last visited July 16, 2020).  If the option is enabled before viewing or downloading a document entered on the Court's electronic docket, the system generates a "header" and places it on the top of each page of the document; if however, the option is disabled, the header is not so placed.  In this District, the system generated header includes the following information: "Case [number]  Document [number]  Filed [date]  Page [number] of [total number of page(s)]."

Here, when Exhibit 4 (ECF No. 383-5) is viewed or downloaded with the header option turned on, two headers—one superimposed on the other—appear on the pages of the document.  However, if the header option is turned off, only one header appears, which includes header information pertinent to ECF No. 226—*i.e.*, the hearing exhibit.

Gireud produced in April 2016 to Defendant's then legal team (the Federal Public Defender) in response to a subpoena, Def.'s Mot. to Dismiss at 5, ECF No. 184; Mots. Hr'g Tr. at 43:4–13, 53:13–15.  Consequently, Defendant was in possession of the July 13, 2009 power of attorney at least five months before trial, and he may not now claim that the document is newly discovered. *See United States v. Jaramillo*, 42 F.3d 920, 925 (5th Cir. 1995) (holding that evidence is not "newly discovered" where a defendant is in possession of evidence before trial but fails to realize its relevance).

Moreover, the power of attorney submitted as Exhibit 4 is not newly discovered because at trial the Government introduced into evidence a copy of the same as "Government Exhibit 4." *See* Gov't's Trial Ex. 4, ECF No. 387.[9]

---

[9] Kleinman makes much of "bate stamps" on his copy of the power of attorney in Exhibit 4. Second Kleinman Decl. at ¶ 4.  He avers that the copy of the July 13, 2009 power of attorney in the Government's exhibit "is not a copy of the one actually used as part of the Bid Offer." *Id.*  He explains that "[t]he actual [power of attorney] *by fact* is [b]ate-stamped, indicating it was the one presented as part of the Bid Offer," but that the Government's copy "is clearly not [b]ate [s]tamped." *Id* (emphasis added). He claims that "Defendant['s] Exhibit 4 represents the actual and only power of attorney used by the Defendant to pledge the equipment," *id.*, and Azcon, Defendant's Mexican attorney, states that this document "was incorporated into the joint MPSA-FGG Bid Offer to the CFE," Azcon Decl. at 2.  In other words, according to Kleinman, Defendant's Exhibit 4, but not the Government's trial exhibit, represents the actual power of attorney that was presented with, and was part of, the bid offer/proposal submitted to CFE—because it, unlike the Government's exhibit, is bate stamped.

The Court observes that each page of Defendant's Exhibit 4 is marked (in red color), at the lower right corner of the page, with one of the following sequential numbers: from "17-50919.1870" to "17-50919.1874"—presumably the "bate stamps" Kleinman refers to; no other numbers resembling bate stamps appear on the pages.  However, as discussed *supra* and in the last footnote, the CM/ECF header information indicates that the document in Exhibit 4 (ECF No. 383-5) is an excerpt from the Government's exhibit offered at the September 12, 2016 hearing and docketed on the same day on the Court's electronic case docket as ECF No. 226.  Whereas ECF No. 383-5 contains the bate stamps in question, ECF No. 226 does not.  It thus appears that someone with access to the CM/ECF system downloaded a copy of the Government's hearing exhibit (ECF No. 226); the bate stamps were then electronically added to the pages of the downloaded copy, and so bate-stamped, those pages were submitted as Exhibit 4.  All these activities occurred on or after September 12, 2016 (the date on which ECF No. 226 was entered on the electronic docket)—which was approximately seven (7) years after FGG's bid proposal was submitted to CFE in October 2009.  *See* Gov't's Trial Ex. 9A (English translation of the bid proposal) at 3, ECF No. 387-5.

**(d)   Exhibits of Other Powers of Attorney: Exhibits 5 and 5a**

Defendant describes Exhibit 5 (ECF No. 383-6) as a power of attorney executed by Gireud in favor of Defendant.  Mem. Br. at 40.  It is dated January 11, 2010.  Insofar as Defendant relies on the information in Exhibit 5, Mem. Br. at 39–41, the January 11, 2010 power of attorney is cumulative of the July 13, 2009 power of attorney in Exhibit 4, discussed *supra*, and in turn, the power of attorney in the Government's exhibit at trial.  *See* Gov't's Trial Ex. 4; *see also* Part III(B)(1)(c), *ante*.

Exhibit 5a (ECF No. 383-7) is a copy of yet another power of attorney executed on March 8, 2012, by Gireud in favor of Defendant.  As the Government points out, a copy of this power of attorney was marked by both parties as a trial exhibit (namely as, Government Exhibit 135 and Defendant's Exhibit 52), but neither side offered it into evidence.  Gov't's Resp. to Mot. at 13 n.12; *see also* Joint Admissibility of Exs. at 11 (listing as Gov. Ex. 135), ECF No. 190; Def.'s Am. Proposed Ex. List at 5 (listing as Def. Ex. 52), ECF No. 213.  Moreover, like the document in Exhibit 4, discussed *supra*, the document in Exhibit 5a is an excerpt from the Government's exhibit offered at the September 12, 2016 pretrial hearing, *see* Gov't's Mots. Hr'g Ex. 7 at 21, and was produced by Gireud to Defendant's then legal team in April 2016—long before trial.  *See* Part III(B)(1)(c), *ante*.  The document in Exhibit 5a is therefore not newly discovered evidence.

**(e)   Exhibit 6**

Exhibit 6 (ECF No. 383-8) appears to be a letter or statement by Gireud; it is dated October 20, 2009.  In his brief, Defendant relies on this exhibit to argue that Gireud instructed him "to present the bid" to CFE.  Mem. Br. at 43–44; *see also* Mot. Ex. 6 at 15 ("I, Fernando de

---

Simply put, the bate-stamps in question have no bearing on whether or not the underlying document was presented with the bid offer/proposal submitted in 2009.  Certainly, they do not convert a document entered on the electronic docket before or during trial into newly discovered evidence.

Jesús Giread [*sic*], . . . authorize Marco Delgado Licon . . . to act in my name in order to see to the following arrangements: . . . a) Turn in and receive documentation; and b) Participate in the opening of the proposals and the awarding of the bid.").

This document, to the extent Defendant relies on the information therein, is cumulative of the Government's trial exhibits containing the September 16, 2009 memorandum of understanding between Gireud and Defendant, *see* Gov't's Trial Ex. 8 at 1 ("D&A is instructed to prepare and present said bid on behalf of FGG[.]"), and the July 13, 2009 power of attorney signed by Gireud, *see* Gov't's Trial Ex. 4 at 1 (". . . he may appear before the [CFE], to execute and deliver [FGG's] response to public bid No. No. [*sic*] 18164067-012-09, authorizing [Defendant] also, to negotiate and execute any and all contracts deriving from said public bid."); *cf. United States v. Bowler*, 252 F.3d 741, 747–48 (5th Cir. 2001) (holding an alleged "newly discovered" report was cumulative of a report presented during trial because the reports contained "substantially similar" information).

### (f)   Exhibits of Contracts: Exhibits 3, 10, 17, 18, 19, 23, and 24

Exhibit 3 (ECF No. 383-4) is a copy of the teaming agreement.  Mem. Br. at 29–31; *id.* at 30 n.10; *see also id.* at 18–19, 29–31, 61 (discussing teaming agreement); Second Kleinman Decl. at ¶ 7 (relying on Addendum 1 to the teaming agreement).  At trial, the Government introduced into evidence the agreement without the addendum, *see* Gov't's Trial Ex. 7, ECF No. 387-3, and Defendant introduced the addendum, *see* Def.'s Trial Ex. 199, ECF No. 397-7.  The teaming agreement and its addendum, therefore, are not newly discovered evidence.

Exhibit 10 (ECF No. 383-14) is a handwritten addendum to the MPSA-FGG subcontract, *see* First Kleinman Decl. at ¶ 30, Second Kleinman Decl. at ¶ 14, though in his brief, Defendant mischaracterizes it as an addendum to the teaming agreement, *see* Mem. Br. at 31–32, 46.  At

trial, the Government introduced a copy of the subcontract, and the handwritten addendum appears on the last page thereof.  *See* Gov't's Trial Ex. 12 at 17 (all but the last page in Spanish), ECF No. 388-1; Gov't's Trial Ex. 12A at 17 (English), ECF No. 388-2; *see also, e.g.*, Trial Tr., vol. 13, at 99:23–102:21 (Ponce testimony about the handwritten addendum), ECF No. 343-1. Accordingly, the handwritten addendum to the MPSA-FGG subcontract is not newly discovered evidence.

Exhibit 17 (ECF No. 383-21) appears to be an uncertified English translation of Clause 19 of the CFE-FGG long-term service agreement.  *See, e.g.*, Mem. Br. at 28; Second Kleinman Decl. at ¶ 11 (discussing Clause 19.4 of the agreement).  Defendant did not submit a copy of the source Spanish document.  For trial, Defendant marked a copy of the agreement as a trial exhibit, *see* Def.'s Am. Proposed Ex. List at 2 (listing exhibits 8 and 8A), but ultimately did not offer it into evidence.  Nevertheless, the record indicates that in April 2016, Gireud produced a copy of the agreement to Defendant's then legal team.  *See* Gov't's Mots. Hr'g Ex. 7 at 96–148; *see also* Part III(B)(1)(c), *ante* (discussing Gireud's production).  Clause 19, together with its subparts, appears within that copy of the contract, Gov't's Mots. Hr'g Ex. 7 at 126–27.  Therefore, the document in Exhibit 17 is not newly discovered evidence.  *See Jaramillo*, 42 F.3d at 925, *supra*.

Exhibit 18 (ECF No. 383-22) appears to be an English translation of, as the title on its first page suggests, the CFE-FGG equipment contract, though it appears that Defendant did not submit a copy of the original contract in Spanish.  In a subsequent filing, Defendant provides a declaration from a translator who describes it as a three-page excerpt from "Contract CFE FGG Bank of Foreign Trade," but fails to submit a copy of the original contract in Spanish.  *See* ECF No. 410-5 at 5.  In his brief,[10] Defendant describes the exhibit as "extract portions of the contract

---

[10] Although Defendant cites Exhibit 18 multiple times in his brief,  he does so without any pincite or quoted excerpt therefrom; consequently, the Court is unable to determine exactly what material in the

between CFE, FGG and the National Bank of Foreign Trade."  Mem. Br. at 27 n. 9.  At trial, the Government introduced into evidence a copy of the CFE-FGG equipment contract.  Gov't Trial Ex. 18 (Spanish), ECF No. 389-1; Gov't Trial Ex. 18A (English translation), ECF No. 389-2. To the extent Defendant claims that Exhibit 18 contains excerpts from the CFE-FGG equipment contract, they are not newly discovered.

Exhibits 19 (ECF No. 383-23) and 23 (ECF No. 383-27) appear to be English translations of Clauses 15 and 16 of the CFE-FGG equipment contract.[11]  *See, e.g.*, Mem. Br. at 37 (Clause 15), 39 (Clause 16); *see also* ECF No. 410-9 (Clause 15).  As mentioned, at trial the Government introduced a copy of the CFE-FGG equipment contract, which includes Clauses 15 and 16.  *See* Gov't Trial Ex. 18 at 12–16 (Spanish); Gov't Trial Ex. 18A at 12–16 (English).  Therefore, Clauses 15 and 16 in Exhibits 19 and 23, respectively, are not newly discovered evidence.

Exhibit 24 (ECF No. 383-28) appears to be an English translation of Clause 13 (entitled as "Payment") of the MPSA-FGG subcontract.  Second Kleinman Decl. at ¶ 12; *see also* Mem. Br. at 27 n.9; 28, 38.  As mentioned, at trial, the Government introduced into evidence a copy of the MPSA-FGG subcontract, and Clause 13 is included therein.  Gov't Trial Ex. 12 at 6–7 (Spanish); Gov't Trial Ex. 12A at 6-7 (English translation).  Consequently, Clauses 13 in Exhibit 24 is not newly discovered.

### (g)   Exhibits Relating to the State Civil Case: Exhibits 8 and 9

Exhibit 8 (ECF No. 383-12) is a copy of a declaration by Gregory Wunder, Vice President and Chief Commercial Officer of MPSA, given in a state court lawsuit styled as

---

exhibit supports his proposition in the brief.  *See*, *e.g.*, Mem. Br. at 27 (stating "(see Exhibit 18 for relevant parts, thereof)"), 29 (same), 32 (same), 60 (same).

[11] The documents appear to summarize and/or paraphrase, and thus are not verbatim translation of, the relevant clauses (for example, they use the term "CFE" but in the Spanish version of the contract, CFE is referred to as "LA COMISION").  *See* Mem. Br. at 37 (describing Exhibit 19 as "Abstract of Contract With Assignment of Collection Rights").

*Mitsubishi Power Systems, Inc., v. FGG Enterprises, LLC, Fernando J. Gireud, and Marco A. Delgado*, Cause No. D-1-GN-12-002368 (200th Judicial Dist. Ct. Travis Cty. Tex.). Defendant relies on this exhibit to argue that Wunder gave false testimony in that lawsuit—just as Adams did at his criminal trial here—that MPSA never gave its consent for the pledge. Mem. Br. at 46 & n.14; *see also* Mot. Ex. 8 at ¶ 8 ("At no time did MPSA grant FGG, or any person presently or previously acting on FGG's behalf, the authority to pledge the Equipment or otherwise assert any control over the Equipment." (Wunder declaration)). By his own admission, Wunder's declaration is cumulative of the trial evidence. Trial Tr., vol. 11, at 4:17–20, 31:13–33:02 (Adams testimony), ECF No. 341.

Exhibit 9 (ECF No. 383-13) is a copy of Gireud's response to a set of interrogatories propounded by MPSA in the state court lawsuit. *See* Mem. Br. at 33, 47. This document was served on Defendant's counsel in that lawsuit in February 2013—long before his trial in this case. *See* Mot. Ex. 9 at 3. Accordingly, Gireud's response is not newly discovered evidence.

### (h)   Exhibits Relating to EP-12-CR-2106: Exhibits 11, 12, and 14

These exhibits contain documents from proceedings in or related to *United States v. Marco Antonio Delgado*, No. 3:12-CR-02106 (W.D. Tex.) (hereinafter *Delgado 2106*). Exhibit 11 (ECF No. 383-15) is an order (*Delgado 2106*, ECF No. 178) issued by this Court in January 2017, where the Court ordered that his "*ProSe* Motion to Dismiss the Indictment; or, in the Alternative, Rule 33 Motion for a New Trial, Discovery, and an Evidentiary Hearing" (*Delgado 2106*, ECF No. 171) be stricken from record. In his brief, Defendant relies on this exhibit to argue that the order "evidences the Government's efforts to wrongly incriminate Defendant." Mem. Br. at 68. The order was issued by the Court, not the Government; it is irrelevant and if introduced at a new trial, it would certainly not produce a new result.

Exhibit 12 (ECF No. 383-16) is an excerpt from the transcript of the preliminary and detention hearing held in *Delgado I* on November 14, 2012, at which Joshua Fry, a special agent with U.S. Immigration and Customs Enforcement Homeland Security Investigations, testified. *Delgado 2106*, ECF No. 19.  Defendant relies on Fry's testimony to argue that although Gireud was an organizer of FGG, he was not its owner, when the contracts at issue in this case were executed.  Mem. Br. at 67 (citing Mot. Ex. 12).  The record in *Delgado 2106* indicates that Defendant's then counsel had a copy of the transcript as early as on November 18, 2012, *see Delgado 2106*, ECF No. 19 (a Notice of Electronic File was e-mailed to counsel of record by the Court's CM/ECF system upon docketing of the transcript), and certainly by December 13, 2012, when counsel filed a motion on Defendant's behalf in that case.  *Delgado 2106*, ECF No. 26, at 6 n.5 ("Attached hereto is a transcript of the testimony heard on November 14, 2012.").  Consequently, the transcript of the November 14, 2012 hearing is not newly discovered evidence.

Defendant claims Exhibit 14 (ECF No. 383-18) is the transcript of Fry's testimony at a grand jury proceeding held on September 5, 2012, that led to his indictment in *Delgado 2106*.  Based on the CM/ECF header information imprinted on the exhibit, it appears that Defendant previously submitted a copy of the transcript as an exhibit to his *prose* motion for new trial on October 28, 2016.  *See Delgado 2106*, ECF No. 171-3.  In his brief here, relying on the exhibit, Defendant claims that Fry testified before the grand jury that "Gireud was FGG's sole owner, and that he was not aware of, nor had he approved of the change of FGG's bank account by Defendant Delgado."  Mot. Br. at 25 ("See also GJT, Sept. 5, 2012, at pp. 19-20 (Exhibit 14)").  No such testimony appears in the cited portion of the 28-page long exhibit.  As such, the exhibit is irrelevant and not material.

### (i)   Exhibit 16

Defendant describes Exhibit 16 (ECF No. 383-20) as excerpts from the so-called "Buendia Report" issued by the CFE Inspector General.  Mot. Br. at 28.  Defendant relies on this exhibit to argue that "CFE had, in fact, not suffered any losses whatsoever."  Mot. Br. at 57; First Kleinman Decl. at ¶ 9; *see also* Mot. Ex. 16 at ¶ 3 ("'In the present case, it is important to take into account that there was no economic damage to CFE.'" (quoting apparently p. 332 in the report)).  As discussed in Part III(A)(2), *supra*, the report contains administrative findings made by a Mexican governmental agency.  The exhibit contains a single-page document with three quoted excerpts in English.  Defendant did not provide a copy of the relevant pages from the original source document in Spanish; neither the author of the document, nor the bases for conclusions therein, are identified in this document.

The document contains inadmissible hearsay.  *See United States v. Anderson*, 755 F.3d 782, 800 (5th Cir. 2014) ("[A] motion for new trial may not be based on inadmissible evidence." (internal quotes omitted)); *United States v. Chapman*, 851 F.3d 363, 382 (5th Cir. 2017) ("[H]earsay evidence is not material because it is not admissible.").  Moreover, to the extent the document accurately quotes from the original source document, as the Government points out, actual loss is not an element of any of the offenses of which Delgado was convicted.  Gov't's Resp. to Mot. at 19 n.17; 23 n.18.  Further, at trial, the Court allowed defense counsel, over the Government's objections, to examine—for impeachment purposes—Matamala (a CFE counsel) on the issue of how much, if any, damages CFE suffered.  Trial Tr., vol. 16(A), at 114:25–115:14 (colloquy among prosecuting attorney, defense counsel, and court) (defense counsel responding to the government's relevance objection and explaining relevance based on MPSA/CFE's "financial interest" in the outcome of the lawsuit); *see also id.* at 108:3–109:6 (direct by

Government); *id.* at 117:13–119:22 (redirect by the Government).  The administrative finding

Defendant relies on is merely impeachment evidence.  *See United States v. Eghobor*, 812 F.3d

352, 363–64 (5th Cir. 2015) ("Evidence that . . . demonstrates a bias on the part of [a] witness is

mere impeachment evidence that is insufficient to entitle a defendant to a new trial." (brackets

and internal quotes omitted)).

### *(2)  Additional Exhibits Subsequently Submitted by Defendants*

 As mentioned, subsequent to filing his motion, Defendant submitted seven additional

exhibits.  Def.'s Notice of Filing Add'l Exs. at ¶5(A)–(G), ECF No. 407; Add'l Exs. (the

attachment is electronically bookmarked with exhibit numbers, A–G, and short titles), ECF No.

406-2; *see also* ECF Nos. 409-1 – 409-7 (duplicates of the exhibits).

Of these, one exhibit includes a copy of the teaming agreement, which the Court has

addressed in Part III(B)(1)(f), *ante*; the agreement is not newly discovered evidence.  *Compare*

Notice of Filing Add'l Exs. at ¶ 5(F) ("Teaming Agreement-1"), *and* Add'l Exs. at 228–45, *with*

Mot. Ex. 3, ECF No. 383-4.  Defendant describes another of these exhibits as "Buendia Bid

Offer Document References."  Notice of Filing Add'l Exs. at ¶5(G); *see also* Add'l Exs. at 214–

22.  Defendant does not point out where in the motion brief this document is referenced and

discussed.  Consequently, he has failed to demonstrate, at minimum, that the document in this

exhibit is material and if introduced at a new trial, would probably produce an acquittal.

That leaves us with the following "additional" exhibits: (1) a full copy of the pledge

agreement, two excerpts of which Defendant submitted with the motion as Exhibits 7a and 7b;

(2) *Oferta de Financiamiento Para Adquisiciones de Bienes*; (3) *Deviaciones y Sustituciones*; (4)

*Formato para la Manifestacion en Licitaciones Publicas*.  Def.'s Notice of Filing Add'l Exs. at

¶¶ 5 (A), (B), (C), (E); Add'l Exs. at 207–213, 223–227.  According to Defendant, the last three

documents, as well as Exhibit 22 which Defendant filed with the motion, were submitted as part of FGG's bid offer/proposal to CFE; Defendant refers to them as "Bid Offer" documents. *E.g.*, First Kleinman Decl. ¶ 15.

### (a)  Pledge Agreement

At trial, the Government introduced into evidence a copy of the pledge agreement in Spanish and a certified English translation of the same. *See* Gov't's Trial Ex. 32 (Spanish), ECF No. 390-14.  The Government points out that Defendant submitted three copies of what he claims to be the pledge agreement.  Gov't's Resp. to Mot. at 12; *see also* Mot. Ex. 7a, ECF No. 383-10; Add'l Exs. at 1–204, 246–247; Delgado Decl., 1st Attach., ECF No. 409-1; Delgado Decl., 7th Attach., ECF No. 409-7.  The Government further points out that there are noticeable structural differences between his version of the agreement and the Government's version presented at trial—which the Government obtained from the Mexican government in response to a request pursuant to a Mutual Legal Assistance Treaty.  Gov't's Resp. to Mot. at 12–13.

Defendant's Exhibit 7a (ECF No. 383-10), which was submitted with the motion, is an excerpt from the pledge agreement in Spanish. *See* Second Kleinman Decl. at ¶ 3; Delgado Decl. at ¶ 8(vi).  In his brief, Defendant relies on only two parts of the agreement: a list of "anexos" or attachments, and a power of attorney.  Mem. Br. at 52, 55; Second Kleinman Decl. at ¶ 3.  These parts are included in the Government's copy of the agreement presented at trial. *Compare* Mot. Ex. 7a at 13 (anexos), *with* Gov't's Trial Ex. 32 at 25 (same); *compare* Mot. Ex. 7a at 14, *and* Add'l Exs. at 249–51 (power of attorney in English), *with* Gov't's Trial Ex. 32A at 3–5, ECF No. 390-15.

Defendant's Exhibit 7b (ECF No. 383-11), on the other hand, appears to be an English translation[12] of an excerpt from the document in Exhibit 7a, and it lists several clauses numbered as VI–XIX; in his brief, Defendant relies only on Clause XIV.  *See* Mem. Br. at 47.  These clauses match the same numbered clauses in the Government's English translation of the pledge agreement introduced at trial.  *See* Gov't's Trial Ex. 32A (English) at 13–25.

Consequently, the documents submitted as Exhibits 7a and 7b are not newly discovered evidence and, moreover, are cumulative of the Government's trial exhibits.

### (b)   The "Bid Offer" Documents

Relying on *Oferta de Financiamiento Para Adquisiciones de Bienes*, Defendant argues that this document "contemplated" pledging of MPSA's equipment to secure the bid.  Mem. Br. at 30 n.10; *see also* Second Kleinman Decl. at ¶ 7 (This document "explicitly refers to the Bid Offer being contingent on the pledging of the equipment being offered.").  At trial, the Government introduced into evidence a copy of the document as part of its exhibits of the bid proposal.  *Cf.* Gov't's Trial Ex. 9 (in Spanish) at 10; Gov't's Trial Ex. 9A (English translation) at 10.  Consequently, this document is not newly discovered evidence.

Defendant relies, in part, on the remaining three exhibits to argue that MPSA reviewed, approved, and adopted the terms of the bid proposal in their entirety, and—presumably, therefore, MPSA knew that the bid was contingent upon pledging its equipment as collateral, MPSA understood that it would have to guarantee FGG's performance under the resulting contracts, and MPSA authorized Defendant's pledging of its equipment.  Second Kleinman Decl. at ¶¶ 5, 8, 9;  *e.g.*, Mem. Br. at 27, 29, 30 & n.10, 48.  These documents do not support his assertions.

---

[12] The document seems to summarize and/or paraphrase, but not provide verbatim translation of, the source Spanish document: for example, among others, it uses the term CFE for "LA COMISION" (meaning the Commission) used in the source document.

Specifically, Defendant says that *Deviaciones y Sustituciones* is a joint declaration by "MPSA and FGG" that "no deviation from those imposed by the *Bid Specifications* would take place," Mem. Br. at 28 (emphasis added), and it therefore supports that MPSA thoroughly reviewed and understood the "specification." *Id.* However, the document says that, according to Defendant's translation, it is a declaration by FGG, not additionally by MPSA, and it refers only to "Technical Specifications," not all specifications. Add'l Exs. at 226 (emphasis added).[13]

Exhibit 22 (ECF No. 383-26) appears to be an annex to a larger document, purportedly the bid proposal, that depicts a flowchart diagram labeled as "Organigrama," *i.e.*, meaning "organizational chart," as translated by Defendant. Mot. Ex. 22 at 2, 4. Two square boxes within the flowchart, highlighted in yellow, reads, according to Defendant's translation, "Subcontractor/Buying of the Turbines/MPSA" and "Equipment Providers." Mot. Ex. 22 at 2, 4. It does not, as Defendant claims without elaboration, "establish[ ], in no uncertain terms, that MPSA was responsible for the financial performance guarantees." Mot. Br. at 27; *see also* Second Kleinman Decl. ¶ 8 (stating this exhibit "specifically contains and incorporates as one of the key terms used in the Bid Offer," without pointing out where in the flowchart the "key term" is or explaining same).

Finally, *Formato para la Manifestacion en Licitaciones Publicas* appears to be a statement to CFE dated October 20, 2009, and purportedly signed by Ponce and Defendant. Add'l Exs. at 225. It appears to be a statement to comply with some type of regulatory or administrative requirements governing international public bids. Add'l Exs. at 223–24. In it, according to Defendant's translation, the signatories declare that the equipment "offered by the

---

[13] Defendant's translation says: "*FGG Enterprises, LLC declares* that our proposal strictly follows the *Technical Specifications of CFE*; therefore, we do not have any *technical* deviations or minor substitutions, and that if there is some discrepancy between the proposal and specifications, the content of the specifications will prevail." Add'l Exs. at 226 (emphasis added).

Bidder in said Proposal" originated in United States and Japan, "countries that are part of the free

trade agreement of NAFTA with the United States" and "AAE [*i.e.*, Economic Association

Agreement] Mexico-Japan." *Id.*  It does not say, nor does it show, that MPSA was "subscribing

to and adopting as its own *all* the terms of the . . . the Bid Offer."  Delgado Decl. at ¶ 8(i)

(emphasis added).

Moreover, substantial evidence presented at trial indicates: (1) MPSA was not afforded

an advance opportunity to review the actual bid proposal, together with its annexes, that

Defendant submitted to CFE,[14] (2) MPSA did not agree to pledge its equipment,[15] and (3) MPSA

did not authorize Defendant's pledging of its equipment.[16]  In light of this evidence, the

flowchart, *Deviaciones y Sustituciones*, and *Formato para la Manifestacion en Licitaciones*

*Publicas*, if introduced at a new trial, would probably not produce a new result.

---

[14] *See, e.g.*, Trial Tr., vol. 14, at 3:10–12 ("I had no access to the annexes or the financial
proposals or the payment terms that F.G.G. was making specifically to the C.F.E." (Ponce testimony)),
ECF No. 344; *id.* at 71:18–21 ("[W]e [*i.e.*, MPSA] were concerned that they were not actually giving us
originals of what they [*i.e.*, FGG] were submitting.  And we were asking for originals of what was
actually submitted" (same));  Gov't's Trial Ex. 11 (congratulating FGG on being awarded the project, but
expressing concern about FGG's failure to keep MPSA informed about the details of the bid, and about
MPSA not receiving an opportunity to review FGG's offer prior to submission to CFE (letter from Adams
to Gireud)), ECF No. 388.

[15] *See, e.g.*, Trial Tr., vol. 14, at 238:23–239:1 (answering the question whether MPSA ever
agreed to pledge its equipment with "That's a 100 percent no." (Miller testimony)); *id.* at 239:7–15
(explaining that MPSA and FGG entered into two contracts—the Teaming Agreement and the
Subcontract—and neither document contained an agreement for MPSA to pledge its equipment or
provide letters of credit (same)).

[16] *See, e.g.*, Trial Tr., vol. 11, at 4:17–20 (testifying that by April 2010, MPSA had not yet learned
that their equipment had been pledged in lieu of the letters of credit (Adams testimony)); *id.* at 32:14–33:2
(testifying that MPSA would never authorize a third party to pledge equipment that the third party did not
own (same)); Trial Tr., vol. 14, at 75:15–20 (testifying that nobody at MPSA authorized a pledge of the
equipment (Ponce testimony)); *see also, e.g.*, Gov't's Trial Ex. 14 (demanding that FGG confirm that
equipment was not being offered as collateral and requesting that FGG provide a copy of the letters of
credit (December 28, 2009 letter from MPSA to FGG)).

## IV.   CONCLUSION

In sum, each piece of Defendant's alleged "new evidence" fails to satisfy at least one of the *Berry* factors; therefore, they do not, singularly or collectively, entitle him to a new trial; Defendant's motion must be denied.  *United States v. Ebron*, 683 F.3d 105, 158 (5th Cir. 2012) ("If the defendant fails to demonstrate any one of these factors, the motion for new trial should be denied." (internal quotes and citation omitted)).

Accordingly, Defendant Marco Antonio Delgado's "Motion for New Trial" (ECF No. 383) is **DENIED**.

**So ORDERED and SIGNED this  _29th_  day of July 2020.**

_____
**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**