UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| MARCO ANTONIO DELGADO, | § | |
|     Movant, | § | |
| | § | EP-22-CV-425-DCG |
| v. | § | EP-13-CR-370-DCG-1 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
|     Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Marco Antonio Delgado, federal prisoner number 06804-380, challenges his convictions

through an opposed motion under 28 U.S.C. § 2255. Mot. to Vacate, ECF No. 446.[1] His motion

is denied.

## BACKGROUND

Delgado is a former attorney serving a 120-month sentence imposed by the Court after a

jury found him guilty of wire fraud, money laundering, and engaging in unlawful monetary

transactions. *United States v. Delgado*, 855 F. App'x 987, 988 (5th Cir. 2021). He is currently

incarcerated at the Federal Correctional Institution in Loretto, Pennsylvania. *See* Find an Inmate,

https://www.bop.gov/inmateloc/ (search for Reg. No. 06804-380) (last visited April 10, 2022). His

anticipated release date is September 24, 2029. *Id*.

Delgado, while doing business as the law firm Delgado & Associates P.C. in El Paso,

Texas, entered into an agreement with FGG Enterprises (FGG), a Nevada limited liability

company, to prepare and submit bids on contracts with the Comisión Federal de Electricidad

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in EP-13-CR-370-DCG-1. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

(CFE), a Mexican state-owned utility company. Presentence Investigation, ECF No. 264 at ¶¶ 4.

7. As a result of his efforts, FGG was awarded a 121-million-dollar contract by CFE to procure

power-generating equipment. Gov't Ex.18A, ECF No. 389-2. Under the terms of the contract,

FGG was required to obtain an irrevocable standby letter of credit to guarantee its performance.

*Id*. at 14–16. After FGG was awarded the contract, it subcontracted with Mitsubishi Power Systems

America (MPSA) to supply three turbogenerators for the project. Gov't Ex. 12A, ECF No. 388-2.

Instead of obtaining a costly letter of credit, Delgado fraudulently pledged power

generating equipment owned by MPSA to guarantee FGG's performance. Presentence

Investigation, ECF No. 264 at ¶ 4. To do this, Delgado used a one-page letter purportedly from

John Adams, a senior vice president at MPSA, authorizing the arrangement. Gov't Ex. 21, ECF

No. 390-4; Gov't Ex. 22, ECF No. 390-5. But Adams insisted he did not write the letter:

> BY MS KANOF:
>
> Q. Okay. So this letter appears to be from you. Did you write it?
>
> A. [Mr. Adams] I did not.
>
> Q. Okay. How do you know that you didn't write it?
>
> A. Well, first off, it's not in the words that I would use. I would never say, you
> know, we have the desirability of pledging. I mean, that's just not a business world
> -- word. I would never say desirability in one of my sentences. So that's clearly not
> my writing and not my idea of how I would write a letter.
>
> And then very simply, I mean, there's no way that we would be allowing, you know,
> the equipment to be pledged in lieu of posting a letter of credit. It was just not
> anything with -- I would have been fired if I had done such a thing.

Trial Tr., ECF No. 341 at 23:13–23:25. Delgado also fraudulently caused CFE to send two

payments totaling $32,000,000 to his personal Turks and Caicos Islands bank account instead of

to FGG's bank account in El Paso. Gov't Ex. 43A, ECF No. 392-1; Trial Tr., ECF No. 341 at

199:11–199:16; Trial Tr., ECF No. 344 at 257:1–262:19. Delgado used some of the misappropriated funds to purchase houses. Presentence Investigation, ECF No. 264 at ¶ 4.

Delgado was indicted on "three counts of wire fraud in violation of 18 U.S.C. § 1343, seven counts of money laundering in violation of 18 U.S.C. § 1956(a)(2)(B)(i), and nine counts of engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957." *United States v. Delgado*, 855 F. App'x 987, 988 (5th Cir. 2021). He was convicted by a jury on all counts. *Id.* He was sentenced to an aggregate term of 120-months' imprisonment—with half of his sentence to run concurrent and half of his sentence to run "consecutive to the 192-month sentence he received for a prior unrelated offense" in EP-12-CR-2106-DCG-1. *Id.* at 989. His sentences and convictions in EP-13-CR-370-DCG-1were affirmed by the Fifth Circuit Court of Appeals. *Id*.

Delgado now asserts four ineffective-assistance-of-counsel claims. Mot. to Vacate, ECF No. 446 at 4–8, 11–13. First, he observes his attorneys failed to subpoena the MPSA records custodian. *Id*. at 4. Second, he avers his counsel failed to investigate MPSA's desire to avoid providing a letter of credit. *Id*. at 5. Third, he notes his counsel failed to call Eduardo Buendia to testify that MPSA agreed to pledge the power generating equipment. *Id.* at 13. Finally, he argues his counsel erred by "opening the door" for lay witnesses to offer their "expert" opinions on legal documents. *Id*. He asks the Court to vacate his convictions. *Id.* at 15.

### STANDARD OF REVIEW

Title 28 U.S.C. § 2255 " 'provides the primary means of collateral attack on a federal sentence.' " *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (quoting *Cox v. Warden*, 911 F.2d 1111, 1113 (5th Cir. 1990)). But "it does not encompass all claimed errors in conviction and

sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). It is not a "substitute for direct appeals." *United States v. Willis*, 273 F.3d 592, 596 (5th Cir. 2001); *see also United States v. Frady*, 456 U.S. 152, 167 (1982) (imposing a "cause and actual prejudice" standard on motions for collateral relief when no objection was made on direct appeal); *Reed v. Farley*, 512 U.S. 339, 354 (1994) (stating "[w]here the petitioner—whether a state or federal prisoner—failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice.' "). And it identifies only four grounds on which a prisoner may obtain relief: (1) the "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). Consequently, § 2255 does not permit relief on a claim of error that is neither constitutional nor jurisdictional unless the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962). It also requires the prisoner to bear the burden of establishing a claim of error by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980) (citing *United States v. Kastenbaum*, 613 F.2d 86, 89 (5th Cir. 1980)). It permits a court to "vacate and set the judgment aside" if a prisoner's claims are meritorious and to "discharge the prisoner or resentence him or grant [him] a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). But it also allows a court to dismiss the motion "[i]f it plainly appears from the motion . . . and the record of prior proceedings that the moving party is not entitled to relief."   28 U.S.C. foll. § 2255 Rule 4(b); *see also* 28 U.S.C. § 2255(b); *United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990)

("Faced squarely with the question, we now confirm that § 2255 requires only conclusive evidence—and not necessarily direct evidence—that a defendant is entitled to no relief under § 2255 before the district court can deny the motion without a hearing.").

A prisoner may bring "an ineffective-assistance-of-counsel claim . . . in a collateral proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 504 (2003). If he does, his claim is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail, he has the burden of showing (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 689–94. To establish deficient performance, he must prove that his counsel's assistance fell " 'below an objective standard of reasonableness.' " *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003) (quoting *Strickland*, 466 U.S. at 688). "[T]o establish prejudice, [he] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (quoting *Strickland*, 466 U.S. at 694).

### ANALYSIS

Delgado alleges his trial counsel provided constitutionally ineffective assistance in four ways. Mot. to Vacate, ECF No. 446 at 4–8, 11–13. First, he claims his attorneys were ineffective for failing to subpoena the MPSA records custodian. *Id*. at 4. He suggests, "had the Mitsubishi custodian been subpoenaed, the custodian would have produced records such as e-mails and other internal documents which reflect that MPSA did in fact agree to pledge its equipment, without transfer of title, as part of the contracting process." *Id*. at 12. Second, he avers his counsel were

ineffective for failing to investigate MPSA's desire to avoid the responsibility to provide letters of credit. *Id*. at 5. He maintains "MPSA wanted . . . to do business" with CFE, but asked it to "accept a 'parent' guarantee from Mitsubishi . . . in lieu of the letters of credit." *Id.* at 12. Third, he asserts his counsel were ineffective for failing to call Eduardo Buendia, an individual who " participated in the pledge-required appraisal trip with MPSA to Japan," to testify. *Id.* at 13. He contents Buendia would have explained "that MPSA not only knew about the pledge requirement, but [also] assented to it." *Id.* Finally, he argues his counsel were ineffective for "opening the door" for lay witnesses to offer their "expert" opinions on powers of attorney, Mexican contracts, and other legal documents when "[o]nly the Court could lawfully give the jury instructions about the law." *Id*. He asks the Court to vacate his convictions. *Id.* at 15.

### A.  Failure to Call Witnesses

Delgado suggests his counsel provided ineffective assistance when they failed to (1) subpoena the MPSA records custodian to testify that company records showed that it agreed to pledge its equipment, and (2) call Eduardo Buendia to testify that MPSA assented to the pledge of its equipment. Mot. to Vacate, ECF No. 446 at 4, 7, 11–12, 13.

A movant's claim that his counsel provided ineffective assistance when he failed to call a witness is "not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain." *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010). Furthermore, before a movant can demonstrate deficient performance, he must overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Indeed, he must "overcome the presumption that . . . the challenged action 'might be sound

trial strategy.' " *Higgins v. Cain*, 720 F.3d 255, 265 (5th Cir. 2013) (quoting *Strickland*, 466 U.S. at 689). And, to demonstrate prejudice, a movant must (1) provide the name of the witness, (2) establish the witness was available to testify and would have done so, (3) submit a summary of the contents of witness's proposed testimony, and (4) show the testimony would have been favorable to a particular defense. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). In other words, a movant must show there was a reasonable probability that the missing testimony would have altered the outcome of the trial. *Alexander v. McCotter*, 775 F.2d 595, 603 (5th Cir. 1985).

Delgado offers no affidavits or other evidence establishing that either the MPSA records custodian or Buendia were available and willing to testify. He does not set out with any detail the contents of their proposed testimony. He merely speculates "[u]pon information and belief" that the MPSA records custodian could produce unspecified "records such as e-mails and other internal documents which reflect that MPSA did in fact agree to pledge its equipment, without transfer of title, as part of the contracting process." Mot. to Vacate, ECF No. 446 at 12. He further speculates "[u]pon information and belief" that Buenda would have testified "that MPSA not only knew about the pledge requirement, but [also] assented to it." *Id*. at 13. But his claim that their testimony would show MPSA agreed to the pledge is clearly refuted by the evidence introduced at his trial. *See*, *e.g.*, Trial Tr., ECF No. 341 at 23:13–23:25. As the Court observed when it denied Delgado's motion for new trial, "substantial evidence presented at trial indicates . . . MPSA did not agree to pledge its equipment, and [ ] MPSA did not authorize Defendant's pledging of its equipment." Mem. Op. & Order, ECF No. 424 at 26 & n. 15, 16. Delgado's "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th

Cir. 1983). He fails to establish either deficient performance or actual prejudice under *Strickland* on this claim.

### B. Failure to Investigate

Delgado asserts his counsel were ineffective for failing to investigate MPSA's desire to pledge equipment in order to avoid obtaining a letter of credit. Mot. to Vacate, ECF No. 446 at 5, 12.

"To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). If a petitioner's "defense counsel is aware of a fact that would cause a reasonable attorney to investigate further, then the failure to investigate further is likely deficient performance." *Thomas v. Lumpkin*, 995 F.3d 432, 451 (5th Cir. 2021). But a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. So, a court "must be particularly wary of 'argument[s] [that] essentially come[ ] down to a matter of degrees. Did counsel investigate enough? Did counsel present enough mitigating evidence?' " *Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000) (quoting *Kitchens v. Johnson*, 190 F.3d 698, 703 (5th Cir. 1999)).

Delgado claims MPSA "did not want to provide letters of credit equaling $20 million as part of the contracting process." Mot. to Vacate, ECF No. 446 at 12. He further claims MPSA "asked FGG to request that FGE [sic] accept a 'parent' guarantee from Mitsubishi in Japan in lieu of the letters of credit." *Id.* And he argues "because [his] counsel was ineffective, none of this was

8

explained to the jury." *Id.* But he fails to provide evidence with his motion to support his claim that MPSA was interested in pledging its equipment to avoid providing a letter of credit.

Furthermore, under the terms of the contract, FGG—not MPSA—was required to obtain an irrevocable standby letter of credit to guarantee its performance. Gov't Ex.18A, ECF No. 389-2at 14–16. And John Adams, a senior vice president at MPSA, testified at trial "there's no way that [MPSA] would be allowing . . . the equipment to be pledged in lieu of posting a letter of credit. It was just not anything with -- I would have been fired if I had done such a thing." Trial Tr., ECF No. 341 at 23:22–23:25.

The Court finds Delgado's allegation that his counsel were ineffective for failing to investigate MPSA's alleged desire to pledge equipment is both conclusory and unsupported by the record. "In the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced his right to a fair trial," the Court can find no merit to his claim. *Barnard v. Collins*, 958 F.2d 634, 642 (5th Cir. 1992).

## C.  Failure to Object to Testimony of Lay Witnesses

Delgado argues his counsel were ineffective for "opening the door" for lay witnesses to offer their "expert" opinions on powers of attorney, Mexican contracts, and other legal documents. Mot. to Vacate, ECF No. 446 at 13. He contends "[o]nly the Court could lawfully give the jury instructions about the law." *Id*.

Federal Rule of Evidence 701 provides a lay witness' "opinion must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the jury." *United States v. Riddle*, 103 F.3d 423, 428 (5th Cir.1997) (internal quotation marks and citation omitted). A lay witness should not, therefore, give an opinion which requires

"scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Consequently, a lay witness should not give a legal opinion. *See United States v. Griffin*, 324 F.3d 330, 347–48 (5th Cir. 2003).

However, "[i]nformed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed." *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999). " 'A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.' " *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).

The decisions of Delgado's counsel regarding objections to the "expert" testimony of the lay witnesses fall "within this category of trial strategy which enjoys a strong presumption of effectiveness." *Pape v. Thaler*, 645 F.3d 281, 291 (5th Cir. 2011) (citing *Johnson v. Dretke*, 394 F.3d 332, 337–38 (5th Cir. 2004) (finding counsel's decision not to investigate and present a witness's testimony to the jury in favor of an alternative defense acceptable despite the fact the alternative defense "was not ultimately prevailing"); *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir.1983) (affirming conviction where the convicted argued counsel failed to attack a prosecution witness's credibility). Delgado, through his conclusory assertions, does not overcome this presumption, and he cannot meet *Strickland's* first prong—deficient performance.

Additionally, Delgado offers no evidence that the lay witnesses' "expert" opinions were erroneous. He provides no evidence that the prosecution was without means to establish the opinions were correct had his trial counsel successfully challenged the testimony. His suggestion that an unspecified "Mexican law allowed [him] to redirect the payment of $20,000 . . . to [his

personal] Turks and Caicos account"—in violation of U.S. law—is absurd. Mot. to Vacate, ECF No. 446 at 13. Even if Delgado could show his counsels' performance was deficient, it is beyond dispute that he cannot meet *Strickland's* second prong—prejudice.

## EVIDENTIARY HEARING

The Court observes it may deny a motion brought under § 2255 without a hearing if "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992). It finds the record in this case is adequate to dispose fully and fairly of Delgado's claims. It further finds it need inquire no further on collateral review and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

A movant may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). He may not receive a certificate of appealability unless he "has made a substantial showing of the denial of a constitutional right." *Id*. § 2253(c)(2). He "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" when district court rejects his constitutional claims on the merits. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings). He must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" when district court rejects his claims solely on procedural grounds. *Slack*, 529 U.S. at 484.

The Court finds reasonable jurists could not debate its reasoning for denying Delgado's claims on substantive or procedural grounds—or find that his issues deserve encouragement to proceed. *Miller El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). It will not issue a certificate of appealability.

### CONCLUSIONS AND ORDERS

The Court concludes Delgado has failed to meet his burden of establishing (1) his "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack." *Seyfert*, 67 F.3d at 546. The Court also concludes that Delgado is not entitled to a certificate of appealability. Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Delgado's "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (Doc. 446) is **DENIED** and his civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Delgado is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**IT IS SO ORDERED.**

**SIGNED** on this 18th day of April 2023.

_____
DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE

12